## Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 20-10410-hcm |
| 3443 ZEN GARDEN, L.P. | § | |
| ALLEGED DEBTOR | § | |

**DECLARATION OF DON E. BAYER IN SUPPORT OF
OPPOSITION TO POST-PETITION FINANCING**

I, Don E. Bayer, being duly sworn, state the following under penalty of perjury:

1. I am the President at Austin Glass & Mirror, Inc., a commercial glass and storefront fabricator officed in Austin, Texas ("Austin Glass"). I submit this declaration ("Declaration") in support of the Opposition to Post-Petition Financing. I have been personally involved in all facets of Austin Glass' involvement in the improvements located at 3443 Ed Bluestein Boulevard in Austin, Texas (the "Project") and I have personal knowledge of the facts contained herein.

2. I received my degree in building construction *cum laude* from the School of Architecture at Texas A&M University – College Station in 1977. From there I went to work at Columbus Glass in Columbus, Texas from 1977 to 1984. While at Columbus Glass my duties included project management, installation supervision, and I was the chief estimator for all types of commercial and residential projects. In 1984 I founded Austin Glass with my brother and two other partners. I am the president of Austin Glass and one of our products is the fabrication, installation, and servicing of commercial storefront glass units. My personal duties include estimating, creating shop drawings, performing field measurements, ordering materials, and supervising installations. Jobs in which I have had personal involvement while at Austin Glass include:

    a. The F1 Racetrack tower;

b. New construction and remodeling of approximately 20 HEB stores;

c. At the University of Texas, I was involved in glass installation including underwater glass for the swim center, the baseball field, the remodel of the basketball practice court, and the remodel of the Erwin Center.

d. At Texas A&M, I have been involved in multiple projects including but not limited to the softball field, and the old School of Architecture.

3. In all, Austin Glass has successfully completed over 6,700 projects since its inception, and I have been involved in the vast majority of, if not all of them.

**The Lien**

4. Austin Glass entered into a written contract with Panache Development & Construction, Inc. ("Panache"), the General Contractor on the Project and Debtor. The scope of work undertaken by Austin Glass can be generally described as installation of exterior curtainwall glass, storefront glass exterior glass doors and related materials.

5. On or about January 15, 2020, I caused to be served a Notice of Unpaid Balance on Panache and Debtor for nonpayment of invoices for the month of October, 2019. A true and correct copy of said notice is attached hereto as Exhibit "A".

6. On or about December 27, 2019, I caused to be recorded an Affidavit of Claim for Mechanic's Lien on behalf of Austin Glass as Official Public Document No. 2019178762. A true and correct copy of said lien is attached hereto as Exhibit "B". Unpaid work and materials were installed as per the terms of the contract with Panache, payment is past due, and the lien amount remains unsatisfied.

**Removable Equipment**

7. Uninstalled components sitting on site which the Court should allow Austin Glass to remove are listed on Exhibit "C". Each of the items is uninstalled and still sitting on the

Project site.  As such, there is no risk of injury to the land or pre-existing improvements.
True and correct photographs of the components, where available, are attached hereto as
Exhibits "C-1" through "C-8" and the numbers in the exhibits correlate with the line
numbers of Exhibit "C".  The photographs fairly and accurately show the particular
component listed and the manner in which it is installed.  The items depicted in the
photographs fairly depict the component listed under the corresponding line number of
Exhibit "C".

DATED:  June _10th_, 2020.

_____

Don E. Bayer, President
Austin Glass and Mirror, Inc.

SUBSCRIBED AND SWORN TO BEFORE ME, on this _10th_ day of June, 2020.

ROBERT JAMES KALLUS
Notary Public, State of Texas
Comm. Expires 10-19-2023
Notary ID 11762924

_____
Notary Public in and For the State of Texas

EXHIBIT "A"

**Missing or Incorrect Data? Visit levelset.com/talk/ - Reference Number: 3006246**

# TEXAS NON-RESIDENTIAL MONTHLY NOTICE

**Original Contractor:**
Panache Development & Construction, inc.
3443 Ed Bluestein
Austin, Texas 78724

**Owner:**
Panache Development and Construction
4210 Spicewood Springs Rd
Austin, Texas 78759
3443 ZEN GARDEN LIMITED PARTNERSHIP
PO BOX 26539
Austin, Texas 78755

**Notifying Party:**
Austin Glass & Mirror Inc
6308 Decker Lane
Austin, Texas 78724

**Hiring Party:**
Panache Development & Construction, inc.
3443 Ed Bluestein
Austin, Texas 78724

**Month for which you are receiving this Notice:**
October

**Amount unpaid for work performed, or materials delivered, in the above month:**
230,000.00

**Total Amount Due to Claimant to date:**
708,374.14

Property where improvements and/or construction is being performed by the Notifying Party is described as follows (the "**Property**"): 3443 Ed Bluestein Blvd, Austin, Texas 78721; County of: Travis County, Texas.

Description of work performed by the Notifying Party (the "**Services**"):
Furnishing and installing aluminum storefront, curtainwalls and glass& glazing

## IMPORTANT INFORMATION ON FOLLOWING PAGE

**THIS IS NOT A LIEN.** This notice is provided to inform you that the herein-identified Notifying Party has performed the herein-identified Services on the herein-identified Property, and specifically, that in regards to the same, the Notifying Party is owed money by the hiring party on the account for said Services. As of the date of this notice, the amount currently due to the Notifying Party is herein-identified as the "Total Amount Due to Claimant to Date". The total due for the specific month for which this Notice has been sent, is identified as "Amount unpaid for work performed, or materials delivered, in the above month".

To preserve our rights under Texas law, we are required to inform you that if the claim remains unpaid, the owner may be personally liable and the owner's property may be subjected to a lien unless:

(1) the owner withholds payments from the contractor for payment of the claim; or
(2) the claim is otherwise paid or settled.

Further, **PLEASE TAKE NOTICE** that the Notifying Party makes demand upon you for payment of the Total Amount Due to Claimant to Date under Texas Property Code § 53.083, and requests that you forward to it any funds held for the Original Contractor to pay this claim, unless the Original Contractor provides written notice within 30 days that the contractor intends to dispute the claim. All or part of the claim has accrued under Section 53.053 or is past due according to the agreement between the Notifying Party and Hiring Party.

Signature:

*Kris von Rosenberg*

☑ e-Signature ID: R48VDHQ

Signed by:  Kris von Rosenberg
Authorized Representative of Austin Glass & Mirror Inc
Dated:  January 15, 2020

EXHIBIT B

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*
Dana DeBeauvoir, County Clerk
Travis County, Texas
Dec 27, 2019 03:29 PM    Fee: $ 130.00
**2019204151**
*Electronically Recorded*

Recording Requested by Austin Glass & Mirror Inc
Please Return To the Austin Glass & Mirror Inc
c/o Mail Center
9450 SW Gemini Dr #7790
Beaverton, Oregon 97008-7105
Reference ID: 2944448

SPACE ABOVE FOR RECORDER'S USE

### AFFIDAVIT OF MECHANICS LIEN BY TIERED CONTRACTOR OR SUPPLIER

State of Texas  |  County of Travis County

**Claimant**
Austin Glass & Mirror Inc
(Mailing Address): 6308 Decker Lane
Austin, Texas 78724
(989) 698-7697

(Physical Address):

**Property Owner**
Panache Development and Construction
4210 Spicewood Springs Rd
Austin, Texas 78759
3443 ZEN GARDEN LIMITED PARTNERSHIP
PO BOX 26539
Austin, Texas 78755

**Amount of Claim**: $686,374.14

General Statement of kind of work done and/or materials furnished (**"Services"**): Furnishing and installing aluminum storefront, curtainwalls and glass& glazing

**Months Services Furnished**
The Claimant provided Services for which payment is requested in the following months:July 2019, August 2019, September 2019, October 2019

**First Date Labor / Materials Furnished:** November 01, 2018

**Last Date Labor / Materials Furnished:** October 30, 2019

**Prime Contractor**
Panache Development & Construction, inc.
3443 Ed Bluestein
Austin, Texas 78724

**Hiring Party**
Panache Development & Construction, inc.
3443 Ed Bluestein
Austin, Texas 78724

**Dates Notices Sent:**
The Claimant Delivered Notices of the Claim to the Property Owner or Reputed Owner, pursuant to 53.056-058 et al., on the following dates, and through the following methods:

**Attachments to this Affidavit of Lien:**

Exhibit A - invoice

**Notices Sent:** Non-Residential Monthly Notice (3 Month)

**Dates Monthly Notices Sent:** December 2019

**Method(s):** certified mail

The Services were performed in construction of improvements at the following described Property **("Property")**:
3443 Ed Bluestein Blvd
Austin, Texas 78721

**Legal Property Description:**

**BEFORE ME**, the undersigned authority, personally came and appeared, Charles Henson, a person of the full age of majority, who upon his/her oath did depose and state the following:

A. That he/she is an authorized and disclosed agent of the above-identified Claimant. As the authorized and disclosed agent of the Claimant, he/she has been provided with the facts related to the claim asserted herein, and to the best of his/her knowledge, information and belief, the facts set forth herein are true and correct. He/she is competent and authorized to make this affidavit.

**2019204151    Page 3 of 27**
20-10410-hcm  Doc#146-1  Filed 07/01/20  Entered 07/01/20 14:33:56  Exhibit A -
Declaration of Don Bayer Pg 8 of 41

Page 8

B. The Claimant is above-identified, as is its mailing address and physical address. The Claimant was the hired by the above-captioned Hiring Party on the project in question, and that the above-captioned Prime Contractor was, upon information and belief, the original contractor or the project in question;

C. Under its contract with the above-identified Hiring Party, the Claimant agreed to provide the above-described Services for the installation of improvements to the above-described Property.

D. The owner or reputed owner of the real property above-described and made subject to this Affidavit of Lien is above-identified as the Property Owner, as the owner's mailing address.

E. The real property sought to be charged with a lien is the property above-described as the Property.

F. The total amount due to the Claimant is above-identified as the Amount of Claim. This amount is just, due and correct, after allowing all credits, offsets and payments. The Claimant claims a lien on the Property and its improvements to secure payment of its Amount of Claim.

G. The additional exhibits attached to this Affidavit of Lien (if any) are true and correct copies of the documents, the documents themselves offering the best evidence of its contents.

H. Each month in which Services were provided to the Property for which payment is requested is identified above as the Months Services Furnished.

I. The date each Notice of Claim was sent to the Owner or Reputed Owner, pursuant to 53.056-058, et al., and the method of its delivery, is identified above as Dates Notices Sent.

State of _Louisiana_
County of _Orleans_

Name of Claimant:
Austin Glass & Mirror Inc

Before Me, undersigned Notary Public, personally came and appeared Charles Henson, known to me to be the person whose name is subscribed to this foregoing instrument and acknowledged to me that the facts asserted therein were true, correct and accurate to the best of his/her information and belief, and that he/she executed the document for the purposes stated therein, and in the capacity stated therein, and as the act and deed of said Claimant.  Subscribed to and sworn before me on the following date: December 27, 2019

Signed:

Claimant, by Authorized Agent
Print Name: Charles Henson
Date:  December 27, 2019

Notary Public

Nathan L. Budde
Notary Public
State of Louisiana
Louisiana Bar No. 32103
My Commission is for Life

# LEGAL DESCRIPTION

TRACT 1: Lot 1A-B, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1,
MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in
Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 2: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that
certain Easement Agreement for Emergency Reciprocal Access, dated November 15, 2006, by
and between Freescale Semiconductor, Inc. and Hewlett-Packard Company, recorded in
Document No. 2006222165, Official Public Records, Travis County, Texas; over and across
those portions of Lot 1A, and 2A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED
BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No.
2006000304, Official Public Records, Travis County, Texas, now known as Lot 1A-A, and Lot 1A-
B, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC.
ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No.
200900045, Official Public Records, Travis County, Texas.

TRACT 3: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that
certain Reciprocal Access Agreement for Landscape and Building Maintenance, dated November
15, 2006, by and between Freescale Semiconductor, Inc. and Hewlett-Packard Company,
recorded in Document No. 2006222167, Official Public Records, Travis County, Texas; over and
across those portions of Lot 1A, and 2A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC.
ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No.
2006000304, Official Public Records, Travis County, Texas, now known as Lot 1A-A, and Lot 1A-
B, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC.
ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No.
200900045, Official Public Records, Travis County, Texas.

TRACT 4: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that
certain Ingress and Egress, dated August 10, 2012, by and between MFPB Ed Bluestein LLC and
Freescale Semiconductor, Inc., recorded in Document No. 2012132396, Official Public Records,
Travis County, Texas; over and across those portions of Lot 1A-A, RESUBDIVISION PLAT OF
LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY,
according to the map or plat thereof, recorded in Document No. 200900045, Official Public
Records, Travis County, Texas.

TRACT 5: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that
certain Parking Spaces Easement Agreement, dated August 10, 2012, by and between Freescale
Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No. 2012132397,
Official Public Records, Travis County, Texas; all rights therein to the use of the parking spaces
located on the third and fourth floors shown as G-1 in EXHIBIT "B" of Agreement. Said Parking
Garage located on Lot 1A-A, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF
LOT 1, MOTOROLA INC.
ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No.
200900045, Official Public Records, Travis County, Texas.

TRACT 6: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that
certain Stairwell Ingress and Egress Access Easement, dated August 10, 2012, by and between
Freescale Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No.
2012132398, Official Public Records, Travis County, Texas; all rights therein to the use of the
stairwell shown in EXHIBIT "A" of Agreement. Said stairwell located on Lot 1A-A,
RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED
BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No.
200900045, Official Public Records, Travis County, Texas.

2019204151 Page 5 of 27
20-10410-hcm Doc#146-1 Filed 07/01/20 Entered 07/01/20 14:33:56 Exhibit A - Declaration of Don Bayer Pg 10 of 41

Page 10

TRACT 7: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Reciprocal Easement Agreement for Access through Doorway to Buildings K and L, dated August 10, 2012, by and between Freescale Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No. 2012132400, Official Public Records, Travis County, Texas; all rights therein to the access use of the doorway shown in EXHIBIT "B" of Agreement. Said doorway located on Lot 1A-A,
RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 8: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Reciprocal Easement Agreement for Access to Trails and for Lot Line Maintenance, dated August 10, 2012, by and between Freescale Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No. 2012132399, Official Public Records, Travis County, Texas; all rights therein to the pedestrian access over and across the trails currently existing as shown in EXHIBIT "A" of Agreement; all rights therein for landscaping and maintenance. Said trails located on Lot 1A-A, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

# Exhibit A

 

Development and Construction, Inc.

## EXTERIOR WINDOW SYSTEMS AND EXTERIOR DOORS

**CONTRACTOR:**
Panache Development & Construction, Inc.
3443 Ed Bluestein
Austin, TX 78721

**SUBCONTRACTOR:**
Austin Glass & Mirror, Inc.
6308 Decker Lane
Austin. Texas 78724

**OWNERS:**
3443 Zen Garden Limited Partnership
3443 Ed Bluestein, Building V suite 100
Austin, Texas 78721

**PROPERTY:**
Legal Description:
AS DESCRIBED IN EXHIBIT A

**Local Address:**
3443 Ed Bluestein Blvd.
Austin TX 78721

This Subcontract Agreement made the date recited below the signatures herein, by and between **Panache Development & Construction, Inc.** "General Contractor" and **Austin Glass & Mirror, Inc.** "Subcontractor" with respect to the "Property" together with improvements thereon, all hereinafter referred to as the "Property".

WHEREAS, General Contractor has heretofore entered into a contract dated **November 7, 2018** with **Austin Glass and Mirror, Inc.** to do and perform **all work and furnish and supply all materials and labor necessary to complete installation of exterior curtain wall glass, storefront glass exterior glass doors and related materials** ("Improvements") upon the Property according to the Plans and Specifications described as plans for the **3443 Ed Bluestein project known as Eightfold**, supplied by **GSC Architects and related shop drawings** with all of the foregoing made a part hereof for all purposes. All of the plans, specifications and



other matters specifically referenced in the preceding sentence are hereinafter collectively referred to as the "Plans and Specifications".  As used herein the term "**General Contractor** " shall mean **Panache Development & Construction, Inc**. and Subcontractor shall mean **Austin Glass and Mirror, Inc**.

WHEREAS, the parties hereto desire to contract with reference to a part of said work.

NOW THEREFORE, for and in consideration of the mutual and reciprocal obligations herein contained, it is agreed as, follows:

1. <u>WORK SPECIFICATION</u>: Subcontractor shall furnish and pay for all necessary **labor, tools, materials, and equipment, supervision, insurance and taxes** and perform all of the work necessary or incidentally required for the completion of that part of the work covered by the Contract Documents and Plans prepared by architect, structural engineers, as follows (**in case you are unsure about which documents pertain to the scope of your work, please notify the General Contractor in writing with your questions prior to the commencement of work**):

   (a) **Subcontractor is responsible for verifying all measurements and adhering to all city and local ordinances and obtaining all necessary permits before the said work begins.  Subcontractor is responsible for familiarizing themselves with the job before the start date.**
   (b) **All designs deviated from plans shall be the responsibility of the Subcontractor and the General Contractor relies on the expertise and knowledge of the Subcontractor.**
   (c) **Subcontractor agrees to complete the punch lists prepared by third party inspector, structural inspector, the General Contractor and Architect before final payment is paid.**
   (d) **Subcontractor will give fixed costs plus a number of days to do change orders.  The contract shall be extended by the number of days specified in each change order.**
   (e) **Subcontractor is responsible for completing all work in accordance with the plans.**
   (f) **Subcontractor is responsible for adhering to City, County and all other governing authority overseeing the scope of the work and subcontractor must obey their rules and specifications in accordance with the designer's plans and specifications.**
   (g) **The warranty for labor and materials supplied and installed by subcontractor shall be one year from the issuance of a certificate of occupancy for each building.**
   (h) **The scope of this work is as follows:**
      • **Fabricate and install approximately 57,441 sq ft of 2 ½" x 7 ½" Kawneer 1600 wall system 1 curtain wall fully captured without any vertical or horizontal SSG except at elevations CO1, CO7, C31, C36 and C38**



- Glass to be one inch insulated solar blue SB67 vision glass and one inch insulated solar blue SB67 warm grey spandrel.
- Price includes approximately 11,641 sq ft square feet of storefront glazed with clear glass SB90
- Price includes 4 sided SSG glazing at lobby entrance elevations CO1, C07, C31, C36, C38
- Price includes 12 medium stile storefront doors and hardware (5 pairs and 2 singles)
- Price includes 4 pair of Herculite ½" all glass doors with PA-100F hardware
- Price includes 4 aluminum composite panel portals located around the all glass doors. Panels to be 4mm brushed stainless steel finish by Reynobond
- Price includes 19,989 sq ft of 1 ½" thick thermos-fiber insulation with 4mm fire rated clear anodic ACM panels used as back pans at all spandrel areas below roof deck
- Price includes approximately 2053 linear feet of mineral wool and smoke seal between the floor line and the curtain wall bypasses. Smoke seal to be covered with .040 clear anodized break metal floor trim
- Price includes labor, materials, fabrication and equipment for sub contractor to perform subcontractors work
- Sales Tax included on materials only for floors 2, 3 and 4 for buildings F, H and J

Exclusions:
- Purchase of Kawneer aluminum which will be purchased by the General Contractor
- Any metal stud framing
- Leveling of floors
- Metal soffit and wall panel material or installation
- Horizontal structural steel required at elevations CO2, CO8 and CO7 on building F, elevation C31 on building H, elevations C38 on building J
- If subcontractor shall need to remobilize to the jobsite after work has begun, there will be a $50,000 fee for remobilization
- Any tree trimming that may be required in order for subcontractor to perform his work
- Road base put down for construction equipment to drive on
- concrete and framed curbs for glass systems to set on
- Structural steel midspan anchors at open lobbies
- Glass guardrails
- Metal flashings (B5 and B4 / A08.02)
- Waterproofing sill pans with integral dams

Subcontractor's Initials 

General Contractor's Initials  Page 13

2019204151 Page 9 of 27

20-10410-hcm Doc#146-1 Filed 07/01/20 Entered 07/01/20 14:33:56 Exhibit A - Declaration of Don Bayer Pg 14 of 41                Page 14

- **Final cleaning and protection of glass and framing after installation**

2. QUALITY. Subcontractor further agrees that all labor and materials furnished and provided by General Contractor shall be of the kind and quality described in the Plans and Specifications and Manufacturer's specifications and guidelines. In the event of any conflict between the Plans and Specifications, then the Specifications shall control and Subcontractor must notify General Contractor in writing before any changes are made. In the event that there is an error in the Plans and Specifications, Subcontractor must notify the General Contractor in writing to insure that the work done under this contract is not to the detriment of the project as a whole. **General Contractor is relying upon the Subcontractor's expertise to insure that the scope of work is carried out in the best workmanlike manner.**

3. PAYMENTS:
   (a) On Wednesday of every two weeks, Subcontractor shall present to General Contractor a written statement of the work done during the week, which statement, when checked and approved by General Contractor, will be paid within seven (7) working days after receipt of payment from Lender or Owner, provided that progress of the work and payments for labor used and material purchased by Subcontractor have been completed to the satisfaction of Panache and/or inspectors; and further provided that General Contractor may, at its option on each payment, deduct for material, damages to the property, penalties under this contract
   (b) Subcontractor must obtain releases of lien or proof of payment to suppliers in the event that they have provided material under this contract.
   (c) Subcontractor acknowledges and agrees that General Contractor is authorized to withhold funds owed under this contract for items such as but not limited to fines from cleanup, damage to materials, and/or damage to other subcontractors' work.
   (d) Approving a request for payment by the General Contractor does not mean that the work has been inspected or approved. In the event the General Contractor makes an advance it must not be misconstrued as approval of faulty work.
   (e) Subcontractor shall agree with reasonable terms of payment that are required by Lender.
   (f) **General Contractor agrees to pay Subcontractor the sum of $6,197,770.00**
      i. **Payments will be made every two weeks.**
      ii. **Final payment will be paid when work and punch list items are completed and all inspection items by owner's engineer, city [if applicable] and other required inspections completed.**

4. TIME OF PERFORMANCE:
   (a) The Subcontractor shall start the work on **November 9, 2018** and shall complete work by **November 29, 2019.**
   (b) Subcontractor shall carry on said work promptly, efficiently and at a speed

Subcontractor's Initials                  General Contractor's Initials 

that will not cause delay in the progress of General Contractor's work or other portions of the work carried on by other Subcontractors. Subcontractor shall prosecute certain portions of the work in preference to others, if so ordered by General Contractor.

(c) GENERAL CONTRACTOR SHALL NOT BE LIABLE TO SUBCONTRACTOR, WITH THE EXCEPTION TO OTHER PORTIONS OF THIS CONTRACT, FOR ANY DELAY TO SUBCONTRACTOR'S WORK RESULTING FROM THE ACT, NEGLIGENCE OR DEFAULT OF THE OWNER OR THE ARCHITECT OR BY REASON OF FIRE OR OTHER CASUALTY, OR ON ACCOUNT OF RIOTS, STRIKES OR OTHER COMBINED ACTION OF THE WORKMEN OR OTHERS, OR ON ACCOUNT OF ANY ACTS OF GOD OR ANY OTHER CAUSE BEYOND GENERAL CONTRACTOR'S CONTROL; OR ON ACCOUNT OF ANY CIRCUMSTANCES CAUSED OR CONTRIBUTED TO BY SUBCONTRACTOR WITH THE EXCEPTION A SHUT-DOWN OF THE PROJECT WHICH WILL REQUIRE REMOBILIZATION.

(d) Should General Contractor delay the Subcontractor's work, then and in such event General Contractor shall owe Subcontractor only an extension of time with exception to other portions of this contract for completion equal to the delay caused, and then only if written claims for delays are made to General Contractor within forty-eight (48) hours from the beginning of the delay. This does not allow the Subcontractor to renegotiate his labor cost.

(e) In the event that Subcontractor does not complete the job by **November 29,2019** General Contractor is authorized to deduct **$250.00** per day for delays out of this contract. In the event, that there is not enough money left to cover such delays, Subcontractor shall owe these fees to General Contractor if the General Contractor prevails in legal proceedings under the terms of this contract in addition to other damages. In the event, Subcontractor is insolvent or does not have funds available, he agrees to transfer personal or business property such as truck, equipment at market value. The penalty will be waived in the event the subcontractor has not received payments in a timely manner.

5. <u>CONTRACT DOCUMENTS BINDING</u>: Subcontractor has read and is thoroughly familiar with said Contract Documents and agrees to be bound to General Contractor by the terms of said Contract Documents insofar as they relate in any part or in any way to the work undertaken herein, and to assume towards General Contractor, in connection with the work covered by this subcontract, all of the obligations and responsibilities which General Contractor by those documents assumes towards the Owner or anyone else.

6. <u>DIRECTION OF ARCHITECT OR ENGINEER OR DESIGNER</u>: The work included in this contract shall be performed under the direction of the General Contractor. In the event of conflict between General Contractor and Subcontractor, the Architect's, Engineer's or Designer's decision as to the true construction and meaning of the drawings and specifications shall be final. Subcontractor shall conform to and abide by any additional specifications, drawings or explanations furnished by Architect to detail and illustrate work to be done.



7. <u>ALTERATIONS</u>:

   (a) Subcontractor shall make all alterations, furnish materials for and perform all extra work or omit any work General Contractor may require without nullifying this agreement, at a reasonable addition to, or deduction from, the contract price hereinafter set forth and pro rata to the same. **HOWEVER, NO ALTERATIONS OR CHANGES SHALL BE MADE EXCEPT UPON GENERAL CONTRACTOR'S WRITTEN ORDER AND APPROVAL PRIOR TO THE COMMENCEMENT OF SUCH WORK.** The amount to be paid by General Contractor or allowed by Subcontractor as a result of such changes or alterations shall be stated in such order. **Any changes or alterations to this contract that are not approved and agreed to in writing shall be deemed to have been done by the Subcontractor at no extra cost to the General Contractor. If General Contractor accepts in writing the Subcontractor's proposal to change, this change order will become a binding attachment to the contract documents. Any General Contractor party (General Contractor's employee) may not sign the Change Order as agent for the General Contractor. Failure of General Contractor to approve Subcontractor's proposal for change three days after the receipt by the General Contractor will constitute a rejection of the proposal.**

   (b) Subcontractor shall submit proposals for alterations in the manner provided by the Contract Documents or as instructed by General Contractor.

8. <u>WORK AREA</u>:   Subcontractor shall provide sufficient safe and proper facilities at all times for the inspection of the work by General Contractor, the Architect, Engineer or their authorized representatives, and shall, within twenty-four (24) hours after receiving written notice from General Contractor to that effect, proceed to take down all portions of the work and remove from the grounds and from the buildings all material, whether worked or un-worked, which the Architect, Engineer or General Contractor, shall condemn as unsound or improper or as failing to conform in any way to the Contract Documents, and shall proceed to make good all such work condemned and all other work damaged or destroyed in removing or making good such condemned work. However, Subcontractor shall not remove any other material from the building site without General Contractor's written permission.

   (a) General Contractor shall have the right under this contract to hire other Subcontractors to clean the site and charge such fees against the amounts owed to Subcontractor under this contract with written notice or faxed notice to Subcontractor.

   (b) Subcontractor agrees to comply with all rules, restrictions and covenants that are enforced by the Building Rules for the campus. In the event that the Subcontractor causes fines to be imposed on the General Contractor, Subcontractor shall be charged such fees against the Subcontractor under this contract. General Contractor will provide written rules/restrictions to



Subcontractor:
   (1) No overnight trailers parked on the street or on the lot.
   (2) No vehicles can be worked on at the jobsite.
   (3) No outdoor cooking or open fires.
   (4) No trash left on the street.
   (5) All trash must be picked up and placed in the dumpster on a daily basis.
   (6) No loud music allowed.
   (7) No smoking.
   (8) A connex box may be placed on the property if General Contractor allows and only placed in a location approved by the General Contractor. If it needs to be relocated at any time, any cost to relocate shall be at the subcontractors expense.

9. <u>SUPPLY OF MATERIALS AND LABOR:</u>  Subcontractor shall at all times supply adequate tools, appliances and equipment, a sufficient number of properly qualified workmen and a sufficient amount of quality materials and supplies to prosecute said work efficiently and promptly, and shall promptly pay for all materials purchased, and shall pay all workmen each week, and at General Contractor 's request shall furnish General Contractor weekly with signed receipts from all workmen, showing the date of payment, amount paid, number of hours paid for, the days on which said work performed, the classification of the labor so paid, and the rate of wage per hour paid, and at General Contractor 's request shall supply General Contractor weekly with a reasonable number of copies of payroll verified by Subcontractor.

10. <u>COMPLIANCE WITH LAWS:</u>

(a) Subcontractor shall comply with all federal, state, and municipal laws, codes, regulations and ordinances effective where the work under this contract is to be performed, and to pay all sales or use taxes and contributions imposed or required by any law for employment insurance, pensions, old age retirement funds, or similar purposes, in respect to the work under this contract and the employees of Subcontractor in the performance of said work. **Subcontractor must provide a verifiable Federal Tax ID number or Social Security number before final payments are made.**

(b) Subcontractor accepts exclusive liability for all taxes and contributions required of the General Contractor or Subcontractor by the Federal Social Security Act and the unemployment compensation law or any other similar law of any state, in respect to the employees of Subcontractor in the performance of the work herein provided for, and agrees to furnish General Contractor with suitable written evidence that Subcontractor has been authorized to accept such liability. If Subcontractor fails to furnish such evidence prior to beginning of said work, General Contractor may, at its option, pay or reserve for payment said taxes and contributions and deduct the



2019204151  Page 13 of 27

20-10410-hcm  Doc#146-1  Filed 07/01/20  Entered 07/01/20 14:33:56  Exhibit A -
Declaration of Don Bayer  Pg 18 of 41                                    Page 18

amount so paid or reserved from payments due or to be become due to Subcontractor. Subcontractor agrees to protect and hold harmless General Contractor against all liability in respect to said employees under any of said laws.

(c) Subcontractor shall secure and pay for all required permits and licenses for the prosecution of the work covered by this contract.

(d) Subcontractor agrees and authorizes General Contractor to pay sums owed under this contract to IRS if IRS makes such demand on the General Contractor.

11. <u>SUFFICIENT MATERIALS AND WORKMEN</u>: Should Subcontractor at any time refuse or neglect to supply a sufficient number properly qualified workmen or a sufficient quantity of materials of proper quality, or abandon the work or fail in any respect to prosecute the work covered by this contract with promptness and diligence, or fail in the performance of any of the agreements herein contained, General Contractor may, at its option, after forty-eight (48) hours notice to Subcontractor, provide any such labor and materials and deduct the cost thereof from any money then due Subcontractor for the purpose of completing the work covered by this contract. General Contractor shall have the unqualified and unrestricted right to remove  Subcontractor from the job site, and General Contractor may either complete said work itself or may employ, or contract with, any other person or persons to complete the work and provide the materials, and in case of such removal or any termination of this contract, Subcontractor shall not be entitled to receive any further payment under this contract until said work shall has been finished completely and payment made by the Owner, at which time if the unpaid portion of the amount to be paid under this contract exceeds the charges, expenses and damages sustained by the General Contractor in completing the work or as a result of such default, such excess shall be paid by General Contractor to Subcontractor; but if such charges, expenses and damages shall exceed said unpaid portion, Subcontractor shall pay the difference to General Contractor .

## 12. <u>INDEMNITY</u>:

**(a) Subcontractor hereby agrees to indemnify and save harmless General Contractor and property owner from and against all claims, demands, damages, losses, expenses, costs, liabilities, injuries, and causes of action arising from injury to persons or damage to property arising out of, connected with or incident to the performance of the work hereunder, except in cases of sole negligence on the part of the General Contractor , and Subcontractor will defend any and all such actions brought against General Contractor and will pay any judgment rendered in such suits and will reimburse and indemnify**



General Contractor for all expenditures or expenses including court costs and attorney's fees, made or incurred by General Contractor by reason of such claims, demands, losses, expenses, liabilities, injuries or suits.

(b) The Subcontractor shall carry at his own expense Workmen's Compensation and Employer's Liability, Comprehensive General Liability, including Contractual Liability and Automobile Liability, with acceptable companies with the minimum limits set no less than $2,000,000.00. In an event that the Subcontractor fails to provide such insurances or fails to carry the policies throughout the project, the General Contractor will have the right to deduct 30% of the total contract. Subcontractor agrees to have General Contractor listed as an additional insured under such policies, and to provide General Contractor with a certificate of insurance prior to commencement of the work hereunder.

(c) Subcontractor's obtaining of the insurance required by the foregoing subparagraph 12. (b) shall in no manner lessen or affect Subcontractor's obligation as set forth in subparagraph 12. (a) of this article, or in any of the other provisions of this agreement.

13. **PATENT RIGHTS:** Subcontractor agrees to indemnity and save harmless General Contractor from any and all claims or suits for infringement of patents, or violations of patent rights by Subcontractor, and further agrees to pay all loss and expense incurred by General Contractor by reason of any such claims or suits, including attorney's fees.

14. STORAGE SPACE: Subcontractor agrees to abide by General Contractor 's decision as to the allotment of all storage and working space at the building site and in the bulking and arrangement of stored materials thereon.

15. REMOVAL OF MATERIALS: Subcontractor shall remove from the building or buildings, as often as directed by General Contractor, all rubbish, debris, or surplus materials which may accumulate from the prosecution of the work covered by this contract, and should Subcontractor fail to do so upon such notice, General Contractor may, in its option, cause the same to be removed at Subcontractor's expense.

16. PAYMENT SCHEDULE: Before any of the payments are made hereunder, the Subcontractor shall submit to General Contractor a fair and proper itemized

schedule for all of the work included in this contract, and payment shall be made to Subcontractor in proportion to said schedule less the agreed retention.

17. <u>DEFECTIVE WORK</u>:   No payment made under this contract shall be construed to be an acceptance of defective work or improper materials.   The General Contractor shall reserve the right to withhold monies from the Subcontractor from contact amounts owed to Subcontractor for defective work plus the cost of administrating the work, delays, any demolition, trash removal and other items that may be related to the defective work.

18. <u>REPLACEMENT AND RECONSTRUCTION OF WORK</u>.   Any and all work and/or materials provided by Subcontractor which are condemned by or disapproved by the appropriate inspectors or representatives of applicable governmental agencies and authorities or by the engineer shall be promptly removed, replaced and reconstructed by the Subcontractor to bring such items into compliance with applicable requirements and the Plans and Specifications or Manufacturer's specifications and guidelines.  Such work shall be done at the sole expense of Subcontractor, except that any insurance proceeds paid with respect to such matters shall be credited to General Contractor 's obligations hereunder.

19. <u>DEFAULT</u>.   Subcontractor agrees that, if at any time before final completion of Subcontractor's work and duties hereunder, Subcontractor shall (a) become bankrupt or insolvent; (b) neglect to supply a sufficient number of workers of requisite skill; (c) fail to construct the Improvements and to conduct the construction of operations in the manner called for by the Plans and Specifications, or as directed by General Contractor; (d) fail to furnish materials of the quantity, kind and quality required by the Plans and Specifications,  this Contract, or the General Contractor; (e) fail to complete the construction of the Improvements and Subcontractor's obligations as contemplated herein within the time herein provided; (f) fail in any respect to prosecute the construction of the Improvements and Subcontractor's obligations with promptness and diligence; or (g) otherwise fail to perform any of the covenants, conditions, terms or provisions of this Contract as recited herein; (h) fail to show up at the jobsite for more than two days; or resign from this contract, then Subcontractor shall be deemed to be in default hereunder.  In the event that said default shall continue for a period of 3 days after receipt by Subcontractor of written notification given by General Contractor (or General Contractor 's representative) of the nature and extent of such default, the General Contractor shall have the right, but not the obligation, to any one or more of the following remedies, which shall not be General Contractor's exclusive remedies and which shall not be mutually exclusive: (a) correct such default or retain a third party or third parties to correct such default and deduct the cost thereof from any money then due or thereafter to become due to the Subcontractor; (b) terminate this Contract and complete the construction of Improvements and Subcontractor's obligations hereunder (or to retain or contract with a third party or third parties to perform such obligations and to deduct the cost thereof from any money then due or thereafter to become due to the

Subcontractor's Initials _____

General Contractor's Initials _____

Subcontractor); (c) pursue any other remedies available to General Contractor as recited herein or as provided by law; or (d) pursue any combination of the foregoing. Nothing herein shall prohibit or restrict General Contractor from pursuing recovery for (a) any costs or expenses incurred or expended by General Contractor in completion of Subcontractor's obligations to the extent that all costs and expenses incurred and expended by General Contractor exceed the sum set forth in Section 3 hereof and (b) any and all damages and any and all other causes of action that may be available to General Contractor by law or otherwise.

20. <u>PAYMENT NOT ADMISSION OR ACCEPTANCE</u>. The Subcontractor further agrees that no payment made under this Contract shall operate as or be held to be an admission on the part of General Contractor that this Contract or any part thereof has been complied with or that any material furnished or labor performed are of the quantity, kind or quality required.

21. <u>OBJECTIONABLE WORKMEN</u>: Neither shall the Subcontractor nor any of its Subcontractors shall employ any workmen whose employment on the work covered by this contract is objected to by General Contractor or violates any law.

22. (a) <u>NO LIENS</u>: Subcontractor agrees to turn over said work to General Contractor in good condition and free and clear from all claims, encumbrances and liens for labor, services or materials, and to protect, and save harmless **General Contractor and Owner** from all claims, encumbrances and liens growing out of the performance of this work and all maintenance required under the Contract Documents for which subcontractor has been paid and should Subcontractor, during the progress of said work, or at any time thereafter, fail to pay for all labor, services and materials used or purchased for use in the prosecution of said work, General Contractor may, at its option, and without notice to Subcontractor, pay all such claims and charge the amounts thereof to Subcontractor. In the event suit is filed by any person, firm or corporation asserting a claim or lien for labor, services or materials used or purchased for use in the work covered by this contract, Subcontractor will, at its own cost and expense, including attorney's fees, defend such suit and pay any judgment rendered therein.

(b) SUBCONTRACTOR WAIVES ANY AND ALL LIEN RIGHTS ON THE PROPERTY OR THE IMPROVEMENTS AND AGREES TO NOT FILE OR ASSERT ANY SORT OF LIEN AGAINST THE PROPERTY OR IMPROVEMENTS. If Subcontractor or any of his Subcontractors' or suppliers' files or asserts a lien on the property or improvements, then Subcontractor agrees to indemnify General Contractor and Owner for any and all expenses, attorney's fees and litigation costs or expenses incurred in attempting to remove the lien or the assertion of the lien against the property or improvements. SUBCONTRACTOR HEREBY APPOINTS ADAM ZARAFSHANI AS ITS ATTORNEY IN FACT FOR THE PURPOSE OF FILING A RELEASE OF ANY LIEN FILED OR ASSERTED BY THE SUBCONTRACTOR AGAINST THE PROPERTY OR

Subcontractor's Initials _____ 𝒞𝓑                                    General Contractor's Initials _____ Page 21



2019204151  Page 17 of 27

20-10410-hcm  Doc#146-1  Filed 07/01/20  Entered 07/01/20 14:33:56  Exhibit A -
Declaration of Don Bayer Pg 22 of 41                                    Page 22

IMPROVEMENTS,FOR WHICH SUBCONTRACTOR HAS BEEN PAID WITH FULL AUTHORITY TO ACT IN THE PLACE OF SUBCONTRACTOR WITH REGARD TO THE FILING OF SAID RELEASE, AND SAID ATTORNEY IN FACT MAY FILE SAID RELEASE WITHOUT PRIOR NOTICE TO SUBCONTRACTOR AND WITHOUT ANY FURTHER ACTION BY SUBCONTRACTOR. This appointment of the Attorney in Fact shall survive any closeout of this contract and the completion of Subcontractor's work on the project. Subcontractor agrees that any person may rely upon this appointment and the power and authority granted herein to said Attorney in Fact.

(c) GUARANTEE OF WORK:  Subcontractor agrees to guarantee its work against all defects of materials, equipment or workmanship for the period of time as called for in the Contract documents, or if no time period is called for by the Contract Documents, then for a period of two years from the closing date of completion of said work between Owner and General Contractor.

23. NON-ASSIGNABILITY:

(a) Subcontractor shall not sublet, assign or transfer this contract or any part thereof without General Contractor 's prior written consent.

(b) Other parties bound – General Contractor and subcontractor each binds themselves, their partners, successors, assigns, and legal representatives of the other party in all matters related to this Contract.

24. LEGAL FEES:  Should General Contractor employ an attorney to enforce any of the provisions hereof, or to protect its interest in any matter arising under this contract, or to collect damages for the breach of this contract, or to prosecute or defend any suit resulting from this contract, or to recover on the surety bond given by Subcontractor under this contract, Subcontractor and his surety, jointly and severally, agree to pay General Contractor all reasonable cost, charges, expenses, and attorney fees expended or incurred therein. Subcontractor agrees that any suit filed under this contract must be filed in Travis County, Texas.

25. AGREEMENT TO MEDIATE/ARBITRATE.  The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract or the work that may arise between the parties.  If the dispute cannot be resolved by negotiation, the dispute shall be submitted to non-binding mediation before a mutually acceptable mediator.  The cost of mediation services shall be shared equally by the parties to the dispute. **In the event the dispute is not resolved by mediation, then the parties agree to submit the disputed issues to BINDING ARBITRATION.  Each party shall select one arbitrator to represent their interests, and the two arbitrators so selected shall mutually agree on a third arbitrator.  In the event the third arbitrator has not been agreed upon within seven (7) days after each party's arbitrator has been appointed, then the parties agree to apply to a court having jurisdiction over the subject matter for appointment on he third arbitrator.  The arbitration hearing shall be conducted in Austin, Texas, in accordance with the construction arbitration**



rules of the American Arbitration Association. **The parties are not obligated to have the arbitration administrated by Triple A. The award or decision rendered by two of the three arbitrators shall be final, conclusive and binding, and judgment may be entered upon such decision in any court having jurisdiction thereof.**

26. <u>INDEPENDENT CONTRACTOR.</u>  The parties hereto agree that the relationship of the Subcontractor to the General Contractor shall be that of an independent contractor and nothing herein shall be construed to make Subcontractor an agent, servant, employee of the General Contractor, or create any partnership, joint venture or similar associate of General Contractor.

27. <u>TEXAS LAW TO APPLY</u>.   This Contract shall be construed and enforced in accordance with the laws of the State of Texas.

28. <u>PARTIAL INVALIDITY</u>.   If any part of this Contract shall be held invalid, illegal, inoperative or unenforceable for any reason, then the failure of such part shall not be held to invalidate any other part herein, which shall remain in full force and effect.

29. <u>NO PERFORMANCE TO DATE</u>.  The parties hereto agree that as of the date of execution hereto, there has been no material furnished and no labor performed with respect to the construction of any of the Improvements or other obligations of the Subcontractor hereunder.

30. <u>SUBCONTRACTOR'S DUTY TO GENERAL CONTRACTOR</u>.
    (a) To furnish Subcontractor's best skill and judgment in the performance of all obligations hereunder and to fully cooperate with General Contractor.
    (b) To furnish efficient administration and supervision of construction of improvements.
    (c) To complete all work in good and "workmanlike" manner.

31. <u>ENTIRE AGREEMENT</u>.  THIS WRITTEN AGREEMENT AND OTHER AGREEMENTS SIGNED SIMULTANEOUSLY WITH THE SIGNING HEREOF REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  THE PARTIES ACKNOWLEDGE THAT THERE ARE NO REPRESENTATIONS THAT HAVE BEEN MADE BY ONE OF THEM TO THE OTHER TO INDUCE THEIR ENTERING INTO THIS AGREEMENT OR UPON WHICH THEY ARE RELYING IN ANY MANNER. ANY ADDITIONS HERETO OR CHANGES HEREIN MUST BE IN WRITING TO BE EFFECTIVE.

**SUBCONTRACTOR ACKNOWLEDGES THAT ADAM ZARAFSHANI IS AN EMPLOYEE OF GENERAL CONTRACTOR, AND THAT HIS**


Subcontractor's Initials _____


General Contractor's Initials Page 23

**2019204151  Page 19 of 27**

20-10410-hcm  Doc#146-1  Filed 07/01/20  Entered 07/01/20 14:33:56  Exhibit A -
Declaration of Don Bayer Pg 24 of 41                                    Page 24

**ACTIONS AND STATEMENTS PRIOR AND SUBSEQUENT TO THE EXECUTION OF THIS CONTRACT ARE DONE OR MADE SOLELY IN HIS CAPACITY AS AN EMPLOYEE OF GENERAL CONTRACTOR. SUBCONTRACTOR AGREES THAT ADAM ZARAFSHANI SHALL NOT HAVE ANY INDIVIDUAL LIABILITY TO SUBCONTRACTOR FOR ANY CLAIM RELATED TO THE IMPROVEMENTS OR THIS CONTRACT.**

**Subcontractor acknowledges Panache Development & Construction, Inc. has obtained an independent inspector, at their expense, during the construction of the Improvements to insure Subcontractor's compliance with this Contract and the Plans and Specifications.**

**PANACHE DEVELOPMENT & CONSTRUCTION, INC.**

By: _____

Adam Zarafshani, President

**SUBCONTRACTOR:**

By: _____

Printed Name
Authorized agent for
Austin Glass and Mirror, Inc.

# EXHIBIT A
## LEGAL DESCRIPTION

TRACT 1: Lot 1A-B, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 2: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Easement Agreement for Emergency Reciprocal Access, dated November 15, 2006, by and between Freescale Semiconductor, Inc. and Hewlett-Packard Company, recorded in Document No. 2006222165, Official Public Records, Travis County, Texas; over and across those portions of Lot 1A, and 2A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 2006000304, Official Public Records, Travis County, Texas, now known as Lot 1A-A, and Lot 1A-B, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 3: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Reciprocal Access Agreement for Landscape and Building Maintenance, dated November 15, 2006, by and between Freescale Semiconductor, Inc. and Hewlett-Packard Company, recorded in Document No. 2006222167, Official Public Records, Travis County, Texas; over and across those portions of Lot 1A, and 2A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 2006000304, Official Public Records, Travis County, Texas, now known as Lot 1A-A, and Lot 1A-B, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 4: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Ingress and Egress, dated August 10, 2012, by and between MFPB Ed Bluestein LLC and Freescale Semiconductor, Inc., recorded in Document No. 2012132396, Official Public Records, Travis County, Texas; over and across those portions of Lot 1A-A, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 5: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Parking Spaces Easement Agreement, dated August 10, 2012, by and between Freescale Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No. 2012132397, Official Public Records, Travis County, Texas; all rights therein to the use of the parking spaces located on the third and fourth floors shown as G-1 in EXHIBIT "B" of Agreement. Said Parking Garage located on Lot 1A-A, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC.
ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 6: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Stairwell Ingress and Egress Access Easement, dated August 10, 2012, by and between Freescale Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No. 2012132398, Official Public Records, Travis County, Texas; all rights therein to the use of the stairwell shown in EXHIBIT "A" of Agreement. Said stairwell located on Lot 1A-A, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.



TRACT 7: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Reciprocal Easement Agreement for Access through Doorway to Buildings K and L, dated August 10, 2012, by and between Freescale Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No. 2012132400, Official Public Records, Travis County, Texas; all rights therein to the access use of the doorway shown in EXHIBIT "B" of Agreement. Said doorway located on Lot 1A-A,
RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

TRACT 8: Non-Exclusive Easement Estate appurtenant to Tract 1 created pursuant to that certain Reciprocal Easement Agreement for Access to Trails and for Lot Line Maintenance, dated August 10, 2012, by and between Freescale Semiconductor, Inc., and MFPB Ed Bluestein LLC, recorded in Document No. 2012132399, Official Public Records, Travis County, Texas; all rights therein to the pedestrian access over and across the trails currently existing as shown in EXHIBIT "A" of Agreement; all rights therein for landscaping and maintenance. Said trails located on Lot 1A-A, RESUBDIVISION PLAT OF LOT 1A, RESUBDIVISION PLAT OF LOT 1, MOTOROLA INC. ED BLUESTEIN FACILITY, according to the map or plat thereof, recorded in Document No. 200900045, Official Public Records, Travis County, Texas.

**AUSTIN GLASS & MIRROR, INC.**
6308 DECKER LANE
AUSTIN, TX 78724
Phone: (512) 928-9999
Fax: (512) 926-7284

**INVOICE**

INVOICE NO.
18347

CUST **PANACHE DEVELOPMENT
& CONSTRUCTION, INC.**
P.O. BOX 26539
AUSTIN, TX 78755

PROJ **EIGHT FOLD BUILDING H
AUSTIN, TEXAS
GLASS AND GLAZING PER QUOTE**

| ACCOUNT NO. | CONTRACT NO. | | INVOICE DATE | TERMS | | PAGE |
|-------------|--------------|---|--------------|--------|---|------|
| PANACHE | QUOTE | | 7/26/2019 | Net 30 | | 1 |

Application Notes:
PAY APPLICATION NUMBER THREE(3)
LABOR AND MATERIALS TO FURNISH AND INSTALL
ALUMINUM STOREFRONT GLASS AND GLAZING AT
UPPER LEVELS PER QUOTE ON REFERENCED PROJECT
FOR WORK PERFORMED THROUGH 07.31.2019

ORIGINAL CONTRACT SUM.................................................... 1,807,853.05
NET CHANGE BY CHANGE ORDERS ................................................. 0.00
CONTRACT SUM TO DATE.................................................... 1,807,853.05
TOTAL COMPLETED AND STORED TO DATE ....................... 736,000.00
RETAINAGE ......................................................................................... 0.00
TOTAL EARNED LESS RETAINAGE........................................ 736,000.00
LESS PREVIOUS CERTIFICATES FOR PAYMENT................. 446,000.00
SALES TAX ........................................................................................ 0.00
**CURRENT PAYMENT DUE ..................................... 290,000.00**

BALANCE TO FINISH, PLUS RETAINAGE............................ 1,071,853.05

2019204151 Page 23 of 27

AUSTIN GLASS & MIRROR, INC.

AUSTIN, TX 78724

(512) 928-9999

| Sold to | | | | Ship to | | | |
|---|---|---|---|---|---|---|---|
| PANACHE DEVELOPMENT & CONSTRUCTION, INC. P.O. BOX 26539 AUSTIN, TX 78755 | | | | EIGHT FOLD EQUIPMENT PER QUOTE | | | |

| Account | P.O. Num | Ship Via | Ship Date | Terms | Invoice Date | Page |
|---|---|---|---|---|---|---|
| PANACHE | VERBAL | AGM | 8/1/19 | Net 30 | 8/9/19 | 1 |

| Item | Quantity | Description | Unit Price | Extended Price |
|---|---|---|---|---|
| | 1 | BRAKE METAL PRESS | 2,500.00 | 2,500.00 |
| | 1 | METAL SLITTER | 500.00 | 500.00 |
| | 4 | EA.> GLASS HANDLING SUCTION CUPS | 125.00 | 500.00 |

| | |
|---|---|
| Subtotal | 3,500.00 |
| Tax | 288.75 |
| Total | $3,788.75 |

2019204151 Page 24 of 27
20-10410-hcm Doc#146-1 Filed 07/01/20 Entered 07/01/20 14:33:56 Exhibit A -
Declaration of Don Bayer Pg 29 of 41

Page 29

**INVOICE**

INVOICE NO
18385

AUSTIN GLASS & MIRROR, INC.
6308 DECKER LANE
AUSTIN, TX 78724
Phone: (512) 928-9999
Fax: (512) 926-7284

CUST  PANACHE DEVELOPMENT
& CONSTRUCTION, INC.
P.O. BOX 26539
AUSTIN, TX 78755

PROJ  EIGHT FOLD BUILDING H
AUSTIN, TEXAS
GLASS AND GLAZING PER QUOTE

| ACCOUNT NO. | CONTRACT NO. | | INVOICE DATE | TERMS | | | PAGE |
|---|---|---|---|---|---|---|---|
| PANACHE | QUOTE | | 8/30/2019 | Net 30 | | | 1 |

Application Notes:
PAY APPLICATION NUMBER FOUR(4)
LABOR AND MATERIALS TO FURNISH AND INSTALL
ALUMINUM STOREFRONT GLASS AND GLAZING AT
UPPER LEVELS PER QUOTE ON REFERENCED PROJECT
FOR WORK PERFORMED THROUGH 08.31.2019

ORIGINAL CONTRACT SUM .................................................. 1,807,853.05
NET CHANGE BY CHANGE ORDERS ................................................ 0.00
CONTRACT SUM TO DATE................................................. 1,807,853.05
TOTAL COMPLETED AND STORED TO DATE ....................... 896,000.00
RETAINAGE ...................................................................................... 0.00
TOTAL EARNED LESS RETAINAGE........................................ 896,000.00
LESS PREVIOUS CERTIFICATES FOR PAYMENT................. 736,000.00
SALES TAX ....................................................................................... 0.00
**CURRENT PAYMENT DUE** ..................................... **160,000.00**

BALANCE TO FINISH, PLUS RETAINAGE............................... 911,853.05

AUSTIN GLASS & MIRROR, INC.
6208 Dixie Drive
AUSTIN, TX 78724

(512) 928-9999

| Sold to | | Ship to | |
|---|---|---|---|
| PANACHE DEVELOPMENT & CONSTRUCTION, INC. P.O. BOX 26539 AUSTIN, TX 78755 | | 8 FOLD | |

| Account | P.O. Num | Ship Via | Ship Date | Terms | Invoice Date | Page |
|---|---|---|---|---|---|---|
| PANACHE | | | 9/17/19 | Net 30 | 9/17/19 | 1 |

| Item | Quantity | Description | Unit Price | Extended Price |
|---|---|---|---|---|
| 505 | 1.00 | 2 WOOD'S POWR GRIP CUPS | 250.00 | 250.00 |

| | |
|---|---|
| Subtotal | 250.00 |
| Tax | 20.63 |
| Total | $270.63 |

2019204151  Page 26 of 27

ABBEN GLASS & MIRROR, INC.                              Invoice A -
6300 DECKER LANE                                        Page 31            18431
AUSTIN, TX 78724

(512) 928-9999

| Sold to | | Ship to | |
|---|---|---|---|
| PANACHE DEVELOPMENT & CONSTRUCTION, INC.<br>P.O. BOX 26539<br>AUSTIN, TX 78755 | | EQUIPMENT REPAIR<br>8 FOLD PROJECT – AUSTIN, TX<br>SEE OPIFEX QUOTE ATTACHED | |

| Account | P.O. Num | Ship Via | Ship Date | Terms | Invoice Date | Page |
|---|---|---|---|---|---|---|
| PANACHE | VERBAL | OPIFEX | 9/23/19 | Net 30 | 9/25/19 | 1 |

| Item | Quantity | Description | Unit Price | Extended Price |
|---|---|---|---|---|
| | 1 | LABOR AND MATERIALS TO REPLACE FORK TINES ON DAMAGED EQUIPMENT PER ATTACHED QUOTE #Q10234 FROM OPIFEX--------------------------------> | 2,157.40 | 2,157.40 |

| | |
|---|---|
| Subtotal | 2,157.40 |
| Tax | 177.99 |
| Total | $2,335.39 |

2019204151 Page 27 of 27
20-10410-hcm Doc#146-1 Filed 07/01/20 Entered 07/01/20 14:33:56 Exhibit A -
Declaration of Don Bayer Pg 32 of 41

Page 32

AUSTIN GLASS & MIRROR, INC.
6308 DECKER LANE
AUSTIN, TX 78724
Phone: (512) 928-9999
Fax: (512) 926-7284

| INVOICE |

INVOICE NO
18455

CUST  PANACHE DEVELOPMENT
      & CONSTRUCTION, INC.
      P.O. BOX 26539
      AUSTIN, TX 78755

PROJ  EIGHT FOLD BUILDING H
      AUSTIN, TEXAS
      GLASS AND GLAZING PER QUOTE

| ACCOUNT NO | CONTRACT NO | | INVOICE DATE | TERMS | | PAGE |
|---|---|---|---|---|---|---|
| PANACHE | QUOTE | | 10/4/2019 | Net 30 | | 1 |

Application Notes:
    PAY APPLICATION NUMBER FIVE(5)
    LABOR AND MATERIALS TO FURNISH AND INSTALL
    ALUMINUM STOREFRONT GLASS AND GLAZING AT
    UPPER LEVELS PER QUOTE ON REFERENCED PROJECT
    FOR WORK PERFORMED THROUGH 10.31.2019


    ORIGINAL CONTRACT SUM .................................................. 1,845,140.00
    NET CHANGE BY CHANGE ORDERS .................................................. 0.00
    CONTRACT SUM TO DATE.................................................. 1,845,140.00
    TOTAL COMPLETED AND STORED TO DATE .................... 1,126,000.00
    RETAINAGE .................................................................................. 0.00
    TOTAL EARNED LESS RETAINAGE.................................... 1,126,000.00
    LESS PREVIOUS CERTIFICATES FOR PAYMENT................. 896,000.00
    SALES TAX .................................................................................. 0.00
    **CURRENT PAYMENT DUE** ...................................... **230,000.00**

    BALANCE TO FINISH, PLUS RETAINAGE............................... 719,140.00

# EXHIBIT "C"

| | REMOVABLE ITEM | LOCATION (BUILDING & ROOM) | FUNCTION IN SYSTEM | REMOVAL PROCEDURE | DAMAGE/BUILD BACK REQUIRED | REASONING |
|---|---|---|---|---|---|---|
| 1 | 1" insulated glass | In wood crates in parking garage.  Not installed | glass for windows | load crates onto trailer and remove from job | none | Has not been installed in the building |
| 2 | Insulation for glass | Stored in Parking garage | Insulation for spandrel glass | load crates onto trailer and remove from job | None | Has not been installed in the building |
| 3 | Pair of glass doors | Front lobby, first floor | Exterior doors into lobby | Unhook hinges and remove doors | None | Interior doors will close the building to the exterior |
| 4 | Aluminum framing and glass | Building H. South elevation | Exterior storefront and curtainwall | Remove glass and unbolt framing | None | Building H is completely open to weather on the other sides of the building and interior finish work on Building H has not begun |

Austin Glass Claim Summary                                                                 Page 1





summary line 1

AUSTIN GLASS "C-3"





summary line 2

AUSTIN GLASS "C-5"





summary line 3    AUSTIN GLASS "C-7"

20-10410-hcm  Doc#146-1  Filed 07/01/20  Entered 07/01/20 14:33:56  Exhibit A -
Declaration of Don Bayer  Pg 40 of 41          Page 40



summary line 4                    AUSTIN GLASS "C-8"

