**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 1:20-10410-HCM** |
| **3443 ZEN GARDEN, L.P.** | § | |
| | § | **Chapter 11** |
| **DEBTOR.** | § | |

**CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF ORDER**
**AUTHORIZING PAYMENT OF PREPETITION CONSTRUCTION**
**AND CONSULTING EXPENSES AND 503(B)(9) CLAIMS**

> **This pleading requests relief that may be adverse to your interests.**

> **If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

> **A timely filed response is necessary for a hearing to be held.**

Gregory S. Milligan, Chapter 11 Trustee ("Trustee") of the bankruptcy estate (the "Estate") of 3443 Zen Garden L.P. (the "Debtor") files this motion (this "Motion") for entry of an order substantially in the form attached hereto (the "Order"), (i) authorizing, but not directing, the Trustee to pay in the ordinary course of business all undisputed, liquidated, prepetition amounts owing on account of certain construction and consulting expenses and claims under Bankruptcy Code section 503(b)(9) and (ii) granting related relief.

**I. JURISDICTION AND VENUE**

1.    The United States Bankruptcy Court for the Western District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363, and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Bankruptcy Rules 6003 and 6004.

## II. BACKGROUND

4.      Certain petitioning creditors initiated the Case by filing an involuntary chapter 11 petition on March 22, 2020 (the "Petition Date"). This Court entered its *Consent Order for Entry of Relief* (ECF No. 11) on April 8, 2020. The Court entered an order appointing the Trustee on April 22, 2020. *See* ECF No. 36. No official committees have been appointed or designated.

5.      On June 30, 2020, the Court entered its *Amended Final Order Granting Chapter 11 Trustee's Motion to Obtain Secured Credit on an Interim and Final Basis* (ECF No. 144, the "Financing Order"). The Financing Order authorized the Trustee to borrow money on a secured basis from Romspen Mortgage Limited Partnership (the "Lender") subject to certain procedures and restrictions, including a budgeting process more fully described in the Financing Order.

6.      The Financing Order approved on a final basis the first and second interim budgets filed in this Case. *See* ECF No. 73, Exhibit A, *Interim Postpetition Budget* (covering budget period from March 22 to June 5) (the "First Interim Budget"); ECF No. 81-1, *Second Interim Post-Petition Budget* (covering budget period from June 2 to June 26) (the "Second Interim Budget"). The First Interim Budget and the Second Interim Budget both included amounts to be paid to various parties on account of their prepetition claims.

7.      The primary assets of the Estate are land, buildings, and other improvements located at 3443 Ed Bluestein Boulevard in Austin, Texas (collectively, the "Property"). *See* ECF No. 48 at p. 8.

8.      The Property is subject to certain zoning and other developmental regulations enforced by the City of Austin in a Project Development Agreement (the "PDA"). The Estate continues to pursue the process of negotiating a PDA including beneficial determinations regarding, *inter alia*, maximizing the permissible use and utilization of the Property.

9.      The Property includes substantial road frontage along Ed Bluestein Boulevard, also designated as U.S. Route 183. The Texas Department of Transportation ("TxDOT") has recently undertaken a major project to widen and modernize this section of Ed Bluestein Boulevard. As part of that process, TxDOT and the Central Texas Regional Mobility Authority (the "CTRMA") initiated a condemnation proceeding (the "Condemnation Proceeding") related to a portion of the Property to seek an easement over a portion of the property for drainage retention. The Estate continues to seek a consensual resolution of the Condemnation Proceeding.

10.     Prepetition, the Debtor employed numerous architects, engineers, and other consultants (the "Consulting Parties") to assist it in its efforts to improve the value of the Property by obtaining beneficial determinations in the PDA, negotiating a consensual resolution of the Condemnation Proceeding, and preserving and maintaining the Property. The Debtor, as the Property's developer and manager of an active construction site, also obtained construction services and materials from certain contractors (the "Construction Parties" and collectively with the Consulting Parties, the "Claimants") prepetition.

11.     Because the Claimants are familiar with the Debtor's development plan and replacing them would be burdensome to the Estate, the Trustee seeks to preserve and enhance the Property in the ordinary course of business by using well-qualified Claimants with whom the Debtor did business prepetition. As noted above, the Estate has already budgeted and has cash on

hand to pay these claims. Now, the Trustee seeks Court approval to pay the claims to ensure the Property continues to receive the benefits of the materials and services provided by the Claimants.

12.     Additionally, the Trustee seeks court approval of additional funding to pay prepetition claims that may become necessary or beneficial to pay after the date hereof, as explained in more detail, below.

### III. OBLIGATIONS TO BE PAID

13.     To administer the Estate and pursue certain value-maximizing activities, including the PDA and a consensual resolution of the Condemnation Proceeding, the Trustee seeks to pay certain of the prepetition claims of the Claimants (the "Obligations").

14.     The Consulting Parties have familiarity and expertise developed from working for the Debtor toward approval of the PDA and resolution of the Condemnation Proceeding. The Consulting Parties' familiarity and expertise are not easily replaceable—seeking replacements for the Consulting Parties would likely result in delays and potentially even the loss of currently available but time-sensitive opportunities for beneficial determinations under the PDA and consensual resolution of the Condemnation Proceeding.

15.     The Trustee understands that the Construction Parties assert or may assert liens related to the Obligations under the Texas Property Code, including section 53.021. The Trustee understands that certain of the Construction Parties assert that the Obligations include claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.[1]

16.     By this Motion, the Trustee seeks authority only those portions of the Obligations that constitute undisputed, prepetition amounts owed in the Debtor's ordinary course of business.

---

[1] By this Motion, the Trustee does not concede that any claims described herein are conclusively entitled to liens under the Texas Property Code or to administrative priority under section 503(b)(9) of the Bankruptcy Code, and the Trustee expressly reserves the right to contest the extent or validity of all such claims.

17.     As of the Petition Date, the Trustee estimates that approximately $176,000 in prepetition amounts are due to Consulting Parties related to their consulting work on the Property. The Trustee requests to pay up $176,000 of the prepetition amounts due to the Consulting Parties.

18.     As of the Petition Date, the Trustee estimates that approximately $32,000 in prepetition amounts are due to Construction Parties related to their work constructing improvements on the Property and delivery of materials related to same. The Trustee requests to pay up to $32,000 of the prepetition amounts due to the Construction Parties.

19.     As consideration for payment of the Obligations, the Trustee intends to seek for recipients of payments contemplated herein to enter into an agreement with the Trustee (the "Vendor Agreement"), substantially in the form attached hereto as **Exhibit B**. The Vendor Agreement requires Claimants to extend customary trade terms to the Estate as a condition of receiving payment on account on the Obligations and provides for remedies in the event such customary trade terms are subsequently modified without the Trustee's consent.

20.     The Trustee seeks additional authority to make similar payments on account of other known or unknown Obligations up to an additional $200,000, subject to the Lender's approval of such payments. Because the Property is an active construction site and new needs arise as preservation and enhancement work continue, the Trustee may identify additional Claimants to whom payment of Obligations would be in the best interest of the Estate. The Trustee proposes to make such payments under the circumstances and according to the same budgeting and Vendor Agreement procedures described herein. In particular, the Trustee intends to continue to evaluate and determine whether work to be performed by any such Claimant can be efficiently completed by a substitute vendor or service provider to ensure the best interests of the Estate and its creditors are protected.

## IV. BASIS FOR RELIEF

**A.    The Trustee Should Be Authorized to Pay the Obligations**

**1.    Failure to Timely Pay the Obligations Would Diminish the Value of Assets of the Estate and Subject Those Assets to the Perfection of Liens**

21.    The Trustee seeks to pay the Obligations to preserve the value of the assets of the Estate during the pendency of these chapter 11 cases. Failure to pay the Obligations would potentially expose the Estate to the risk that creditors will assert liens on the Estate's assets. *See, e.g.*, Tex. Prop. Code Ann. § 53.021. The Claimants may be able to perfect liens against the Debtors' assets notwithstanding the automatic stay because, pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting statutory liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay's protection. 11 U.S.C. § 362(b)(3). The assertion of liens against the Estate by the Claimants would erode the value of the Estate, which damage would extend to the recoveries of all parties in interest. Accordingly, the Trustee submits that the payment of the Obligations is necessary to preserve the value of the Estate.[2]

22.    Texas bankruptcy courts regularly authorize payments to lien claimants under similar circumstances. *See, e.g.*, *In re EXCO Res., Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Feb. 13, 2018) [Docket No. 286] (authorizing debtors to pay certain prepetition claims that may give rise to statutory liens); *In re CJ Holdings Co.*, No. 16-33590 (DRJ) (Bankr. S.D. Tex. July 21, 2016) [Docket No. 61] (same); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. June 27, 2016) [Docket No. 401] (same); *In re Sandridge Energy, Inc.*, No. 16- 32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016) [Docket No. 95] (same); *In re Midstates Petrol. Co., Inc.*, No.

---

[2] Moreover, to the extent any Claimants hold valid secured claims, the Debtors may be required to pay such Claimants in full to confirm a plan of reorganization. *See* 11 U.S.C. § 1129.

16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) [Docket No. 69] (same); *In re Energy & Expl. Partners, Inc.*, No. 15-44931 (RFN) (Bankr. N.D. Tex. Dec. 23, 2015) [Docket No. 146] (same).

**2.  Payment of the Obligations is a Sound Exercise of the Trustee's Business Judgment and Warranted by the Doctrine of Necessity**

23.  Courts have authorized the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2001) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

24.  A court may approve a debtor's payment of prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497) (explaining that there is an implied duty to 'protect and preserve the estate, including an operating business' going-concern value'"). The business judgment standard "is flexible and encourages discretion." *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011); *see also Comm. of Asbestos-Related Litigants v. Johns- Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

capriciously), courts will generally not entertain objections to the debtor's conduct.") (citation omitted); *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

25.     Moreover, under section 105(a) of the Bankruptcy Code, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). The Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of the Obligations under the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g., In re Equalnet Commc'ns Corp.*, 258 B.R. at 369-70; *In re CEI Roofing, Inc*., 315 B.R. at 60-61. Authorizing payment of the Obligations is appropriate where such payment would not: (a) "effect a different priority scheme than the priorities established by Congress in the Bankruptcy Code"; or (b) "result in an unfair and impermissible discrimination among holders of general unsecured claims." *CEI Roofing*, 315 B.R. at 60 (citation omitted).

26.     Payment of the Obligations is necessary to maintain important relationships with creditors providing goods and services important to preserving the Estate's assets. Failure to secure the relief requested herein would likely result in diminished value of the Estate's assets and increased preservation and enhancement expenses for the Estate. The Trustee submits that the relief requested herein represents the exercise of sound business judgment, is necessary to avoid immediate and irreparable harm to the Estate, maximizes the value of the assets of the Estate, and is therefore justified under sections 363(b) and 105(a) of the Bankruptcy Code.

27.     Texas bankruptcy courts regularly grant similar relief. *See, e.g.*, *In re Gastar Expl., Inc.*, No. 18-36057 (MI) (Bankr. S.D. Tex. Nov. 28, 2018) [Docket No. 209] (authorizing debtors

to pay certain prepetition claims under sections 105 and 363); *In re EXCO Res., Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Feb. 13, 2018) [Docket No. 286]; *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. June 27, 2016) [Docket No. 401] (same); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016) [Docket No. 95] (same); *In re Midstates Petrol. Co., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) [Docket No. 69] (same); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) [Docket No. 82] (same); *In re Energy & Expl. Partners, Inc.*, No. 15-44931 (RFN) (Bankr. N.D. Tex. Dec. 23, 2015) [Docket No. 146] (same).

### 3. The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code

28.     Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). These claims must be paid in full for the Trustee to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Additionally, all creditors will benefit from the preservation of the Estate's assets during the Case. Moreover, the Bankruptcy Code does not prohibit a trustee from paying such claims prior to confirmation. As administrative claims incurred in the ordinary course of business, the Trustee believes claims entitled to priority under section 503(b)(9) may be paid in accordance with the Trustee's business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.

29.     The Estate's continued ability to obtain goods as provided herein is critical to preserve the value of the Estate. Absent payment of claims under section 503(b)(9)—which merely accelerates the timing of payment and not the ultimate treatment of such claims—the Estate could

be denied access to the equipment and goods necessary to preserve the value of the Estate's assets, namely, the Property.

30.     Texas bankruptcy courts regularly authorize the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g.*, *In re EXCO Res., Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Feb. 13, 2018) [Docket No. 286] (authorizing debtors to pay claims arising under section 503(b)(9)); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. June 27, 2016) [Docket No. 401] (same); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016) [Docket No. 95] (same); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 6, 2016) [Docket No. 293] (same); *In re Midstates Petrol. Co., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) [Docket No. 69] (same); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) [Docket No. 82] (same).

## V. WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

31.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14 day stay period under Bankruptcy Rule 6004(h).

## VI. RESERVATION OF RIGHTS

32.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any prepetition claim against the Estate; (ii) a waiver of any party in interest's rights to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay prepetition claims; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (v) a request

or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of any party in interest's rights under the Bankruptcy Code or any other applicable law.

WHEREFORE, the Trustee respectfully requests entry an order, substantially in the form attached hereto, granting the relief requested herein and granting such other relief as is just and proper.

Dated: July 6, 2020

/s/ Scott D. Lawrence
Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Daniella G. Heringer, Tex. Bar No. 24103460
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
daniella.heringer@wickphillips.com

**COUNSEL FOR GREGORY MILLIGAN,
CH. 11 TRUSTEE FOR 3443 ZEN GARDEN, L.P.**

## CERTIFICATE OF SERVICE

I certify that on July 6, 2020, a true and correct copy of the forgoing was served on the parties listed in the attached service list, via ECF and/or email service where available, and otherwise via First Class United States Postal service.

/s/ Scott D. Lawrence

**EXHIBIT A**

*Proposed Order*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 1:20-10410-HCM** |
| **3443 ZEN GARDEN, L.P.** | § | |
| | § | **Chapter 11** |
| **DEBTOR.** | § | |

**ORDER GRANTING**
**CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF ORDER**
**AUTHORIZING PAYMENT OF PREPETITION CONSTRUCTION**
**AND CONSULTING EXPENSES AND 503(B)(9) CLAIMS**

Upon the motion (the "Motion")[1] of Gregory S. Milligan, Chapter 11 Trustee ("Trustee") of the

bankruptcy estate (the "Estate") of 3443 Zen Garden L.P. (the "Debtor") for entry of an order (this

"Order"), authorizing, but not directing, the Trustee to pay in the ordinary course of business all

undisputed, liquidated, prepetition amounts owing on account of the Obligations, all as more fully

set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §

1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

and this Court having found that venue of this proceeding and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in

the Motion is in the best interests of the Estate, its creditors, and other parties in interest; and this

Court having found that the Trustee's notice of the Motion and opportunity for a hearing on the

Motion were appropriate under the circumstances and no other notice need be provided; and this

Court having reviewed the Motion and having heard the statements in support of the relief

requested therein at any hearing conducted thereon before this Court; and this Court having

determined that the legal and factual bases set forth in the Motion and at any hearing conducted

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

thereon establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Trustee is authorized, but not directed, to pay Obligations as described in the Motion, including up to $176,000 in previously budgeted payments on account of Obligations to Consulting Parties; up to $32,000 in previously budgeted payments on account of Obligations to Construction Parties; and up to $200,000 in potential future payments on account of Obligations to Claimants.

3.      Any party that accepts payment from the Trustee on account of any Obligation shall be deemed to have agreed to the terms and provisions of this Order.

4.      The Trustee is authorized, but not directed, to require that, as a condition to receiving any payment under this Order, a payee maintain or apply, as applicable, terms during the pendency of these chapter 11 cases that are at least as favorable as those terms existing as of the Petition Date or otherwise satisfactory to the Trustee ("Customary Terms"). The Trustee is authorized, but not directed, to enter into agreements substantially in the form attached to the Motion as **Exhibit B** with payees, in his sole discretion. If a payee, after receiving a payment under this Order, ceases to provide Customary Terms, then the Trustee may, in his sole discretion, deem such payment to apply instead to any postpetition amount that may be owing to such payee or treat such payment as an avoidable postpetition transfer of property.

5.      If any party accepts payment on behalf of a claim for Obligations under this Order, and such claim is determined by the Court after notice and hearing not to give rise to a statutory or contractual lien and such claim is determined by the Court after notice and hearing not to give

rise to a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code, the Trustee is authorized, but not directed, to avoid such payment as a postpetition transfer under section 549 of the Bankruptcy Code, and the party who had accepted such payment shall be required to immediately repay to the Trustee any payment made to it on account of its asserted claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise. Upon the Trustee's recovery of such payments, the obligation shall be reinstated as a prepetition claim in the amount so recovered.

6.      The Trustee shall maintain a matrix/schedule of amounts delivered or paid subject to the terms and conditions of this Order, including the following information: (a) the category of amount delivered or paid as further described and classified in the Motion; and (b) the aggregate amount of the payment by category.

7.      The banks and financial institutions presented with checks or electronic funds transfer requests made to pay prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic funds transfer requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Trustee's designation of any particular check or electronic funds transfer request as approved by this Order.

8.      Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization obtained, hereunder shall be subject to and in accordance with the Budget and any subsequently approved budget as contemplated in the Financing Order.

9.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (i) an admission as to the validity of any prepetition claim against the Estate; (ii) a waiver of the Estate's or the Trustee's right to dispute

any prepetition claim on any grounds; (iii) a promise or requirement to pay any prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (vi) a waiver of the Estate's or Trustee's rights under the Bankruptcy Code or any other applicable law.

10.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee or any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider, of the Debtor.

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.     The Trustee is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

PREPARED AND SUBMITTED BY

Jason M. Rudd, Tex. Bar No. 24028786
Scott D. Lawrence, Tex. Bar No. 24087896
Daniella G. Heringer, Tex. Bar No. 24103460
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255
jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
daniella.heringer@wickphillips.com

**COUNSEL FOR GREGORY MILLIGAN,
CH. 11 TRUSTEE FOR 3443 ZEN GARDEN, L.P.**

**EXHIBIT B**

*Form of Vendor Agreement*

## VENDOR AGREEMENT

This Vendor Agreement (the "Agreement") is made and entered into as of _____, 2020 (the "Effective Date"), by and between the bankruptcy estate of 3443 Zen Garden, LP (the "Company") and _____ (the "Vendor").

### Recitals

WHEREAS, the Company is a debtor in a chapter 11 bankruptcy case (the "Case") commenced on March 22, 2020 (the "Petition Date") pending before the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"), Case Number 20-10410-HCM.

WHEREAS, the Court appointed Gregory S. Milligan as the Chapter 11 Trustee (the "Trustee") for the Company on April 22, 2020.

WHEREAS, the Trustee is seeking permission from the Bankruptcy Court to pay prepetition claims of certain suppliers and vendors, including Vendor, subject to the terms and conditions set forth in the Bankruptcy Court's *Order Granting Chapter 11 Trustee's Motion for Entry of Order Authorizing Payment of Prepetition Construction and Consulting Expenses and 503(b)(9) Claims* (ECF No. __, the "Vendor Order").

WHEREAS, prior to the Petition Date, Vendor provided goods or services to the Company and the Company paid Vendor for such goods or services according to Customary Trade Terms (as defined herein).

WHEREAS, the Company and Vendor (each a "Party" and collectively the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims Vendor may hold against the Company.

### Agreement

1.     Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.     Agreed Vendor Claim.

    a.     The Parties agree that Vendor's prepetition claim (net of any setoffs, credits, or discounts) is $[●] (the "Agreed Vendor Claim").

    b.     Vendor Payment. The Company agrees to pay Vendor [●]% of the Agreed Vendor Claim, or $[●] (the "Vendor Payment"), upon the Effective Date of this Agreement, in full and final satisfaction of the Agreed Vendor Claim.

    c.     Waiver & Release of Claims. The Vendor hereby waives and releases the Company from any and all prepetition claims the Vendor may have against the Company, including the Agreed Vendor Claim.

3.     <u>Customary Trade Terms</u>.

a.     Vendor shall supply goods or perform services for the Company, and the Company shall accept and pay for goods or service from the Vendor, for the duration of the Case based on the following "<u>Customary Trade Terms</u>": [describe trade terms, including practices and programs, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupons, reconciliations, product mix, availability, and other applicable terms and programs].

b.     The Parties agree that the Customary Trade Terms are at least as favorable to the Company as those in place in the year prior to the Petition Date or are otherwise acceptable to the Company in light of customary industry practices.

c.     Vendor will continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits or balances towards future orders in the ordinary course of business.

d.     Vendor will continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business pursuant to Customary Trade Terms.

e.     The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed to in writing by the Parties.

4.     <u>Other Matters</u>.

a.     Vendor will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Agreement or a plan confirmed in the Case.

b.     Vendor will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Vendor by the Company arising from prepetition agreements or transactions. Furthermore, if Vendor has taken steps to file or assert such a lien prior to entering into this Agreement, Vendor will promptly take all necessary actions to remove such liens.

c.     Vendor will not demand a lump-sum payment upon consummation of a chapter 11 plan in the Case on account of any administrative expense priority claim that you assert, but instead Vendor agrees that such claims will be paid in the ordinary course of business after consummation of a plan under the Customary Trade Terms, if the plan provides for the ongoing operations of the Company.

5.     <u>Vendor Breach</u>.

a.     In the event that Vendor fails to satisfy its undisputed obligations arising under this Agreement (a "<u>Vendor Breach</u>"), upon written notice to Vendor, Vendor shall promptly

-2-

pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Vendor Payment or any portion of the Vendor Payment which cannot be recovered by the Company from the post-petition receivables then owing to Vendor from the Company.

b.      The Company may utilize any and all rights or remedies available under the Vendor Order, Title 11 of the United States Code, or applicable law, to recover the Vendor Payment after a Vendor Breach.

c.      In the event that the Company recovers the Vendor Payment pursuant to Section 5(a) of this Agreement or otherwise, the full Agreed Vendor Claim shall be reinstated as if the Vendor Payment had not been made.

6.      Representations and Acknowledgments. The Parties agree, acknowledge, and represent that:

a.      The Parties have reviewed the Vendor Order and this Agreement and consent to be bound by the Vendor Order and this Agreement and that this Agreement is expressly subject to the procedures approved in the Vendor Order.

b.      Any payments made on account of the Agreed Vendor Claim will be subject to the terms and conditions of the Vendor Order.

7.      Confidentiality. In addition to any other obligations of confidentiality between Vendor and Company, Vendor agrees to hold in confidence and not disclose to any party: (a) this Agreement; (b) any and all payments made by the Company pursuant to this Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); provided, that, if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor intends to disclose any or all of the Confidential Information, Vendor shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order, or any other available remedy to prevent such disclosure; provided, further, that, if such remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required to provide.

8.      Counterparts. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Signatures by facsimile or authorized electronic signatures shall be valid signatures for all purposes.

9.      Governing Law; Consent to Jurisdiction and Authority of Bankruptcy Court. This Agreement shall be governed by and construed in all respects in accordance with the laws of the State of Texas without regard to conflicts of law principles. The Company and the Vendor each agree that the Bankruptcy Court has subject matter jurisdiction to resolve disputes arising from the Agreement and that the venue for any such disputes will be the Bankruptcy Court. The Company and the Vendor each consent to the Bankruptcy Court's authority to enter final orders resolving any disputes arising from the Agreement.

10.　　Severability. If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as near as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

11.　　Waiver and Amendment. No term or provision hereof will be considered waived by the Company, and no breach excused by the Vendor, unless such waiver or consent is in writing signed by the Company. The waiver by the Company of, or consent by the Company to, a breach of any provision of this Agreement by Vendor shall not operate or be construed as a waiver of, consent to, or excuse of any other or subsequent breach by Vendor. This Agreement may be amended or modified only by mutual agreement of authorized representatives of the Parties in writing.

12.　　Binding Agreement. The Parties hereby represent and warrant that: (i) they have full authority to execute this Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Agreement.

13.　　Successors and Assigns Bound. This Agreement shall be binding upon, inure to the benefit of and be enforceable by the Parties' respective successors and permitted assigns.

14.　　Notices. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (a) by personal delivery, when personally delivered; (b) by overnight courier, upon written verification of receipt; (c) by telecopy or facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt.

Notice to the Company shall be sent to:

Gregory S. Milligan
Chapter 11 Trustee for 3443 Zen Garden, L.P.
P.O. Box 90099
Austin, Texas 78709-0099

with a copy to

Wick Phillips Gould & Martin LLP
Attn: Jason M. Rudd
3131 McKinney Avenue, Ste. 100
Dallas, Texas 75204

Notice to the Recipient shall be sent to the person and address identified in the signature block hereto.

15.　　Headings. Headings of the paragraphs of this Agreement are for convenience of reference only and should not be used to interpret any provisions of this Agreement.

-4-

      16.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement with respect to the matters covered hereby and supersedes all prior or contemporaneous oral or written agreements concerning the subject matter herein.

[<em>Signature Page Follows</em>]

IN WITNESS WHEREOF, the parties have executed this Vendor Agreement as of the Effective Date.

**Company:**

**3443 Zen Garden, L.P.**

_____

By: Gregory S. Milligan,
Chapter 11 Trustee for 3443 Zen Garden, L.P.

**Vendor:**

**[Recipient Name]**

_____

By:      _____
Name:  _____
Title:   _____
Address:    _____
            _____
            _____

3443 Zen Garden, LP
3443 Ed Bluestein Blvd.
Austin, TX 78721-2912

United States Trustee
903 San Jacinto Blvd,
Suite 230
Austin, TX 78701-2450

US Bankruptcy Court
903 San Jacinto, Suite 322
Austin, TX 78701-2450

3443 Zen Garden GP, LLC
c/o Rob Roy Parnell,
Receiver
241 McKellar Road
Dripping Springs, TX 78620

ABC Supply Co Inc.
PO Box 840899
Dallas, TX 75284-8099

Aero Photo
4000 16th Street North
St. Petersburg, FL 33703

Ahern Rentals
PO Box 271390
Las Vegas NV 89127-1390

Allied Sales Company
PO Box 6116
Austin, TX. 78762-6116

Austin Commercial &
Residential Plumbing
2407 S. Congress Ave, Ste132
Austin TX 78704-5505

Adam Zarafshani
3443 Ed Bluestein Blvd.,
Building V
Austin, TX 78721-2912

BPI
PO Box 405300
Atlanta, GA. 30384-5300

Blu Fish Collaborative, Inc.
PO Box 40792
Austin, TX. 78704-0014

CT Laborers Electric, LLC
188 Alaska Road
Uhland, TX 78640-6644

Capital Industries, LLC
2105 Donley Dr., Ste. 200
Austin, TX 78758-4510

United States Trustee-AU12
903 San Jacinto Blvd, Ste 230
Austin, TX 78701-2450

City of Austin c/o Anne
Morgan
301 W. 2nd Street
Austin, TX 78701-4652

DM's Construction
Equipment Repair
518 Yucca Drive
Round Rock TX 78681-7411

The Bug Master
1912 Smith Rd
Austin, TX 78721-3547

Eightfold Development, LLC
3443 Ed Bluestein Blvd.,
Building V, Sui
Austin, TX 78721-2912

Equipment Share
2511 Broadway Bluffs Dr.,
Ste. 202
Columbia, MO 65201-8142

Great Lakes Lifting
Solutions
4910 Wilshire Blvd
Country Club Hills, IL
60478-3153

Rob Roy Parnell
c/o G. Stewart Whitehead
Winstead, PC
401 Congress Avenue Ste 2100
Austin, TX 78701-3798

Ferguson Waterworks, LLC
#1106 4427 Factory Hill
Drive
San Antonio, TX. 78219-
2704

Fritz, Byrne, Head & Gilstrap
221 West Sixth Street, Ste
960
Austin TX 78701-3444

Frontier Plastering
PO Box 1455
Elgin TX 78621-1455

GSC Architects
3100 Alvinn
Devanne Bldg. A
Ste. 200-B
Austin, TX 78741-7406

Keytech North America
20 PGA Drive Suite 201
Stafford VA 22554-8218

Hilti Inc.
PO Box 650756
Dallas, TX 75265-0756

Hinshar & Culbertson
151 North Franklin St.,
Ste. 2500
Chicago, IL 60606-1915

Hollandstone
PO Box 50058
Austin TX 78763-0058

Hull Supply, Inc.
5117 East Cesar Chavez
Austin, TX 78702-5142

Jeremie Schultz
6555 Hwy 140 W
Puryear TN 38251-3943

MLA Geotechnical
2800 Longhorn Blvd Suite 104
Austin, TX 78758-7624

MOHD Service Solutions LLC
3701 E. Plano Parkway Ste
400
Plano, TX. 75074-1806

Mark Schiffgens, CPA
100 E. Anderson Lane Ste
250
Austin, TX 78752-1233

McMinn Land Surveying Company
4008 Greenmountain Lane
Austin TX 78759-7570

Mint Engineering, LLC
5130 Mansfield View Court
Austin TX 78732-1854

Mobile Mini Storage
Solutions
4646 East Van Buren Street
Suite 400
Phoenix, AZ 85008-6927

NLB Corp.
29830 Beck Road
Wixom Michigan 48393-2824

Nathan Olson
11308 Wet Season Dr.
Austin, TX 78754-5855

Oldcastle Materials, Inc
Texas Concrete
1320 Arrow Point Dr Ste
600
Cedar Park, TX 78613-2189

Summer Legacy
PO Box 144151
Austin TX 78714-4151

Paradigm Glass
9603 Saunders Lane, #B-2
Austin TX 78758-5230

Praxair Distribution, Inc.
Dept 0812 PO Box 120812
Dallas, TX 75312-0812

Professional Flooring
PO Box 7558
Fort Worth, TX 76111-0558

Professional StruCivil
Engineers Inc
2205 W. Parmer Ln. #201
Austin TX 78727

Ram Tool Supply
8013 Exchange Dr.
Austin, Tx 78754-4713

Regal Plastics Supply
Company, Inc
9200 N. Royal Ln. Suite 120
Irving, TX. 75063-2468

Reinhart & Associates, Inc.
P.O. Box 140105
Austin, TX 78714-0105

Trane
PO Box 845053
Dallas, TX 75284-5053

Rob Roy Parnell, Receiver
251 McKellar Road
Dripping Springs, TX 78620-4884

Roca
11190 NW 25th Street
Miami, FL 33172

Ruiz Testing Services, Inc
10854 Gulfdale St.
San Antonio, Tx 78216-3607

Schindler Elevator Corp.
2020 Centimeter Center
Austin, TX 78758-4956

Sigmax Corporation
321 N. Oakhurst Dr.#602
Beverly Hills, CA 90210-4175

Structures
6926 N. Lamar Blvd
Austin, TX. 78752-3508

Sweep Across Texas
1512 Dungan Lane
Austin, TX 78754-4022