11/26/2019 10:06 AM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-19-007269**
**Chloe Jimenez**

CAUSE NO. D-1-GN-19-007269

| | | |
|---|---|---|
| 3443 ZEN GARDEN LIMITED PARTNERSHIP, | § | IN THE DISTRICT COURT |
| a Texas limited partnership;  EIGHTFOLD | § | |
| DEVELOPMENTS, LLC, A Texas limited liability | § | |
| Company; DANIEL WHITE, an individual; and | § | |
| ADAM ZARAFSHANI, an individual, | § | TRAVIS COUNTY, TEXAS |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | |
| ROMSPEN MORTGAGE LIMITED | § | |
| PARTNERSHIP, an Ontario limited partnership, | § | |
| *Defendant.* | § | 261ˢᵗ JUDICIAL DISTRICT |

## <u>AGREED APPLICATION TO APPOINT RECEIVER</u>

Parties, Romspen Mortgage Limited Partnership ("Romspen"), as defendant and counter-plaintiff in the above-captioned lawsuit ("Lawsuit"); 3443 Zen Garden Limited Partnership ("Zen Garden"), as counter-defendant in the Lawsuit; Eightfold Development, LLC ("Eight Fold"), as counter-defendant in the Lawsuit; Adam Zarafshani ("Zarafshani"), as counter-defendant in the Lawsuit; and Daniel White ("White"), as plaintiff and counter-defendant in the Lawsuit, hereby respectfully submit this *Agreed Application to Appoint Receiver* ("Application"), and in support hereof specifically allege as follows:

### I.    RELIEF REQUESTED

Texas Civil Practices & Remedies Code Chapter 64 empowers this Court to appoint a receiver over specific jointly-held insolvent property and under principles of equity. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 64.001(a)(2), (3), (5) and (6).  On the agreement of all parties involved, this Application seeks the appointment of a receiver to control the development, preservation and disposition over a construction project located in Austin, Texas.  The principals of the property owner have reached a deadlock and can no longer work together to preserve or develop the property.  The property is insolvent.  Furthermore, based on the agreement of the

AGREED APPLICATION TO APPOINT RECEIVER                                                    1

parties and the public interests served by having the property developed and preserved, it is equitable for the Court to enter an order granting this agreed, uncontested Application. Accordingly, pursuant to the authority granted to this Court by sections 64.001(a)(2), (3), (5) and (6) of the Texas Civil Practice & Remedies Code, the Court should grant this agreed, uncontested Application and enter the proposed order attached hereto as **Exhibit "B"**.

## II.  JURISDICTION AND VENUE

Jurisdiction and venue are proper because the Lawsuit serving as the underlying proceeding for this receivership Application is currently pending before the Court.

## III.  FACTUAL BACKGROUND

Zen Garden is the 100% owner of that certain property located at 3443 Ed Bluestein Blvd., Austin, Texas 78759 ("Austin Property"). The Austin Property sits on the former Motorola campus in Austin, Texas. The Austin Property is currently in the process of being redeveloped into an approximately $400 million, 110-acre mixed-use campus that will consist of offices, hotels, and retail spaces. The Austin Property, together with all property ancillary thereto, including fixtures, personalty, security devices and all other property, materials, security devices, and items attached to the Austin Property and/or being used as a part of the aforementioned development, restoration, security and preservation of the Austin Property, are collectively referred to and defined herein as the "Project".

The Project will utilize state-of-the-art "green" technology, renewable energy resources and sustainable design. The Project is of critical importance to the City of Austin and the parties to this Lawsuit. The Project has already created a significant number of jobs, and in the future is expected to create thousands of jobs and inject millions of dollars of revenue into the local and state economies.

White and Zarafshani are the two principals of Zen Garden. There are no other principals in Zen Garden besides White and Zarafshani. White and Zarafshani have come to irreconcilable

differences in regards to the Project. White and Zarafshani can no longer work together to develop or preserve the Project. White and Zarafshani have reached a deadlock concerning Zen Garden's decision-making and authority concerning the development and preservation of the Project.

On April 27, 2018, Romspen and Zen Garden entered into that certain Loan Agreement ("Loan Agreement"), pursuant to which Romspen agreed to make available certain financial accommodations to construct, develop and preserve the Project. Pursuant to and governed by the Loan Agreement, Zen Garden executed and delivered that certain Promissory Note ("Note"), payable to Romspen, in the original principal amount of $125,000,000.00. The purpose of the Note is to provide a revolving line of credit to finance and fund the development and construction of the Project.

The Note is secured by, among other items, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Austin Deed of Trust"), dated as of April 27, 2018, recorded on April 27, 2018, in the Travis County, Texas Clerk's Office as Document Number 2018064160, executed and delivered by Zen Garden. Romspen holds a first lien, mortgage and security interest in the Project by virtue of the Austin Deed of Trust. White, Zarafshani and Eight Fold have executed and delivered guaranty agreements, wherein each of White, Zarafshani and Eight Fold guaranteed to Romspen the payment and performance of all obligations under the Note, Deed of Trust and Loan Agreement.

Romspen asserts that certain events of default have occurred and continue in existence under the terms of the Loan Agreement. On October 11, 2019, and October 23, 2019, respectively, Romspen served Zen Garden, Eight Fold, White and Zarafshani with a Declaration of Default and Notice of Acceleration and a Second Notice of Default, respectively, which specifically identified the non-exclusive events of default Romspen has asserted under the Loan Agreement. Based on

these events of default, Romspen accelerated the indebtedness under the Note to maturity and ceased further disbursements under the revolving line of credit.

As of the date of this Application, Romspen has extended to the Project approximately $80,000,000.00 of capital financing out of the maximum $125,000,000.00 commitment under the Note and Loan Agreement. The Project is only partially constructed and remains underdeveloped as of the date of this Application.  In its current state, the Project is not worth $80,000,000.00. The Project is insolvent because the current value of the Project is less than the secured debt owed to Romspen.

Zen Garden disputes Lender's allegations concerning the asserted events of default. Zen Garden, Eight Fold, White and Zarafshani sued Lender on October 17, 2019, by filing that certain Original Petition ("Petition") against Lender, thereby initiating this Lawsuit. On November 7, 2019, Zen Garden, Zarafshani and Eightfold filed a Notice of Nonsuit in this Lawsuit thereby dismissing all of their claims against Lender under the Petition. As of the date of this Application, White's claims and causes of action against Lender under the Petition remain pending before the Court in this Lawsuit.

On November 18, 2019, Lender timely filed its answer and counterclaims ("Answer and Counterclaims") with the Court in this Lawsuit, thereby denying all of the remaining claims and causes of action in the Petition and asserting counterclaims against White, Zarafshani, Zen Garden and Eight Fold. As of the date of this Application, Lender's counterclaims and causes of action against White, Zarafshani, Zen Garden and Eight Fold under the Answer and Counterclaims remain pending before the Court in this Lawsuit.

In consideration of the principals' deadlock, the underdeveloped status of the Project, the loan disputes and the public policy interests in moving the development of the Project forward, the parties have agreed it is in the best interests of all parties involved in the Project to seek the

AGREED APPLICATION TO APPOINT RECEIVER                                                                 4

appointment of a receiver. Each of the parties has independently explored alternatives to the appointment of a receiver. After extensive discussions and protracted negotiations, the parties have concluded that the most productive option is to have the Court appoint a neutral, objective, unbiased third party with the obligations to the Court to develop, preserve and dispose of the Project with the goal of serving the best interests of all parties involved. Since the parties have been left with no other viable alternatives, the parties have agreed to the terms of the Proposed Order and agreed to file this Application.

All parties have agreed to the appointment of a receiver in this case for the purpose of preserving the Project and advancing the best interests of all parties thereto. Attached hereto as **Exhibit "B"** is the proposed order appointing the receiver, as signed and agreed to by all the parties involved in this Lawsuit ("Proposed Order"). Given the parties' agreement to the terms set forth in the Proposed Order, and because the terms of the Proposed Order advance the interests of all parties involved in the Project and this Lawsuit, it is equitable for the Court to enter the Proposed Order appointing the receiver.

The parties have interviewed and screened candidates to serve as the receiver under the Court's appointment. The parties have conducted their due diligence on suitable candidates to serve as the receiver for the Project. The parties have selected Rob Roy Parnell, AIA, RAS, of Rob Roy Parnell, Inc. ("Receiver") to serve as the receiver over the Project. The Receiver's curriculum vitae is attached hereto as **Exhibit "A"** and is expressly incorporated herein for all purposes. Based on the Receiver's experience and certifications, the Receiver is qualified to serve as a receiver over the Project and duly perform the responsibilities imposed under the Proposed Order.

The Receiver has conducted a conflicts search against the parties involved in this Lawsuit, the Project and known parties involved in the disputes arising in connection with the Project. The

Receiver does not have any conflicts applicable to this matter. The Receiver will continue to ensure that he does not incur any conflicts going forward.

## IV.   ARGUMENTS & AUTHORITIES

### 1.  Texas law expressly allows a receivership for the Project.

Pursuant to Texas Civil Practices and Remedies Code Section 64.001, a court of competent jurisdiction may, in part, appoint a receiver:

> (2) in an action by a creditor to subject any property or fund to his claim;
>
> (3) in an action between partners or others jointly owning or interested in any property or fund;
>
> (5) for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights;
>
>    . . .
>
> (6) in any other case in which a receiver may be appointed under the rules of equity.

If a receiver is to be appointed under subsections 1) or 2), the Court may only do so if the plaintiff or other party files an application and the party seeking the appointment of the receiver has a "probable interest in or a right to the property or fund" and "the property or fund must be in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE § 64.001(b).  Subject to the control of the Court, a receiver may take charge and keep possession of the party, exercise dominion and control of the property (such as assigning or selling the property), or take any other act authorized by the Court.  *Id.* § 64.031(1-5).  The receiver is also empowered to use the property to pay "judgments recovered in suits brought before the receiver was appointed."  *Id.* § 64.051(6).

Similarly, under Texas Business Organizations Code Section 11.402(a), a court has jurisdiction to appoint a receiver "over specific property of a domestic or foreign entity that is located in this state and is involved in litigation."  Upon application by a "person whose right to

or interest in any property or fund or the proceeds from the property or fund is probable," the Court may appoint a receiver over specific property in an action:

. . .

    2)  By a creditor to subject the property or fund to the creditor's claim;

    3)  Between partners or others jointly owning or interested in the property or fund.

*See* TEX. BUS. ORGS. CODE § 11.403(2-3). A receiver may be appointed under these subsections if the property or fund is "in danger of being lost, removed, or materially injured"; "circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property or fund and avoid damage to interested parties"; "all other requirements of law are complied with"; and "the court determines that other available legal and equitable remedies are inadequate." *Id*. § 11.403(b). After appointment, the receiver may liquidate the specific property. *Id*. § 11.405.

## 2. The parties are entitled to appointment of a receiver over the Project.

Numerous grounds exist for the Court to grant the Application. Most significantly, the rules of equity demand it. TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(6). The Project is currently underdeveloped and construction is incapable of moving forward. The partners are deadlocked, and the lender has cut funds to the construction due to events of default. The Project is insolvent. The Project will fail if a neutral, unbiased, objective third party is not appointed to take control over the Project and move forward with development, preservation and disposition. The public interest in having the Project developed will not be realized without the appointment of the Receiver under the Proposed Order. The parties have agreed to this relief. The appointment of the Receiver under the Proposed Order is not contested by any party in interest to the Project.

Additionally, a receiver should be appointed because: (1) Romspen's liens, mortgage and security interests in the Project are subject to White's claims in the Petition and Romspen's claims

in the Answer and Counterclaims; and (2) White and Zarafshani jointly own and/or are interested in Zen Garden's ownership of the Project.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(1-2, 6); *see also* TEX. BUS. ORGS. CODE § 11.403(2-3).  Development has come to a halt.  White and Zarafshani can no longer develop the Project.  Zen Garden is inherently conflicted to the principals' deadlock.  The Project continues to suffer each day its sits idle.  A neutral third party is required to break the deadlock and move the Project forward.

White and Zarafshani are also stuck with Romspen as the under-secured first lien holder in the Project.  If Romspen was forced to foreclose, White's and Zarafshani's equity interests in the Project would be zero, and White and Zarafshani would be left exposed on their guaranty obligations.  Each day the Project does not move forward the risks continue to increase that the Project will experience further diminution in value. It is in the best interests of all parties involved to see the Project move forward. The only viable path forward to development, preservation and disposition is the appointment of the Receiver under the Proposed Order.

The failure to appoint a receiver exposes each of the parties to losing their respective interests in the Project and materially damages the viability of the Project's development moving forward.  The Project presents a unique and exciting opportunity for the City of Austin and the surrounding community. The parties have the chance to capitalize on that opportunity and recoup their extensive investments in the Project. However, this opportunity will be wasted if a receiver is not appointed. The Project is currently at risk of being materially and irreparably injured. The parties are unable to resolve this problem on their own.  A receiver must be appointed to avoid this waste.  *See, e.g., Malone v. Barnett*, 87 S.W.2d 523, 524 (Tex. Civ. App.—Texarkana 1935, no writ) (affirming appointment of receiver to prevent drainage and waste when joint owners of an oil and gas leasehold estate could not agree to plan of development or operation of a lease).

The parties have agreed that a receiver is the proper remedy under the circumstances of this case. The appointment of a receiver over the Project is in the best interest of the parties to this Lawsuit and serves the interests of public policy.  The Court has been granted the authority to appoint a receiver under Chapter 64 of the Texas Civil Practice and Remedies Code. As such, this Court should appoint the Receiver to ensure the Project adequately protected and developed in the best interests of all parties involved.

## V.    PRAYER

For the foregoing reasons, the parties respectfully request that the Court (i) approve this Application; (ii) enter an order conforming to the Proposed Order; and (iii) appoint the Receiver and award the Receiver the powers, authority and responsibility set forth under the Proposed Order.  The parties further request that the Court order all such other relief as is just and equitable.

Respectfully submitted,

FOLEY GARDERE
Foley & Lardner LLP

*/s/ Thomas C. Scannell*
Mark T. Mitchell, State Bar No. 14217700
mmitchell@foley.com
Robert F. Johnson III, State Bar No. 10786400
rjohnson@foley.com
600 Congress Ave., Suite 3000
Austin, Texas 78701
Tel: 512-542-7072/Fax: 512-542-7100

and

Thomas C. Scannell, State Bar No. 24070559
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: (214) 999-4289/Fax: (214) 999-4667
tscannell@foley.com

**ATTORNEYS FOR ROMSPEN MORTGAGE
LIMITED PARTNERSHIP**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on the 26th day of November, 2019, a true and correct copy of the foregoing document was filed via the Court's electronic e-service and served in accordance with the Texas Rules of Civil Procedure.

*/s/ Mark T. Mitchell*
Mark T. Mitchell

Exhibit A – Cover Page



**EDUCATION:**
Texas A&M University
Bachelor of Science School of
Architecture, Tau Sigma Delta
Honor Society in Architecture

**REGISTRATION:**
Registered Architect
Texas #14960
Registered Accessibility
Specialist # 184

**PROFESSIONAL AFFILIATIONS:**
American Institute of Architects
Construction Owners
Association of America

**PRESENTATIONS:**
Creative Procurement in the
Delivery of State Facilities,
Future of Higher Ed Facilities,
BIM/FM Concept to Reality,
2012 TAS, What Changed?,
Numerous Presentations at the
Texas Society of Architects
Conventions over the past ten
years

**LEADERSHIP:**
Advisory Board Member -
Architectural Barriers Texas
Department of Licensing and
Regulation
Board Member- Austin
Foundation for Architecture
Founding Board Member
Institute for Leadership in
Capital Projects

**OTHER:**
Licensed Pilot

**RESIDENCE:**
Dripping Springs, TX

# Rob Roy Parnell, AIA, RAS

## PRESIDENT                    ROB ROY PARNELL, INC.

# EXPERIENCE & QUALIFICATIONS:

**Overall:** Rob Roy Parnell is a recognized leader in the design and construction industry in Texas. He provided executive leadership for the State of Texas for over $5.5 billion in capital projects for over twenty-eight years (1991-2019). Leadership roles include Director of Design and Construction at the Texas Facilities Commission for nine years and as Deputy Vice Chancellor for Capital Projects Administration at the Texas State University System for over eleven years. As a licensed architect, he is versed in all aspects of higher education issues from procurement, negotiations, contracts, development of design, and construction administration. He has been in charge of the design and construction of hospitals, laboratories, general education facilities, dining halls, multi-family facilities/dormitories , natatoriums, special events centers, performing arts centers and stadiums. He was the executive in charge of the Texas State Capitol Renovation-West Wing as well as numerous high profile historic renovations. He is also a subject matter expert on Public Private Projects (P3s).

**Dispute Advisory:** Related to pre-litigation and litigation, he has worked on numerous projects representing the State of Texas over the years in conjunction with the Attorney General's Office related to failures in project delivery by design and construction professionals over the past two decades. He provides subject matter expert services on all aspects of project delivery representing owners, design and construction professionals. Also, expert testimony related in all aspects of accessibility matters.

**Accessibility:** He has performed over 2,000 reviews/inspections of facilities throughout the state related to the Texas Accessibility Standards. He has served at the pleasure of current Governor Abbott and former Governor Perry in the role of an Advisory Board Member for the Elimination of Architectural Barriers Division of the Texas Department of Licensing and Regulation for over ten years.

**ACCESSIBILITY CONSULTING EXAMPLES:**

**HIGHER EDUCATION:**

- **Tarleton State University**, Stephenville, TX: Numerous Projects throughout the campus over the past twenty-five years.

- **Texas State University System:** Advisor to all campuses in the System related to the accessibility issues for the past eleven years.

**INSTITUTIONAL / GOVERNMENT:**

- **City of Austin/Austin Capital Metro:** Numerous projects related to facilities and infrastructure improvements.

- **Independent School Districts Including**: Abilene, Austin, Eastland, Cisco, Stephenville and others throughout Central Texas.

**COMMERCIAL/ RETAIL:**

- **Developers including:** Cencor, Direct Development, CB Richard Ellis, Trammel Crow, Endeavor, Lincoln Property, Live Oak-Gottesman

**NATIONAL PUBLICATIONS:** National Council of Architectural Registration Boards-Mini-monograph for Barrier Free Design and the 2010 ADA Standards.

Exhibit B – Cover Page

CAUSE NO.: D-1-GN-19-007269

| | | |
|---|---|---|
| DANIEL WHITE, an individual, | § | IN THE DISTRICT COURT |
| 3443 ZEN GARDEN LIMITED | § | |
| PARTNERSHIP, a Texas limited partnership, | § | |
| EIGHTFOLD DEVELOPMENT, LLC, | § | |
| a Texas limited liability company, and | § | |
| ADAM ZARAFSHANI, an individual, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ROMSPEN MORTGAGE LIMITED | § | |
| PARTNERSHIP, | § | |
|     Defendant. | § | 261st JUDICIAL DISTRICT |

## AGREED ORDER APPOINTING RECEIVER

This matter, having come before me, the undersigned judge duly presiding over the above-captioned lawsuit, on the *Agreed Application to Appoint Receiver* ("Application"),[1] respectfully submitted by the named parties remaining in this action and supported by the signatures of all other necessary and interested parties to the terms and subject matter scope of this Agreed Order, such Application seeking the appointment of a receiver over the Project. In contemplation of the appropriate action to benefit the best interests of all parties involved and the best interests of the Project, and in further consideration of the agreement of all necessary parties under the scope of this Agreed Order, as evidenced by the signatures below, and the Court having concluded that it has subject matter jurisdiction over this action, personal jurisdiction over the parties signing this Agreed Order, and *in rem* jurisdiction over the Project subject to the terms of this Agreed Order, it appears that this Agreed Order is both necessary and appropriate to marshal, conserve, hold and, where necessary, operate every aspect of the Project within the sound discretion of the Receiver appointed hereunder, subject to the supervision, approvals and further orders of the Court.

---

[1] All terms used herein shall bear the meanings assigned in the Application.

1

IT IS THEREFORE ORDERED that:

1.       The Project and all operations, actions, decisions, control, and disposition thereof (including a sale of the Project by the Receiver), related thereto, appurtenant thereto or otherwise arising therefrom in any way, is placed under the exclusive jurisdiction and possession of the Court.  The Court assumes exclusive control over all decision-making authority and all assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges arising from some property, in any way related to or in connected with the Project.

2.       Rob Roy Parnell, AIA, RAS of Rob Roy Parnell, Inc., 251 McKellar Road, Dripping Springs, TX 78620, 512-784-3699, robroy.parnell@gmail.com, is hereby appointed as the receiver ("Receiver") for the Project, with the full power of an equity receiver under common law as well as such powers as are enumerated herein as of the date of this Agreed Order.  The Receiver shall not be required to post a bond unless directed by the Court, but is hereby ordered to well and faithfully perform the duties of his office, to timely account for all monies, securities, and other properties, which may come into his hands, and to abide by and perform all duties set forth in this Agreed Order. All actions and decisions implemented under the Receiver's discretion, as such authority is hereby granted to the Receiver under this Agreed Order, shall be taken in absolute good faith and implemented with the sole motivation to accomplish and forward the best interests of the Project and the welfare of all parties and persons affected by the development of the Project. The Receiver's sole and exclusive decision-making authority and discretion in regards to the Project shall be exercised in good faith and subject only to the supervision, approvals and orders of this Court. The Receiver's sole decision-making authority and exclusive discretion in regards

2

to the Project are not subject to the approvals or influence of any party to this action or any interested persons, specifically including, without limitation, the parties signing this Agreed Order.

3.      Except for an act of willful malfeasance or gross negligence, the Receiver shall not be liable for any loss or damage incurred by any party in connection with the Project. The Receiver is hereby granted, empowered and holds the sole and exclusive decision-making authority and discretion in regards to all actions taken, affecting, impacting, relating to, arising from, in regards to or in any way connected to the Project, including any development and/or disposition thereof (expressly including, without limitation, a sale of the Project to a third party buyer for fair market value). The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Project and the Receiver, the professionals hired by the Receiver, the contractors hired by the Receiver, the agents hired by the Receiver and any other persons taking action on behalf of or pursuant to instructions from the Receiver.

4.      As it concerns, relates to, arises from or in any way impacts or affects the Project, the Receiver shall **_exclusively_** possess all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of Zen Garden under applicable state and federal law, by the governing charters, by-laws, articles, partnership agreements, company agreements, contracts and/or any other agreements concerning the authority to manage or make decisions concerning the Project ("Company Governance Documents"). In addition to and without limiting the foregoing in any way, as it concerns, relates to, arises from or in any way impacts or affects the Project, the Receiver shall **_exclusively_** possess all powers, authorities, rights and privileges of a receiver at equity and all powers conferred upon a receiver pursuant to all applicable Texas law. The Company Governance Documents shall be deemed duly and properly amended, superseded, and modified to the extent applicable to enforce the terms of

3

this Agreed Order. To the extent any conflict exists between the terms of the Company Governance Documents and the terms of this Agreed Order, the terms of this Agreed Order control.

5.      For the sake of clarity, the Receiver possesses the sole and exclusive authority and decision-making power to transfer ownership of the Project or otherwise dispose of any property ownership interests in the Project in any way (including, without limitation, a sale to a third party for fair market value). For the sake of clarity, the Receiver possesses the sole and exclusive authority and decision-making power to place the Project and/or Zen Garden under any bankruptcy proceedings, receivership proceedings, assignment for the benefit of creditors or any other insolvency proceedings, whether legal, administrative or equitable, as such proceedings may impact or affect the Project in any way.

6.      As it concerns, relates to, arises from or in any way impacts or affects the Project, all of the trustees, attorneys, agents, employees, accountants, attorneys, investment advisors, brokers, contractors, officers, directors, managers, equity holders, members, and general and limited partners of and/or hired by Zen Garden ("Prior Persons") are hereby dismissed and the powers of all such Prior Persons are hereby suspended. All of the Prior Persons shall have no authority or decision-making power as it concerns, relates to, arises from or in any impacts or affects the Project, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume the ***exclusive*** control and authority over the operation of the Project.

7.      No person or entity holding or claiming any position of any sort with Zen Garden or in any way previously connected to the Project, including, without limitation, all Prior Persons, shall possess any authority to act by or on behalf of Zen Garden or any other person or party as it concerns, relates to, arises from or in any impacts or affects the Project, except to the extent as may hereafter be expressly granted by the Receiver.

4

8.      The duties of the Receiver shall be specifically limited to matters relating to or arising from the Project. Nothing in this Agreed Order shall be construed to require further investigation by the Receiver concerning the Project that occurred prior to the issuance of this Agreed Order. However, this paragraph shall not be construed to limit the powers of the Receiver in any regard with respect to transactions related to or affecting the Project that may have occurred prior to the date of this Agreed Order.

9.      Until further order of this Court, the Receiver is authorized to immediately take and have complete and exclusive control, possession, custody, and decision-making authority over the Project and all actions and transactions related to or affecting the Project in any way. For the sake of clarity, the Receiver shall not be deemed to supplant or replace Zen Garden as a party to any contracts arising from the Project or Zen Garden as the owner of the Project. The Receiver shall not be deemed to be a successor-in-interest to Zen Garden on any contracts arising from the Project or Zen Garden as the owner of the Project. Rather, the Receiver shall be deemed to be the sole and exclusive person and entity authorized to implement actions on behalf of Zen Garden as the same related to or impact the Project in any way.

10.     As of the entry of this Agreed Order, the Receiver shall bear the exclusive authority to take the following actions, and is specifically directed and authorized to perform the following duties:

A.  Maintain full control over the Project with the power to retain or remove, as the Receiver deems necessary or advisable, any officer, director, agent, independent contractor, employee or other person involved in the development or connected to the Project in any way;

5

B.  Evaluate and pursue a sale of the Project to a third party for fair market value as a primary alternative to advance the best interests of the Project and all parties involved. Development and construction of the Project will continue prior to and during the interim of the Receiver's sales and marketing process to preserve the status quo of the Project and maximize the value of the Project in connection with the Receiver's efforts to sell the Project. For the sake of clarity, the Receiver shall obtain the Court's approval prior to completing, consummating and closing on the sale of the Project and/or conveying any property interests in the Project away from Zen Garden. Any such sale, conveyance or disposition of all or any portion of the Project without the prior written order of the Court entered on the docket of the above-captioned action will be of no force or effect and such attempted sale, conveyance or other disposition without approval by order of the Court shall be null and void. All parties in interest reserve all rights to object, oppose or participate in the Receiver's proceedings with the Court requesting to convey all or any portion of the Project. Any such order of the Court approving the sale, conveyance or other disposition of the Project shall address the manner of distribution of the net sale proceeds obtained by the Receiver in exchange for such sale, conveyance or other disposition;

C.  Collect, marshal, secure, and take exclusive custody, control and possession of the Project and all assets, books, records, goods, property, real or personal, tangible or intangible, chattel, rights, credits, monies, effects, leases, contracts, work papers, records of accounts, financial records, computer maintained information, financial institutions or any other documents and information traceable to the Project and

6

under the control of Zen Garden, Eight Fold, A. Zarafshani and/or D. White and any of their respective affiliates, family members, agents, attorneys, independent contractors or other persons acting in concert therewith or under their instructions to the extent related to or affecting the Project in any way;

D. Institute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Project, with all of such actions to be filed in this Court under the above-captioned lawsuit;

E. Obtain, by presentation of this Agreed Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, causes of action, or employees related to or affecting the Project. The attendance of a person or entity for examination and/or production of documents may be compelled in a manner provided under the Texas Rules of Civil Procedure, or as provided under the laws of any foreign country where such documents, books, records, accounts, deposits, or testimony may be located;

F. Without breaching the peace, and if necessary, with the assistance of local peace officers to enter and secure any premises, wherever located or situated, including, without limitation, the Project, in order to take possession, custody, or control of, or to identify the location or existence of, assets and/or records relating to or affecting the Project, of which belong to and are subject to the Receiver's sole and exclusive possession, custody and control;

7

G.  Obtain credit, incur debt and/or make any payments, distributions and disbursements from and on behalf of Zen Garden as the Receiver deems advisable or proper for the marshaling, maintenance, preservation, development and/or disposition of the Project. The Receiver is further authorized to contract and negotiate on behalf of Zen Garden with any persons for the purpose of compromising, settling or engaging in any transaction relating to or affecting the Project in any way. To this purpose, in those instances in which the Receiver may be required to transfer assets of Zen Garden to secure any indebtedness or resolve any claims or disputes arising from or affecting the Project in any way, the Receiver must obtain advance approval by written order of the Court prior to the Receiver implementing any action to surrender, convey, encumber or otherwise dispose of any assets of Zen Garden to the extent necessary to develop, dispose of or otherwise advance the best interests of the Project;

H.  Perform all acts necessary to conserve, hold, manage, and preserve the value of the Project in order to prevent any loss, damage or injury to the Project;

I.  Enter into such agreements in connection with the administration, development and/or disposition of the Project, including, without limitation, the employment of a real estate broker to market the Project for sale, the employment of independent contractors, agents, managers, custodians, consultants, attorneys, investigators, and accountants, as the Receiver judges necessary to perform the Receiver's duties set forth in this Agreed Order. All of such appointments and engagements must be subject to an approval order of this Court and only approved upon strict evidentiary proof by the Receiver that such persons are necessary to protect and promote the

8

best interests of the Project and all the welfare of all persons' interests in and to the Project. The Receiver and any such persons engaged or hired by the Receiver under this Agreed Order shall not receive any compensation unless approved by a prior written order of this Court;

J.  Subject to the Receiver's obligation to expend funds in a reasonable and cost-effective manner, which must strictly conform to advancing the best interests of the Project and the welfare of all parties interested in the Project, the Receiver is authorized to investigate, institute, prosecute, compromise, adjust, intervene in, or become a party to such actions or proceedings in state, federal or foreign courts of competent jurisdiction that the Receiver deems necessary and advisable to preserve the value of the Project and advance the best interests of the Project and the welfare of all parties interested in the Project, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Agreed Order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted in connection with or affecting the Project that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order to advance the best interests of the Project and the welfare of all parties interested in the Project;

K.  Preserve the Project and minimize expenses incurred in furtherance of advancing the best interests of the Project and the welfare of all parties interested in the Project;

L.  To take all actions to manage, maintain, develop, preserve, dispose of and/or wind-down the business operations arising from and/or relating to the Project, including

9

making any legally required payments to creditors, subcontractors, independent contractors, agents and other third parties employed (subject to professionals engaged by the Receiver requiring advance Court approval before receiving any compensation in exchange for services rendered to the Receiver) and communicating with vendors, investors, governmental and regulatory authorities, and other third parties, as appropriate to advance the best interests of the Project and the welfare of all parties interested in the Project;

M. Prepare and submit periodic reports to the undersigned parties, as reasonably requested by such parties; and

N. Subject to and in accordance with the provision of this Agreed Order, file with the Court requests for approval of reasonable and necessary fees to be paid to the Receiver and any person or entity retained by the Receiver with interim and final accountings for any reasonable expenses incurred and paid pursuant to this Agreed Order.

11.     Upon the request of the Receiver, local peace officers are hereby ordered to assist the Receiver in the enforcement of the terms of this Agreed Order, including, without limitation, assisting the Receiver in carrying out the Receiver's duties to take possession, custody, or control of, or identify the location of, the Project and any assets or records traceable to, arising from, related to or affecting the Project in any way.

12.     The undersigned parties to this Agreed Order, all Prior Persons, and all persons, agents, contractors, and other entities in active concert with, under their direction or supervision, acting on their behalf, subject to their instructions, or in participation with any of the foregoing persons are hereby ordered, restrained and enjoined from, directly or indirectly, disposing,

10

destroying, converting, damaging, selling, gifting, conveying or otherwise exercising any control over the Project or any part thereof and/or making any such dispositions or expenditures of assets arising from or related to the Project. A copy of this Agreed Order may be served on any entity, bank, broker, contractor, subcontractor, financial or depository institution or any other person to ensure compliance with, enforce, and/or restrain and enjoin any such persons or entities from violating the terms of this Agreed Order.

13.     The undersigned parties to this Agreed Order, all Prior Persons, and all persons, agents, contractors, and other entities in active concert with, under their direction or supervision, acting on their behalf, subject to their instructions, or in participation with any of the foregoing persons are hereby ordered, restrained and enjoined from, directly or indirectly, doing any act or thing whatsoever to interfere with the Receiver's enforcement of the terms of this Agreed Order, including, without limitation, the Receiver's taking exclusive custody, control, possession and management over the Project. For the sake of clarity, the undersigned parties to this Agreed Order, all Prior Persons, and all persons, agents, contractors, and other entities in active concert with, under their direction or supervision, acting on their behalf, subject to their instructions, or in participation with any of the foregoing persons are hereby ordered, restrained and enjoined from, directly or indirectly, taking any action to harass or impede the Receiver's performance of the duties imposed on the Receiver under this Agreed Order or the exclusive jurisdiction of this Court over the enforcement of the terms of this Agreed Order, specifically including, without limitation, the filing or prosecuting of any actions or proceedings which involve the Receiver or which affect the Project, including any proceeding initiated pursuant to Title 11 of the United States Code ("Bankruptcy Code"), except upon advance written order of the Court authorizing any such bankruptcy, receivership, assignment for the benefit of creditors, or other insolvency-based

11

litigation proceedings, whether legal, equitable or administrative in nature. Unless otherwise authorized by order of this Court, any and all disputes concerning the Receiver and/or relating to or arising from the Project shall be filed in this Court.

14.     Upon presentment of this Agreed Order, all persons, including financial institutions, shall provide account-balance information, transaction histories, all account records, all books, contracts and other documentation and information related to or arising from the Project in any way to the Receiver or the Receiver's duly appointed agent and/or contractors in the same manner as such documents and information are stored in the ordinary course of such custodian's business. All Prior Persons, as well as all those persons or entities acting in their place and/or subject to their instructions or acting in concert therewith, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Project; such information shall include, but is not limited to, books, records, documents, accounts, contracts, communications and all other instruments and papers.

15.     Within ten (10) days of the entry of this Agreed Order, all Prior Persons, as well as all those persons or entities acting in their place and/or subject to their instructions or acting in concert therewith, are hereby ordered and directed to preserve and turn over to the Receiver a sworn statement, listing: (a) the identity, location and estimated value of all property, books, records, contracts and other assets related to and/or appurtenant to the Project; and (b) the names, identities, and contact information (telephone, address, email) of all employees, contractors, subcontractors, accountants, attorneys, other personnel, and any other agents providing goods or services to or in connection with the Project.

16.     All Prior Persons, and their past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, contractors, subcontractors, debtors, creditors,

12

and general and limited partners, as well as all those persons or entities acting in their place and/or subject to their instructions or acting in concert therewith, are hereby ordered, compelled and directed to: (a) answer under oath and penalty of perjury all questions which the Receiver may put to them and produce all documents and information (i) as required by the Receiver to perform the mandate placed upon the Receiver under the terms of this Agreed Order, or (ii) otherwise relevant to the operation or administration of the Project; (b) assist the Receiver in fulfilling his duties and obligations under the terms of this Agreed Order; (c) respond fully, comprehensively, promptly and truthfully to all requests for information and documentation from the Receiver; (d) cooperate in good faith with the Receiver and his duly appointed attorneys, officers and agents on all orders and requests received from the Receiver as the Receiver deems advisable and necessary to fulfil the Receiver's duties and obligations under the terms of this Agreed Order; and (e) take any and all actions, active and constructive positive efforts as directed by the Receiver for the purpose of maximizing the value of the Project, the development of the Project and/or the disposition of the Project (including, without limitation, a sale of the Project to a third party for fair market value), as the Receiver deems advisable and necessary for the best interests of all parties involved in the Project.

17. The Receiver may issue subpoenas to compel testimony of persons and/or the production of documents and records, consistent with the Texas Rules of Civil Procedure and applicable local rules of this Court, concerning any subject matter within the powers and duties granted by this Agreed Order.

18. Unless otherwise authorized by further order of this Court, no proceedings, including, without limitation, a bankruptcy petition under the Bankruptcy Code, a receivership proceeding, an assignment for the benefit of creditors, or any other insolvency-based litigation,

13

whether legal, equitable or administrative in nature, may be commenced, continued or prosecuted in relation to or otherwise affecting in any way the Project and/or Zen Garden.  The Receiver is the only person or entity with the ***exclusive*** authority to seek prior authorization from this Court before any proceedings, including, without limitation, a bankruptcy petition under the Bankruptcy Code, a receivership proceeding, an assignment for the benefit of creditors, or any other insolvency-based litigation, whether legal, equitable or administrative in nature, may be commenced in relation to or otherwise affecting in any way the Project and/or Zen Garden.  This and other provisions of this Agreed Order bar any person or entity (other than the Receiver and only upon the prior order of this Court) from placing the Project and/or Zen Garden in bankruptcy, receivership, an assignment for the benefit of creditors or other insolvency-based litigation proceedings, including, without limitation, any proceeding under the Bankruptcy Code. Zen Garden's Company Governance Documents shall be deemed duly amended and superseded for all purposes set forth in this order, and for the sake of clarity, the express corporate authority required before the Project and/or Zen Garden can be legitimately placed into any proceedings under the Bankruptcy Code, as set forth in this Paragraph 18.

19.     In order to execute the express and implied terms of this Agreed Order, the Receiver is authorized to change door locks to the Project and otherwise take any security measures to preserve and maintain all aspects of the Project. The Receiver shall exclusive control over the keys and access to all or any portion of the Project.

20.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of Zen Garden, and to inspect all mail opened prior to the entry of this Agreed Order, to determine whether items or information therein fall within the mandates of this Agreed Order.

14

21.     The Receiver is authorized to make appropriate notification to the United States Postal Service to forward delivery of any mail addressed to Zen Garden and/or relating to the Project in any way. Further, the Receiver is authorized to open and inspect all such mail to determine the location or identity of any assets traceable to the Project.

22.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of Zen Garden relating to the Project and take any and all appropriate steps in connection with such insurance policies to preserve, maintain, promote, advance, develop and/or dispose of the Project in the best interests of all parties and persons with interests in the Project, such persons expressly including, without limitation, the parties signing this Agreed Order.

23.     The Receiver need not obtain Court approval prior to the disbursement of funds for trade expenses associated with the Project incurred in the ordinary course of administration, preservation and operation of the Project.

24.     Upon the completion of the Receiver's performance of the duties mandated under the terms of this Agreed Order, the Receiver shall submit a final accounting and report with the Court concerning the status and disposition of the Project, as well as the Receiver's request to be discharged from the terms of this Agreed Order. In the Receiver's final accounting and report, the Receiver shall request from the Court a final application for compensation and reimbursement of expenses for the Receiver and all of the professionals retained by the Receiver to perform the duties mandated by this Agreed Order.

25.     Notwithstanding any provisions in this Agreed Order to the contrary, under no circumstances shall Romspen Mortgage Limited Partnership (including any of its affiliates, "Romspen") be compelled to extend any further credit, loans, hard money, funds, equity, capital,

15

investment or value of any kind to the Receiver, Zen Garden, the Project, the undersigned parties to this Agreed Order or any third party for any purpose. Further, under no circumstances shall the indebtedness ("Indebtedness"), liens, mortgages, security interests, and other property ("Liens") owned, held and possessed by Romspen against Zen Garden, the Project or any of the undersigned parties or their affiliates be subordinated, primed or devalued in any way by the Receiver or any other party in connection with the Project or the above-captioned lawsuit. For the sake of clarity, Romspen is not required to extend any further credit, loans, hard money, funds, equity, capital, investment or value of any kind to the Receiver, Zen Garden, the Project, the undersigned parties to this Agreed Order or any third party for any purpose. Romspen and the Receiver may engage in negotiations and enter into an agreement, subject to the prior approval by written order of this Court and entered on the docket of this lawsuit, regarding the voluntary extension of additional credit, capital, investment, loans, or funds to Zen Garden for the benefit of the Project; provided, however, any such additional credit extended by Romspen to Zen Garden for the benefit of the Project shall be within the sole and absolute voluntary discretion of Romspen and must be approved by written order of the Court. The Receiver is permitted, in his discretion subject to advancing the best interests of the Project and all parties interests in the Project (including, without limitation, Romspen), to engage in negotiations with non-Romspen parties regarding new credit, loans, hard money, funds, equity, capital, investment or value of some kind to advance the best interests of the Project ("New Credit"); provided, however, any such New Credit and any liens, mortgages, security interests or value of any kind granted to secure such New Credit shall be subordinate in priority to Romspen's Indebtedness and Liens. The Receiver shall obtain the Court's approval prior to completing, consummating and closing on any New Credit. Any New Credit obtained without the prior written order of the Court entered on the docket of the above-

16

captioned action will be of no force or effect and such attempted New Credit obtained without approval by order of the Court shall be null and void.

26.     The terms of this Agreed Order are immediately enforceable upon the entry of this Agreed Order by this Court, and any and all stays applicable to the delayed enforcement are hereby waived and declared null and void to the implementation and performance of the terms of this Agreed Order, which are immediately enforceable upon the entry by the Court.

27.     This Court retains exclusive jurisdiction to consider the enforcement of and the adjudication of any disputes arising from the terms of this Agreed Order.

IT IS SO ORDERED.

Signed this _____ day of November, 2019.


_____
HONORABLE JUDGE PRESIDING

17

AGREED AS TO FORM AND SUBSTANCE:

**FOLEY & LARDNER, LLP**

/s/

Thomas Scannell (TX 24070559)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214-999-4289
Facsimile: 214-999-3289
tscannell@foley.com

**ATTORNEYS FOR ROMSPEN
MORTGAGE LIMITED PARTNERSHIP**

**3443 ZEN GARDEN LIMITED PARTNERSHIP**,
a Texas limited partnership

By:_____
Name: _____
Title: _____


**EIGHTFOLD DEVELOPMENT, LLC**,
a Texas limited liability company

By:_____
Name: _____
Title: _____


**Adam Zarafshani**

_____
Individually

**Daniel White**

_____
Individually

18

<u>AGREED AS TO FORM AND SUBSTANCE</u>:

**FOLEY & LARDNER, LLP**

/s/
Thomas Scannell (TX 24070559)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214-999-4289
Facsimile: 214-999-3289
tscannell@foley.com

**ATTORNEYS FOR ROMSPEN
MORTGAGE LIMITED PARTNERSHIP**

**3443 ZEN GARDEN LIMITED PARTNERSHIP,**
a Texas limited partnership

By: _____
Name: _____
Title: _____

**EIGHTFOLD DEVELOPMENT, LLC,**
a Texas limited liability company

By: _____
Name: _____
Title: _____

**Adam Zarafshani**

_____
Individually

**Daniel White**

_____
Individually

18