**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| 3443 ZEN GARDEN, L.P., | § | CASE NO. 20-10410-HCM |
| | § | |
| DEBTOR. | § | Chapter 11 |

**DECLARATION OF ADAM ZIMMERMAN**

1. My name is Adam Zimmerman. I am more than 21 years of age, of sound mental capacity, and capable of making this declaration.

**I.   INTRODUCTION**

2. I have been retained as an independent, third party valuation professional by Romspen Mortgage Limited Partnership ("Romspen"). I have been retained through my employment by Hilco Real Estate Appraisal, LLC ("Hilco") for this matter. In particular, I have been asked to provide an opinion on the current market value of the office campus being developed at 3443 Ed Bluestein Blvd., Travis County, Austin, Texas (referred to herein as the "subject property"). I have also been asked to provide valuation commentary relating to office assets with either funding or debt deficiencies, remaining construction considerations and issues and/or lease-up costs, timing and rental rates. These opinions are set forth below.

**II.   BACKGROUND AND QUALIFICATIONS**

3. I am a managing director at Hilco and have been employed there since late 2007. I am a general certified real estate appraiser licensed in the States of Texas, Illinois, Georgia, Arizona, Pennsylvania and New York. I am also a designated member (MAI) of the Appraisal Institute. I was designated in late 2018. I was previously employed at Price Appraisals as a

1

commercial appraiser and an owner of Zimmerman & Weinstein. A current copy of my curriculum vitae is attached as Exhibit 1.

4. As discussed in my curriculum vitae, I have more than 25 years of experience in real estate valuation.

5. My formal education includes a Bachelor of Arts degree in Journalism in 1989 from the University of Kansas. I have also successfully passed multiple Appraisal Institute courses, the state certified general exam as well as a comprehensive exam to become a designated member of the Appraisal Institute. My certification(s) also require 28 hours of continuing education every two years.

6. My daily function as a real estate appraiser is to provide opinion of values for all major assets classes, including individual and multibuilding campus style office buildings in central business districts (CBD) and suburban locations nationally. Assets appraised include existing, proposed and under construction valuation projects for office, retail, industrial, hotels, multi-family, mixed-use, vacant land, subdivision analysis, and health care properties. In the last five years, I have appraised over 50 commercial assets throughout Texas.

7. I also work closely with Hilco Real Estate ("HRE"), the real estate disposition platform of Hilco Global (parent company) that typically, by order of the court, runs a process to achieve the highest and best offer of various types real estate nationally. This partnership results in real time transactional data utilized as a test of reasonableness of (our) Hilco's valuation conclusions.

**III.** **OPINIONS TO BE EXPRESSED AND THE BASES AND REASONS FOR THOSE OPINIONS**

8.  In connection with formulating my opinions in this matter, the scope of work I performed is outlined below:

- Requested subject property information and reviewed the information that was made available to Hilco.

  This included, but is not limited to, BYT Construction reports, prior appraisal completed by BBG in 2016 and NAI Hiffman in 2017/2018 and Engineering reports from Doucet and Associates. I also reviewed construction plans, plat of surveys and Zen Garden marketing materials.

- Researched public source and vendor service based subject information.

  This included the Travis County Appraisal District, Loopnet, CoStar and other web based brokerage information.

- Conducted an appraisal inspection of the subject property, made field notes and took photographs.

  I inspected the interior and exterior of Buildings, F, H, J, V, B. C, D, L, M and CP-1 as well as general the grounds and parking structures.

- Drove the subject's local area to assess development trends, transportation patterns, quality and condition of improvements, access to services, adverse influences, etc.
- Gathered published information on key economic, social, governmental and environmental factors in the region and local area that influence the subject's value.

  My research included, but was not limited to, the Austin Chamber of Commerce, National Brokerage reports, CoStar, Loopnet, web research and other market sources. An extensive review of demand and supply dynamics, rental rate forecasts, construction supply and delivery were considered and analyzed to develop to support rental rate conclusions, vacancy considerations and absorption forecasts.

- Researched the subject's zoning designation and key development restrictions as outlined by the City of Austin.

3

- Formed an opinion of the subject's Highest and Best Use, and determined which approaches to value were applicable and/or necessary.
- Investigated and selected the most relevant and reliable land sales for use in the Land Valuation.

I selected five sales ranging from $1.94 to $5.74 per square foot. I confirmed these transactions with market participants and Travis County records. The sales are summarized below.

| Number of Comparables | 5 |
|---|---|
| Min. Sale Price | $7,500,000 |
| Max. Sale Price | $18,200,000 |
| Min Price / $SF | $1.94 |
| Max Price / $SF | $5.74 |
| Average Sale Price / $SF | $3.66 |
| Median Sale Price / $SF | $4.11 |
| Standard Deviation | $1.57 |
| COV* (per $ per unit) | 43.0% |

*Coefficent of Variation

- Collected building cost data for use in developing a conclusion of the cost new of the improvements to arrive at a replacement cost value indication, depreciation deduction and other below the line adjustments to conclude a preliminary "AS if complete", fee simple market value in the *Cost Approach.*

I utilized client provided information and Marshall Valuation Service (a national publication that provides cost data).

Investigated and selected the most relevant and reliable improved sales for use in the *Sales Comparison Approach* for Building F, H, J and V. I utilized Costar, public records, appraisal files, and market participants to confirm sales data. I identified five relevant stabilized sales for F, H, J that ranged between $234.71 and $382.10 per square foot as outlined in the following table.

4

| | |
|---|---|
| Number of Comparables | 5 |
| Min. Sale Price | $33,600,000 |
| Max. Sale Price | $102,040,320 |
| Min Price / $SF | $234.71 |
| Max Price / $SF | $382.10 |
| Average Sale Price / $SF | $296.46 |
| Median Sale Price / $SF | $290.70 |
| Standard Deviation | $54.53 |
| COV* (per $ per unit) | 18.4% |

*Coefficent of Variation

The sales utilized for Building V ranged between $100.00 and $300.00 per square

- Investigated and selected the most relevant and reliable office rent comparables, expense data and investment rates for use in the *Income Capitalization Approach*.

I researched market rental rates in the Austin market between $15.00 and $50.00 per square foot on a net basis. Costar, public records, and market participants were used to confirm rental data. In additional, expenses were used from the subject's operating budget and published sources.

Capitalization rates, which ranged between 5.37% and 7.33%, were sourced from broker feedback, national surveys and were extracted from sales in the Austin market as follows.

| Sale Date | Property | Size | Class | Cap Rate |
|---|---|---|---|---|
| Jul-18 | 3700 North Capital of Texas Hwy | 249,870 | A | 6.67% |
| Jul-19 | 10415 Morado Circle | 318,876 | A | 6.25% |
| Feb-19 | 5113 Southwest Pky | 123,513 | A | 6.78% |
| Apr-19 | 7500 Rialto Blvd | 149,924 | A | 6.50% |
| Aug-19 | 6504 Bridgepoint Pky | 136,000 | A | 7.33% |
| Aug-19 | 10721 Domain Drive | 309,883 | A | 5.76% |
| Dec-18 | 8310 N Capital of Texas Hwy | 253,659 | A | 6.60% |
| Aug-19 | 1701 Directors Blvd. | 154,939 | A | 6.90% |
| Jun-19 | 12401 Research Blvd. | 133,107 | A | 5.37% |
| Dec-18 | 8310 North Capital of Texas | 102,567 | A | 6.73% |
| | Low | | | 5.37% |
| | High | | | 7.33% |
| | Average | | | 6.49% |
| | Median | | | 6.64% |

- Considered the input gathered from our interviews of buyers, sellers, brokers, property developers and public officials, as applicable in each approach.

5

- Concluded a preliminary opinion of value after reviewing the indications from the approaches employed.

### A. Preliminary Opinion of Value

In modeling a preliminary opinion of market value, I used a hypothetical condition that considers the primary campus buildings of F, H, J as complete and stabilized. This best models investor thinking where "below the line" deductions are made to account for needed costs and profit to complete the building.

1. Construction costs remaining to complete Building F, H, J were reported at $10.560 million

2. Tenant improvement costs are estimated at $50.00 per square foot or $15.8 million

3. Leasing Commissions are estimated at 6% or $2,435 million

4. Lost of rental income for 24 months during lease-up and absorption is estimated at $22.8 million

5. Profit is concluded at 20% to reflect investor risk

Total deductions were approximately $61.9 million which is then deducted from the as if complete/stabilized market value.

Building V has below the line deductions to complete and lease approximately 10,000 square feet at $600,000.

We note that, in our opinion, the retrofitting cost of Building B exceed its financial feasibility and that it is end of its economic useful life. We have accounted for its demolition. This will also open up better access to the remaining buildings. Buildings C, D, L, M, CP-1 and PG-1 have contributory building value utilizing the preliminary results of the *Cost Approach*.

The table below summarizes Hilco's preliminary opinion of the *as is* market value of the subject property, as of May 7, 2020, the date of inspection as follows:

| VIIE AUSTIN - VALUE SUMMARY CONCLUSION ||||| 
|---|---|---|---|---|
| Building | Year Built | Size (SF) | Value | Comments |
| B | 1967 | 292,503 | ($4,400,000) | Demolition @15 per SF |
| C | 1974 | 61,244 | $615,000 | Contributary Building Shell |
| D | 1967 | 167,243 | $1,670,000 | Contributary Building Shell |
| F | 1967, UC | 110,773 | | |
| H | 1967, UC | 113,442 | $45,700,000 | As is, after deductions for completion/leasing |
| J | 1967, UC | 97,638 | | |
| L | 1967 | 89,338 | $890,000 | Contributary Building Shell |
| M | 1967 | 95,479 | $950,000 | Contributary Building Shell |
| V | 1967, Ren. 2019 | 22,000 | $2,700,000 | As is, after deductions for completion/leasing |
| CP1 | | 28,629 | $1,150,000 | As is |
| Parking Garage G1 | 1967 | 260,672 | $1,300,000 | As is |
| Parking Garage G2 | 1967 | 223,889 | n/a | n/a |
| Aggregate Total | | | $50,575,000 | |

## IV. RESERVATION

9. I expressly reserve the right to modify or supplement this declaration based upon any additional information produced or presented to me in this litigation and/or based upon any rulings by the Court.

10. I further reserve the right to respond to any facts, opinions, or arguments presented by any expert witness retained by any other party in this matter.

## V. COMPENSATION AND ADDITIONAL INFORMATION

11. I have been retained by Romspen and am being compensated for the time that I spend on this matter at my regular consulting rate of $450 per hour. My compensation is not contingent upon the outcome of this litigation.

12. Romspen and Hilco are not affiliates, parents, subsidiaries, under common control or related in any way. Romspen and Hilco are completely independent third parties to each other. Hilco's engagement for the subject property on this matter was negotiated at arm's length. I performed my work for this engagement in the same manner, as with any other third party client at arm's length. My opinions expressed for the subject property on this matter are

not biased or influenced in Romspen's favor in any way. Rather, my opinions expressed for the subject property on this matter are entirely neutral and reflect only the objective opinion of the current market value for the subject property.

13. I have not testified as an expert in trial or by deposition during the past four years.

14. If called upon to testify as to my opinion, I may use any of the web pages, definitions, or other documents or analysis identified herein as a demonstrative aide, as well as photographs, tables, surveys, and/or Capitalization and DCF (Discounted Cash Flow) models based upon such documents or materials or that I may otherwise create, in order to explain my opinion.

15. I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, that the foregoing is true and correct. Declarant further sayeth not.

October 6, 2020

_____
Adam Zimmerman, MAI

The person signing below certifies to the best of their personal knowledge and belief:

1. The statements of fact contained in this declaration report are true and correct.
2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.
3. We have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved.
4. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
5. The engagement for this assignment was not contingent upon developing or reporting predetermined results.
6. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
7. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute, which include the Uniform Standards of Professional Appraisal Practice.
8. Adam Zimmerman, MAI and John C. Satter, MAI have made a personal inspection of the property that is the subject of this report.
9. No one other than the appraisers listed provided significant real property appraisal assistance to the person(s) signing this declaration.
10. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.
11. We have not performed any services in connection with the subject property within the three-year period immediately preceding acceptance of this assignment, either as an appraiser or in any other capacity.
12. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
13. As of the date of this report, Adam Zimmerman, MAI and John C. Satter, MAI has completed the continuing education program of the Appraisal Institute.
14. The appraisal assignment was not based on a requested minimum value, a specific valuation, or the approval of a loan.

HILCO REAL ESTATE APPRAISAL, LLC

_____
Adam Zimmerman, MAI
Managing Director
Texas Certified General Appraiser #
TX 1380459 G
Exp. Date: 07/31/2021

## **Exhibit 1**

**Qualifications for Adam K. Zimmerman, MAI**

| | |
|---|---|
| 2007 - Present | Managing Director, Hilco Real Estate Appraisal, LLC |
| | Vice President, Valuation Services |
| 2004 - Present | Price Appraisal, Inc., Appraisal Services, Chicago, IL |
| | Appraiser |
| 1991 - 2007 | Zimmerman and Weinstein, Northfield, IL |
| | Owner |

*Scope of Experience:*

*General*

Engaged exclusively in the valuation of real estate since 1991, Adam has extensive experience in valuing a broad range of property types. Adam's experience includes managing valuation projects for a variety of purposes including lending support, bankruptcy, restructuring, financial accounting and investment decision-making. Income methodologies include DCF (Excel) and Argus expertise.

He also has experience as an expert witness and has been qualified as an expert in the Circuit Court of Cook County of Illinois, the U.S. Bankruptcy Court for the North District of Illinois and Cook and Lake Counties' property tax appeal boards. Types of reports completed range from market rent studies/surveys and appraisal reviews, to restricted, summary and self-contained appraisal reports.

Additional responsibilities include business development, appraisal management, production and review, administrative duties and staff training.

*Hospitality Focus*

Adam has performed numerous valuations for both fee simple and going-concern hospitality assignments for nationally flagged hotels, boutique hotels and hotel/water park (entertainment) properties across the country. His expertise extends to market analysis and valuation for both closed or distressed hotel properties and fully operating and stabilized assets.

*Certifications/Licenses:*

Certified General Real Estate Appraiser licenses held in the states of Illinois, Texas, Arizona, New York, Georgia and Pennsylvania

MAI Designated Member, Appraisal Institute

*Formal Education:*

Bachelor of Arts, Journalism, University of Kansas