# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 1:20-10410-HCM |
| 3443 ZEN GARDEN, L.P. | § | |
| | § | Chapter 11 |
| DEBTOR. | § | |

### CHAPTER 11 TRUSTEE'S AMENDED LIQUIDATING PLAN

**WICK PHILLIPS GOULD & MARTIN, LLP**

*/s/ Scott D. Lawrence*

Jason M. Rudd
State Bar No. 24028786
Scott D. Lawrence
State Bar No. 24087896
Lauren K. Drawhorn
State Bar No. 24074528
Daniella G. Heringer
State Bar No. 24103460
Emails:    jason.rudd@wickphillips.com
scott.lawrence@wickphillips.com
lauren.drawhorn@wickphillips.com
daniella.heringer@wickphillips.com

**COUNSEL FOR GREGORY S. MILLIGAN,**
**CH. 11 TRUSTEE FOR 3443 ZEN GARDEN, L.P.**

Dated: November 25, 2020

## SUMMARY OF PLAN

The Chapter 11 Trustee's Plan provides for the settlement of all the Debtor's, the Reorganized Debtor's, the Chapter 11 Trustee's, the bankruptcy Estate's and any of their respective successors' and assigns' potential claims and causes of action against the Debtor's largest creditor, Romspen Mortgage Limited Partnership, in exchange for:

1.  $600,000.00 to provide at least a forty percent (40%) recovery to non-priority general unsecured creditors with allowed claims (the "**_Settlement Carve-Out_**") through a creditor trust, with the possibility that additional asset recoveries and adjudication of claims objections may increase this distribution;

2.  Romspen's subordination of its $56 million unsecured deficiency claim to prevent dilution of and to maximize the recovery to general unsecured creditors;

3.  Romspen's successfully obtaining the subordination of the Panache deficiency and other General Unsecured Claims to prevent dilution of and to maximize the recovery to Non-Insider general unsecured creditors; and

4.  Romspen's agreement to the Chapter 11 Trustee's continued use of cash collateral on hand to fund the Estate's, the Plan's, and the creditor trust's administrative expenses, provided that any excess funds that remain on hand for unused surplus will be returned to Romspen upon the termination of the creditor trust.

The Plan places the Settlement Carve-Out, Romspen's remaining cash collateral and all the Debtor's remaining assets into a creditor trust which will liquidate the assets and distribute the proceeds to holders of allowed claims in the priority governed by the Bankruptcy Code, subject to the voluntary subordinations set forth in the Plan. The creditor trust will distribute the Settlement Carve-Out to holders of allowed non-priority unsecured claims. For the settlement consideration, the Plan provides Romspen and its affiliates a full release of liability, including a release on behalf of the Debtor's creditors, parties in interest and all third parties that do not opt out and also provides for the return of Romspen's $7 million deposit, net of the Settlement Carveout, that Romspen placed in the registry of the Court pursuant to a stipulation with the Trustee. *See* ECF No. 238.

# TABLE OF CONTENTS

## ARTICLE I. DEFINITIONS AND INTERPRETATION ....................................................1
1.1   Definitions .............................................................................................................. 1
1.2   Rules of Interpretation and Construction. .............................................................. 9

## ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS ........................................9
2.1   Administrative Expense Claims. ............................................................................ 9
2.2   Fee Claims. ........................................................................................................... 10
2.3   Chapter 11 Trustee Fees and Expenses. ............................................................... 11
2.4   U.S. Trustee Fees. ................................................................................................ 11
2.5   Priority Tax Claims. ............................................................................................. 11

## ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...............12

## ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................12
4.1   Class 1 – Priority Non-Tax Claims. ..................................................................... 12
4.2   Class 2 – Lender's Secured Claim. ...................................................................... 12
4.3   Class 3 – M&M Plaintiff Secured Claims. .......................................................... 13
4.4   Class 4 – Panache Secured Claims. ...................................................................... 13
4.5   Class 5 – Other Secured Claims. .......................................................................... 13
4.6   Class 6 – General Unsecured Claims. .................................................................. 13
4.7   Class 7 – Lender's Deficiency and Unsecured Claims ........................................ 14
4.8   Class 8 – Panache and M&M Plaintiffs Deficiency and Unsecured Claims ...... 14
4.9   Class 9 – Subordinated Claims ............................................................................ 14
4.10   Class 10 – Equity Interests ................................................................................ 14

## ARTICLE V. IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES .............................................15
5.1   Classes Entitled to Vote. ...................................................................................... 15
5.2   Class Acceptance Requirement. ........................................................................... 15
5.3   Cramdown. ............................................................................................................ 15
5.4   Elimination of Classes. ........................................................................................ 15

## ARTICLE VI. MEANS OF IMPLEMENTATION ........................................................15
6.1   The Lender Settlement. ......................................................................................... 15
6.2   The Creditor Trust. ............................................................................................... 16
6.3   General Settlement of Claims. ............................................................................. 22
6.4   Issuance of Creditor Trust Interests. .................................................................... 22
6.5   Section 1145 Exemption. ..................................................................................... 22
6.6   Restructuring Transactions. ................................................................................. 23
6.7   Corporate Action. ................................................................................................. 23
6.8   Vesting of Assets. ................................................................................................ 23
6.9   Preservation of Rights of Action; Settlement of Litigation Claims. ................... 23
6.10   Effectuating Documents; Further Transactions. ............................................... 24
6.11   Exemption from Certain Transfer Taxes. .......................................................... 24
6.12   Management and Winddown of the Reorganized Debtor. ................................. 24
6.13   Cooperation with the Creditor Trustee. ............................................................ 24

## ARTICLE VII. DISTRIBUTIONS ...............................................................................25
7.1   Date of Distributions. ........................................................................................... 25
7.2   Sources of Cash for Plan Distributions. .............................................................. 25
7.3   Creditor Trustee. .................................................................................................. 25
7.4   Record Date for Distributions. ............................................................................. 25
7.5   Recipients of Distributions. ................................................................................. 26
7.6   Delivery of Distributions; Unclaimed Property. ................................................. 26
7.7   Means of Payment. ............................................................................................... 26
7.8   Setoffs and Recoupment. ...................................................................................... 26

7.9     Distributions After Effective Date.............................................................................26
7.10    Withholding and Reporting Requirements. ................................................................27
7.11    No Postpetition Interest.............................................................................................27
7.12    Time Bar to Payments................................................................................................27
7.13    De Minimis Distributions. .........................................................................................27

## ARTICLE VIII. PROCEDURES FOR RESOLVING AND  TREATING DISPUTED CLAIMS.................................................................................................28

8.1     Objections to Claims. .................................................................................................28
8.2     Post-Sale Closing Date Reporting on Payments on Account of Claims. ...................28
8.3     No Distributions Pending Allowance. ........................................................................28
8.4     Distributions After Allowance. ..................................................................................28
8.5     Disallowance of Late Filed Claims. ..........................................................................29

## ARTICLE IX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.....................................................................................................29

9.1     Rejection of Contracts and Leases.............................................................................29
9.2     Inclusiveness...............................................................................................................29
9.3     Claims Based on Rejection of Executory Contracts or Unexpired Leases................29
9.4     No Effect on Insurance ..............................................................................................29

## ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN ....................................................................................30

10.1    Conditions to Confirmation of Plan. .........................................................................30
10.2    Conditions to Effective Date of Plan.........................................................................30
10.3    Waiver of Conditions Precedent. ...............................................................................31
10.4    Effect of Failure of Conditions. ................................................................................31
10.5    Reservation of Rights. ................................................................................................31

## ARTICLE XI. EFFECT OF CONSUMMATION ..............................................................31

11.1    Vesting of Assets. .......................................................................................................31
11.2    Discharge of Claims and Interests in the Debtor. .....................................................31
11.3    Injunction against Interference with Plan. ................................................................32
11.4    Exculpation. ...............................................................................................................32
11.5    Debtor and Estate Releases .......................................................................................32
11.6    Releases by Holders of Claims and Interests. ...........................................................33
11.7    Injunction and Stay....................................................................................................34
11.8    Preservation of Claims...............................................................................................35
11.9    Compromise of Controversies. ..................................................................................36

## ARTICLE XII. RETENTION OF JURISDICTION ..........................................................37

## ARTICLE XIII. MISCELLANEOUS ..................................................................................38

13.1    Payment of Statutory Fees.........................................................................................38
13.2    Filing of Additional Documents. ...............................................................................38
13.3    Schedules, Exhibits and Plan Supplement Incorporated. ..........................................38
13.4    Amendment or Modification of the Plan....................................................................38
13.5    Inconsistency..............................................................................................................39
13.6    Exemption from Certain Transfer Taxes. ..................................................................39
13.7    Expedited Tax Determination. ...................................................................................39
13.8    Binding Effect. ...........................................................................................................39
13.9    Severability. ...............................................................................................................39
13.10   No Admissions. ...........................................................................................................40
13.11   No Payment of Attorneys' Fees..................................................................................40
13.12   Notices. ......................................................................................................................40
13.13   Governing Law............................................................................................................40

Gregory S. Milligan, Chapter 11 Trustee for the Bankruptcy Estate of 3443 Zen Garden, L.P., hereby proposes the following Liquidating Chapter 11 Plan pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I. DEFINITIONS AND INTERPRETATION

### 1.1  Definitions

For the purpose of this Plan, the following terms shall have the respective meanings set forth below:

*Action* means any claim, action, cause of action, demand, lawsuit, arbitration, notice of violation, proceeding, litigation, citation, or summons, whether civil, criminal, administrative, regulatory, or otherwise, whether at law or in equity.

*Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b) or 507 of the Bankruptcy Code, including, without limitation, (i) any fees or charges assessed against the Estate under 28 U.S.C. § 1930, (ii) Fee Claims, (iii) any "gap period" claims under Bankruptcy Code section 502(f), and (iv) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court.

*Allowed* means, with reference to any Claim or Equity Interest, any Claim or Equity Interest (i) for which a proof of claim or proof of interest has been filed and as to which no objection has been interposed on or before the Objection Deadline or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) which appears in the Debtor's Schedules and is not listed as contingent, liquidated or disputed, (iii) which is allowed by Final Order of the Bankruptcy Court, or (iv) which is expressly allowed under this Plan.

*Avoidance Actions* means Actions arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through and including 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Actions, and which may be recovered pursuant to section 550 of the Bankruptcy Code.

*Ballot* means the ballot provided to holders of Claims to indicate their votes to accept or reject the Plan.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

*Bankruptcy Court* means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or any other court of the United States having jurisdiction over the Chapter 11 Case.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

*Bar Date* means the last date to file proofs of claim against the Debtor, which was or will be (i) August 10, 2020 for all creditors except Governmental Units and (ii) October 5, 2020 for Governmental Units.

*Business Day* means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

*Cash* means legal tender of the United States of America.

*Cash Collateral* means Cash in the Estate's possession on the Effective Date on which the Lender has a Lien, including amounts the Lender funded under the Postpetition Financing Order.

*Causes of Action* is defined in Section 11.8 hereof.

*Chapter 11 Case* means the above-captioned chapter 11 bankruptcy case.

*Chapter 11 Trustee* means Gregory S. Milligan, Chapter 11 Trustee of the Estate.

*Claim* means a claim against the Debtor or the Estate within the meaning of section 101(5) of the Bankruptcy Code.

*Class* means any group of Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

*Class A Interests* is defined in Section 6.2(g) hereof.

*Class B Interests* is defined in Section 6.2(g) hereof.

*Class C Interests* is defined in Section 6.2(g) hereof.

*Collateral* means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

*Compensation Order* means that certain Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals (ECF No. 135).

*Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

*Confirmation Hearing* means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

*Credit Agreement* means that certain superpriority secured Loan Agreement and Promissory Note dated as of April 27, 2018 by and among the Debtor and the Lender.

*Credit Bid Stipulation* means that certain Stipulation and Order to Deposit Funds Between Gregory S. Milligan, Chapter 11 Trustee and Romspen Mortgage Limited Partnership Resolving Credit Bid Challenge (ECF No. 238).

*Credit Bid Escrow* means the $7,000,000.00 the Lender placed in escrow with the Chapter 11 Trustee pursuant to the Credit Bid Stipulation.

*Creditor Trust* means that certain trust named the "ZG Creditor Trust" that will come into existence on the Effective Date of the Plan, which trust shall be formed pursuant to, and governed by, the provisions of the Plan and the Creditor Trust Agreement.

*Creditor Trust Agreement* means the ZG Creditor Trust Agreement governing the Creditor Trust dated as of the Effective Date, substantially in the form included as an exhibit to the Disclosure Statement.

*Creditor Trust Assets* means (i) all Causes of Action owned by the Debtor or the Estate, except as the same may be dismissed, settled or released pursuant to the Plan; (ii) all proceeds of any of the Debtor's insurance policies; and (iii) any other property of the Estate not otherwise distributed pursuant to the terms of this Plan. For the sake of clarity, the TxDOT Condemnation Proceeding and PDA Proceeding are transferred to Lender under the Sale Order and are NOT included in the Creditor Trust Assets and as of the Sale Closing Date are exclusively the Lender's property pursuant to the terms of the Sale Order, as confirmed by this Plan.

*Creditor Trust Interests* means the Class A Interests, Class B Interests, and the Class C Interests, together.

*Creditor Trustee* means the trustee of the Creditor Trust, Gregory S. Milligan, and any successor Creditor Trustee.

*Debtor* means 3443 Zen Garden, L.P. in its capacity as chapter 11 debtor.

*Disallowed Claim or Equity Interest* means any Claim or Equity Interest, or portion thereof that is not an Allowed Claim, an Allowed Equity Interest, or a Disputed Claim or Disputed Equity Interest.

*Disclosure Statement* means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

*Disputed Claim* means, with respect to a Claim, such Claim (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtor or any party in interest has interposed a timely objection (as a contested matter, adversary proceeding, or otherwise) or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules,

which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

*Disputed Equity Interest* means, with respect to an Equity Interest, such Equity Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Chapter 11 Trustee or any party in interest has interposed a timely objection or request for estimation prior to the Objection Deadline in accordance with the Plan, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

*Distribution Date* means the date, occurring on or as soon as practicable after the Effective Date, on which the Creditor Trustee first makes distributions to holders of Allowed Claims and Allowed Equity Interests as provided in the Plan.

*Distribution Record Date* means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims and Allowed Equity Interests, which shall be the Confirmation Date.

*Effective Date* means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in Section 10.2 hereof shall have been satisfied or waived as provided in Section 10.3 hereof; *provided*, *however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

*Equity Interest* means any "equity security" of the Debtor, as that term is defined in section 101(16) of the Bankruptcy Code.

*Estate* means the estate of the Debtor as created under section 541 of the Bankruptcy Code.

*Exculpated Parties* means the Chapter 11 Trustee, the Creditor Trustee, HMP Advisory Holdings, LLC d/b/a Harney Partners, and Wick Phillips Gould & Martin, LLP.

*Fee Claim* means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Case.

*Final Order* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired;

*provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

***General Unsecured Claim*** means any Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Lender Secured Claim, an M&M Plaintiff Secured Claim, a Panache Secured Claim, a Subordinated Claim, an Other Secured Claim, a Lender Deficiency Claim or an Equity Interest. General Unsecured Claim includes any unsecured claim held by the M&M Plaintiffs or an Other Secured Claim as a result of the operation of section 506(a)(1) of the Bankruptcy Code.

***Governmental Unit*** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

***Insider*** means any Person who is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code, or who may otherwise be determined to be an "insider" under section 101(31) of the Bankruptcy Code by a court of competent jurisdiction.

***Lender*** means Romspen Mortgage Limited Partnership ("***Romspen***"), in its capacities as prepetition and postpetition lender to the Debtor. Romspen and Lender may be used interchangeably throughout this Plan to refer to Romspen Mortgage Limited Partnership.

***Lender's Contribution*** means the Cash Collateral remaining in the Estate on the Effective Date to be used for the payment of Administrative Expense Claims that are Allowed but unpaid on the Effective Date, with the remaining Cash Collateral transferred to the Creditor Trust to be held separate from other Creditor Trust Assets and used for the specific and separate purpose of funding the Creditor Trust's reasonable and necessary costs and expenses and, upon the dissolution of the Creditor Trust and after payment of all the Creditor Trust's reasonable and necessary costs and expenses, to be returned to the Lender.

***Lender's Deficiency Claim*** means the unsecured claim held by the Lender as a result of the operation of section 506(a)(1) of the Bankruptcy Code in the amount of $56,511,950.72, subject to a final calculation by the Lender satisfactory to the Chapter 11 Trustee.

***Lender's Secured Claim*** means the Secured Claim held by the Lender secured by a Lien on the Property in the Allowed amount of $45,000,000.00, satisfied through the Sale Order.

***Lender Settlement*** is defined in Section 6.1 hereof.

***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

***Local Rules*** means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Western District of Texas, as the same may be amended or modified from time to time.

***M&M Plaintiffs*** means, together, ACM Services, LLC' Koetter Fire Protection of Austin, LLC, Capital Industries, LLC, Hill Country Electric Supply, LP, Lyle America, Inc. d/b/a

Glass.com of Illinois, Summer Legacy, LLC, Texas Air, LLC, Ferguson Enterprises, LLC, and American Builders and Contractors Supply Co., Inc. d/b/a ABC Supply.

*M&M Plaintiff Secured Claim* means a Secured Claim asserted by an M&M Plaintiff that is Allowed by the Bankruptcy Court pursuant to the M&M Plaintiff Stipulation.

*M&M Plaintiff Stipulation* means the Stipulation and Order to Deposit Funds in the Registry of the Court Between the M&M Plaintiffs and Romspen Mortgage Limited Partnership Resolving Credit Bid Challenge (ECF No. 221).

*Non-Insider* means a Person who is not an Insider.

*Objection Deadline* means the later of (a) one hundred twenty (120) days after the Effective Date and (b) such later as may be ordered by the Bankruptcy Court prior to the expiration of such one hundred twenty (120) day period, upon motion.

*Opt-Out Form* means the provision on the ballot or other applicable Bankruptcy Court-approved form providing notice of the Third-Party Releases and ability to opt-out of such Third-Party Releases.

*Opt-Out Parties* means any holder of a Claim or Interest that timely completes and returns an Opt-Out Form, affirmatively opting out of the Third-Party Releases in Section 11.6 hereof; however, the Debtor and the Estate, cannot be Opt-Out Parties.

*Other Secured Claim* means a Secured Claim that is not a Lender Secured Claim, an M&M Plaintiff Secured Claim or a Panache Secured Claim.

*Panache* means Panache Development and Construction, Inc., Adam Zarafshani, and any of their insiders, affiliates, subcontractors, successors or assigns.

*Panache Secured Claim* means a Secured Claim asserted by, through or related to Panache that is Allowed by the Bankruptcy Court pursuant to the Panache Stipulation.

*Panache Stipulation* means that certain Stipulation and Order to Deposit Funds in the Registry of the Court Between Adam Zarafshani, Panache Development & Construction, Inc., and Romspen Mortgage Limited Partnership Resolving Credit Bid Challenge (ECF No. 222).

*PDA Proceeding* means all the Debtor's and Estate's rights and interests in the Debtor's Planned Development Agreement ("*PDA*") pending before the Austin City Council seeking to maximize the Property's permissible use.

*Petition Date* means March 22, 2020, the date on which Lyle America, Inc. d/b/a Glass.com of Illinois, Austin Glass & Mirror, Inc, and ACM Services, LLC filed an involuntary petition for relief against the Debtor under chapter 11 of the Bankruptcy Code.

*Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

***Plan*** means this Liquidating Chapter 11 Plan, as the same may be amended, supplemented or otherwise modified from time to time, including any exhibits and schedules hereto.

***Plan Interest Rate*** means simple interest at the rate of 3% per annum.

***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits to be filed in one or more parts or volumes, no later ten (10) Business Days prior to the Confirmation Hearing, as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, containing the form of Creditor Trust Agreement and any other documents necessary for the execution and implementation of the Plan.

***Postpetition Financing Order*** means that certain Amended Final Order Granting Chapter 11 Trustee's Motion to Obtain Secured Credit on an Interim and Final Basis (ECF No. 144).

***Priority Non-Tax Claim*** means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code and that is not an Administrative Expense Claim or a Priority Tax Claim.

***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

***Professional Person*** means any Person retained or to be compensated by the Chapter 11 Trustee pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

***Property*** means the real property located at 3443 Ed Bluestein Boulevard, Austin, TX 78721.

***Pro Rata*** means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such Class.

***Released Parties*** means, collectively, the Lender and its predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees. For the avoidance of doubt, none of the Debtor's past or current officers, agents, employees, directors, insurers, or insiders shall constitute Released Parties or be deemed to be released by any provision of this Plan, Plan Document, or Confirmation Order.

***Releasing Parties*** means the Debtor, the Reorganized Debtor, the Chapter 11 Trustee, the Creditor Trustee, the Creditor Trust and the Estate on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any cause of action derivatively, by or through the foregoing entities, as defined in Section 11.5.

***Relief Order Entry Date*** means April 8, 2020, the date on which the Bankruptcy Court entered its *Consent Order for Entry of Relief* (ECF No. 11).

*Reorganized Debtor* means the 3443 Zen Garden Limited Partnership entity following the Effective Date of this Plan.

*Sale Order* means that certain Order Authorizing and Approving the Sale of Certain of Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and Granting Related Relief entered by the Bankruptcy Court on October 7, 2020 (ECF No. 278).

*Sale Closing Date* means October 15, 2020, the date the Chapter 11 Trustee closed on the sale of the Property to the Lender pursuant to the Sale Order.

*Schedules* means, collectively, Schedules A through J and the Statement of Financial Affairs, as filed by the Debtor in the Chapter 11 Case, as the same may have been or may be amended from time to time.

*Secured Claim* means a Claim, other than the Lender's Secured Claim, secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Chapter 11 Trustee and the holder of such Claim.

*Settlement Carve-Out* means $600,000.00 the Chapter 11 Trustee will pay from the Credit Bid Escrow to the Creditor Trust on the Effective Date.

*Subordinated Claim* means any Claim that is subject to (a) subordination under section 510 of the Bankruptcy Code or any other statute, (b) contractual subordination, (c) equitable subordination as determined by the Bankruptcy Court in a Final Order, including, without limitation, any Claim (i) for or arising from the rescission of a purchase, sale, issuance, or offer of a Security of the Debtor; (ii) for damages arising from the purchase or sale of such a Security; or (iii) for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, (d) a Claim that is subordinated by agreement of the holder , or (e) any Claim acquired by a holder of a Claim that is subordinated under this Plan. Subordinated Claim also means any Claim which appears in the Debtor's Schedules as contingent, unliquidated or disputed for with the holder of the Claim failed to timely file a proof of claim.

*Third-Party Releases* means the releases provided by the Lender Settlement.

*Third-Party Releasing Parties* means the holders of all Claims and Interests and their successors and assigns, other than the Opt-Out Parties, as defined in Section 11.6 hereof.

*Trustee and Professional Fee Escrow* means all funds the Lender paid to the Chapter 11 Trustee to fund the payment of the Chapter 11 Trustee's and his Professional Persons' fees and expenses pursuant to the terms of the Postpetition Financing Order.

*Trust Claims Reserve* is defined in Section 6.2(p)(iii) hereof.

*TxDOT Condemnation Proceeding* means all the Debtor's and Estate's rights, claims and interests in the Texas Department of Transportation ("*TxDOT*") initiated condemnation proceeding related to the Property and any settlement, disposition or resolution of the same.

*Voting Deadline* means [●] , the date set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received.

*White Parties* means Daniel White and Lincoln 1861, Inc. and their affiliated and related entities.

### 1.2 Rules of Interpretation and Construction.

(a)    Interpretation. Unless otherwise specified herein, all section, article, and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived or modified from time to time. All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b)    Construction and Application of Bankruptcy Code Definitions. Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c)    Other Terms. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.

(d)    Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS

### 2.1    Administrative Expense Claims.

All Administrative Expense Claims against the Estate, other than Fee Claims, shall be treated as follows:

(a)    Time for Filing. All holders of Administrative Expense Claims, other than Professional Persons holding Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Chapter 11 Trustee and his counsel, and must, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim.  A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Estate or any other Person.

(b)    Allowance. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense

Claim unless an objection is filed by the date that is thirty (30) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

(c)     Payment. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment of such Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Administrative Expense Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) ten (10) days after entry of an order by the Bankruptcy Court allowing such Administrative Expense Claim. The Chapter 11 Trustee and the Creditor Trustee, as applicable, shall pay Allowed Administrative Expense Claims from the Lender's Contribution or as otherwise agreed by the holder of the Allowed Fee Claim and the Chapter 11 Trustee or the Creditor Trustee, as applicable.

(d)     Lender Exception. Lender is excepted from the obligations of this Section 2.1. The terms of this Section 2.1 shall not apply to Lender. Lender is not obligated to file an application for allowance of an Administrative Expense Claim. Lender is deemed to hold an Allowed Administrative Expense Claim pursuant to the terms of the Postpetition Financing Order. Lender's Allowed Administrative Expense Claim shall be satisfied in full by the Lender's credit bid approved by and pursuant to the terms of the Sale Order.

(e)     Gap Period Claims. Since the Chapter 11 Case commenced as an involuntary bankruptcy case under Bankruptcy Code section 303, to the extend the Bankruptcy Court Allows any Claim as a "gap period" claim under Bankruptcy Code section 502(f), the Plan treats these Allowed "gap claims" as Allowed Administrative Expenses Claims under Bankruptcy Code section 507(a)(3) and pays them in full with all other Allowed Administrative Expense Claims from the Lender's Contribution.

## 2.2     Fee Claims.

Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel to the Chapter 11 Trustee. Allowed Fee Claims subject to the Trustee and Professional Fee Escrow shall be paid by the Chapter 11 Trustee from the Trustee and Professional Fee Escrow pursuant to the terms of the Postpetition Financing Order. To the extent an Allowed Fee Claims is not covered by the Trustee and Professional Fee Escrow, then such Allowed Fee Claims shall be paid by the Chapter 11 Trustee or the Creditor

Trustee, as applicable, from the Lender's Contribution or as otherwise agreed by the holder of the Allowed Fee Claim and the Chapter 11 Trustee or the Creditor Trustee.

### 2.3 Chapter 11 Trustee Fees and Expenses.

The Chapter 11 Trustee shall file a final application for payment of fees and reimbursement of expenses under Bankruptcy Code section 330 no later than the date that is thirty (30) days after the Effective Date. Allowed Chapter 11 Trustee fees and expenses shall be paid by the Chapter 11 Trustee from the Trustee and Professional Fee Escrow pursuant to the terms of the Postpetition Financing Order. To the extent any Allowed Chapter 11 Trustee fees and expenses are not covered by the Trustee and Professional Fee Escrow, then such Allowed fees and expenses shall be paid by the Chapter 11 Trustee from the Lender's Contribution. As previously provided by the Postpetition Financing Order and the Sale Order the satisfaction of the Postpetition Indebtedness in the amount of $4,061,444.30[1] shall constitute "moneys disbursed or turned over in the case" by the Chapter 11 Trustee "to parties in interest" for purposes of Bankruptcy Code section 326(a) in determining the Allowed amount of the Chapter 11 Trustee's fees. As previously provided by the M&M Plaintiff Stipulation and the Panache Stipulation any funds distributed by the Court or the Lender on account of the M&M Plaintiff Secured Claims or the Panache Secured Claims shall constitute "moneys disbursed or turned over in the case" by the Chapter 11 Trustee "to parties in interest" for purposes of Bankruptcy Code section 326(a) in determining the Allowed amount of the Chapter 11 Trustee's fees. Pursuant to the Sale Order, all disbursements made by the Lender or any other party on account of 2020 ad valorem taxes secured by the Property shall constitute "moneys disbursed or turned over in the case" by the Chapter 11 Trustee "to parties in interest" for purposes of Bankruptcy Code section 326(a) in determining the Allowed amount of the Chapter 11 Trustee's fees.

### 2.4 U.S. Trustee Fees.

All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the Creditor Trust from the Lender's Contribution.

### 2.5 Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on (or as soon as reasonably practicable after) the Effective Date, Cash in an amount equal to the Allowed amount of such Claim. To the extent the holder of an Allowed Priority Tax Claim has a Lien on Estate property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full. Pursuant to the Sale Order, Allowed Priority Tax Claims, including ad valorem taxes for 2020, shall be paid by the Lender, and will retain their Lien on the Property until paid in full.

[1] Subject to a final calculation by Lender.

## ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims against, and Equity Interests in, the Debtor are classified for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2 | Lender's Secured Claim | Yes | Yes |
| Class 3 | M&M Plaintiff Secured Claims | Yes | Yes |
| Class 4 | Panache Secured Claims | Yes | Yes |
| Class 5 | Other Secured Claims | Yes | Yes |
| Class 6 | General Unsecured Claims | Yes | Yes |
| Class 7 | Lender's Deficiency and Unsecured Claims | Yes | Yes |
| Class 8 | Panache and M&M Plaintiffs Deficiency and Unsecured Claims | Yes | Yes |
| Class 9 | Subordinated Claims | Yes | Yes |
| Class 10 | Equity Interests | Yes | Yes |

Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code. Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of this Plan.

## ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1    Class 1 – Priority Non-Tax Claims.

Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Estate agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, payment in full in Cash from the Lender's Contribution by the Chapter 11 Trustee or the Creditor Trustee, as applicable, on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) ten (10) days after such Priority Non-Tax Claim becomes Allowed.

### 4.2    Class 2 – Lender's Secured Claim.

Pursuant to the Sale Order, in full and final satisfaction of the Lender's Secured Claim, the Chapter 11 Trustee transferred title for the Property to the Lender on the Sale Closing Date.

### 4.3 Class 3 – M&M Plaintiff Secured Claims.

On November 18, 2020, the Bankruptcy Court enter the Agreed Judgement in the M&M Lien Claimant Adversary [ECF No. 29 in Adversary 20-01048-hcm] (the "***M&M Plaintiff Judgment***"). On the Effective Date (or as soon as reasonably practicable), except to the extent that a holder of an Allowed M&M Plaintiff Secured Claim against the Estate agrees to less favorable treatment, each holder of an Allowed M&M Plaintiff Secured Claim shall receive the recovery and treatment provided for in the M&M Plaintiff Judgment from the funds deposited in the Court's registry pursuant to the M&M Plaintiff Stipulation. Nothing herein shall prevent Lender, any M&M Plaintiff or any other party from settling, resolving or otherwise agreeing to modified treatment on or after the Effective Date. The Bankruptcy Court may enter any appropriate order and/or judgment (whether agreed or otherwise) releasing to Lender, any M&M Plaintiff or any other party any portion of the funds deposited in the Court's registry pursuant to the M&M Plaintiff Stipulation and the M&M Plaintiff Judgment.

### 4.4 Class 4 – Panache Secured Claims.

On the Effective Date (or as soon as reasonably practicable thereafter), except to the extent that a holder of an Allowed Panache Secured Claim against the Estate agrees to less favorable treatment, the holder of an Allowed Panache Secured Claim shall receive the recovery and treatment provided for in the Panache Stipulation, with all the Liens associated with the Panache Secured Claims, to the extent Allowed, attaching to the funds deposited in the Court's registry pursuant to the Panache Stipulation. Nothing herein shall prevent Lender, Panache or any other party from settling, resolving or otherwise agreeing to modified treatment on or after the Effective Date. The Bankruptcy Court shall enter any appropriate order and/or judgment (whether agreed or otherwise) releasing to Lender, Panache or any other party any portion of the funds deposited in the Bankruptcy Court's registry pursuant to the Panache Stipulation.

### 4.5 Class 5 – Other Secured Claims.

On the Effective Date (or as soon as reasonably practicable thereafter), except to the extent that a holder of an Allowed Other Secured Claim against the Estate agrees to less favorable treatment, each holder of an Allowed Other Secured Claim shall, at the Chapter 11 Trustee's option, receive one of the following treatments: (i) the Collateral securing such Allowed Secured Claim; or (ii) other treatment that renders such Allowed Other Secured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

### 4.6 Class 6 – General Unsecured Claims.

Except to the extent that a holder of an Allowed General Unsecured Claim against the Estate agrees to a different treatment, each holder of an Allowed General Unsecured Claim shall receive a Class A Interest in the Creditor Trust and thereafter receive Cash distributions from the assets of the Creditor Trust, including the Settlement Carve-Out and the Creditor Trust Assets. Distributions to holders of Allowed General Unsecured Claims who receive a Class A Interest shall be on a Pro Rata basis with all other Class A Interest holders, until the Allowed amount of General Unsecured Claims are paid in full with interest at the Plan Interest Rate.

**4.7     Class 7 – Lender's Deficiency and Unsecured Claims**

On the Effective Date, the Lender shall receive on account of the Lender's Deficiency Claims and any other Allowed General Unsecured Claim held by the Lender, a Class B Interest in the Creditor Trust. Distributions to holders of Class B Interests shall be on a Pro Rata basis, after payment in full with interest at the Plan Interest Rate of all Class A Interests; however, holders of claims in Class 7 shall not receive any portion of the Settlement Carve-Out.

**4.8     Class 8 – Panache and M&M Plaintiffs Deficiency and Unsecured Claims**

On the Effective Date, Panache and each M&M Plaintiff shall receive on account of any Allowed General Unsecured Claim it held, holds or acquires, including any Allowed Claim constituting an unsecured deficiency portion of the Panache Secured Claims, the M&M Plaintiff Secured Claims, and any Allowed Claim from the rejection of any executory contract or unexpired lease, a Class B Interest in the Creditor Trust. Distributions to holders of Class B Interests shall be on a Pro Rata basis, after payment in full with interest at the Plan Interest Rate of all Class A Interests; however, holders of claims in Class 8 shall not receive any portion of the Settlement Carve-Out.

**4.9     Class 9 – Subordinated Claims**

Subordinated Claims may be Allowed by Order of the Bankruptcy Court or stipulation with the Chapter 11 Trustee or the Creditor Trustee. Further, this Plan provides that any Claim which appears in the Debtor's Schedules as contingent, unliquidated or disputed for which the holder of the Claim failed to timely file a proof of claim by the Bar Date is a Subordinated Claim and entitled to treatment as a Class 9 Claim. On the Effective Date, the holder of any Allowed Subordinated Claims shall receive a Class B Interest in the Creditor Trust. Distributions to holders of Class B Interests shall be on a Pro Rata basis, after payment in full with interest at the Plan Interest Rate of all Class A Interests. Class 9 shall also receive distributions from the Settlement Carve-Out, after payment in full with interest at the Plan Interest Rate of all Class A Interests.

**4.10     Class 10 – Equity Interests**

Except to the extent that a holder of an Allowed Equity Interest in the Debtor agrees to a different treatment, each holder of an Allowed Equity Interest shall receive a Class C Interest in the Creditor Trust and thereafter receive Cash distributions from the Creditor Trust Assets. Distributions to holders of Allowed Equity Interests who receive a Class C Interest shall be on a Pro Rata basis with all other Class C Interest holders, after payment in full with interest at the Plan Interest Rate of all Class B Interests. On the Effective Date, the holders of Allowed Equity Interest shall be revested with their ownership interests in the Reorganized Debtor, in the same proportion as each held in the Debtor on the day before the Petition Date, without further corporate action or Bankruptcy Court order.

## ARTICLE V. IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

### 5.1 Classes Entitled to Vote.

The holders of Claims in Class 1 are unimpaired, conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. The holders of claims in Classes 2, 3, 4, 5, 6, 7, 8, 9 and 10 are impaired and entitled to vote to accept or reject the Plan.

### 5.2 Class Acceptance Requirement.

A Class of impaired Claims shall have accepted the Plan if the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan. A Class of impaired Equity Interests shall have accepted the Plan if at least two-thirds (2/3) in amount of Equity Interests in such Class who have voted on the Plan have voted to accept the Plan.

### 5.3 Cramdown.

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Chapter 11 Trustee hereby requests that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

### 5.4 Elimination of Classes.

Any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VI. MEANS OF IMPLEMENTATION

### 6.1 The Lender Settlement.

This Plan constitutes a settlement under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code between the Releasing Parties and the Third-Party Releasing Parties on the one hand and the Released Parties on the other hand in complete and final resolution of all claims the Releasing Parties and the Third-Party Releasing Parties may have against the Released Parties (the "*Lender Settlement*"). Alleged claims which are being settled include, without limitation, all claims, objections, avoidance actions and other causes of action with respect to (i) the claims and causes of action alleged in that certain Chapter 11 Trustee's Emergency Motion to Limit Romspen Mortgage Limited Partnership's Credit Bid (ECF No. 209), (ii) the Lender's involvement in the Debtor's management (if any), funding and operations; (iii) the Lender's proposals to provide and provision of prepetition and postpetition financing; (iv) the Lender's involvement with the collateral pledged to secure the Lender's loans to the Debtor; (v) the Debtor, the Chapter 11 Case or any Claim or Interest; (vi) the Lender's Allowed Secured Claim, the Lender's Allowed

Deficiency Claim and Unsecured Claim, and the Lender's Allowed Administrative Expense Claim, and (vii) any and all claims and causes of action in existence as of the Effective Date, whether known or unknown, in existence or not in existence, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, held by the Releasing Parties and the Third-Party Release Parties against the Released Parties. The Lender disputes that any such claims are or would be valid or have any merit and would contest them. The Lender Settlement resolves such claims. The Lender Settlement is not and shall not deemed to be an admission of liability of any kind on such claims, and all of the Lender's rights are expressly reserved and preserved on any of such claims, with the Lender Settlement carrying no preclusive effect of any kind whatsoever in any action or proceeding arising from or related in any way to the scope of the claims resolved and settled by the Lender Settlement. Only holders of Claims entitled to vote that agree, by not opting out, to release the Released Parties shall be bound by the Third-Party Releases under this Plan and the Lender Settlement. The Disclosure Statement shall include notification to all holders of Claims entitled to vote of their option to opt-out of the Lender Settlement by completing an Opt-Out Form and become an Opt-Out Party on no less than twenty-one (21) calendar days' notice. Any holders of Claims entitled to vote that do not opt-out of the Lender Settlement by returning a properly completed Opt-Out Form to the balloting agent designated by the Bankruptcy Court on or before the Voting Deadline shall be bound by the Lender Settlement, including the Third-Party Releases. Any portion of the cash proceeds comprising or included in the Lender's Contribution that remain on-hand and held by the Creditor Trustee on behalf of the Creditor Trust that are excess, surplus funds leftover after satisfaction of the obligations set forth in this Plan will be returned to the Lender upon the termination of the Creditor Trust. The Chapter 11 Trustee shall transfer any portion of the funds comprising the Credit Bid Escrow in excess of the Settlement Carve-Out to Lender on the Effective Date of the Plan. To the extent not already covered by the Sale Order, any and all aspects of the TxDOT Proceeding and the PDA Proceeding are not included in the Causes of Action preserved by the Estate and transferred to the Creditor Trust under this Plan. The Debtor's and Estate's rights and interests in the TxDOT Proceeding and the PDA Proceeding are exclusively owned by the Lender as of the Sale Closing Date pursuant to the terms of the Sale Order and this Plan. Further, the Lender shall be responsible for all direction of the TxDOT Proceeding and the PDA Proceeding as of the Sale Closing Date and for the payment of all fees, costs and expenses related to the TxDOT Proceeding and the PDA Proceeding incurred on or after the Sale Closing Date.

**6.2    The Creditor Trust.**

(a)    <u>Establishment of the Creditor Trust</u>. The Creditor Trust shall be established for the benefit of the holders of Allowed General Unsecured Claims and the Lender's Deficiency Claims. This Section 6.2(a) sets forth the general terms of the Creditor Trust and certain of the rights, duties, and obligations of the Creditor Trustee. In the event of any conflict between the terms of this Section 6.2(a) and the terms of the Creditor Trust Agreement, the terms of the Creditor Trust Agreement shall govern.

(b)    <u>Execution of Creditor Trust Agreement</u>. On the Effective Date, the Creditor Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Creditor Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed General Unsecured Claims, the Lender's Unsecured and Deficiency Claims, Panache's Unsecured and Deficiency Claims,

Subordinated Claims, and Equity Interests. The form of the Creditor Trust Agreement and related ancillary documents are subject to Bankruptcy Court approval at the Confirmation Hearing.

(c)    Purpose of the Creditor Trust. The Creditor Trust shall be established for the sole purpose of liquidating and distributing its assets to the holders of interests in the Creditor Trust, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or to engage in the conduct of a trade or business. The Creditor Trust, through the Creditor Trustee, shall (i) collect and reduce the assets of the Creditor Trust to Cash, (ii) prosecute, settle and otherwise administer the Causes of Action as more fully set forth in Section 6.9 and Section 11.8 hereof, (iii) make distributions to the beneficiaries of the Creditors Trust in accordance with the Plan and the Creditor Trust Agreement and (iv) take all such actions as are reasonably necessary to accomplish the purpose hereof, as more fully provided in the Creditor Trust Agreement.

(d)    Creditor Trust Assets. The Creditor Trust shall receive (1) the Lender's Contribution (to be segregated), (2) the Settlement Carve-Out (to be segregated), and (3) the Creditor Trust Assets. Any Cash or other property received from third parties from the prosecution, settlement, or compromise of any Cause of Action shall constitute Creditor Trust Assets for purposes of distributions under the Creditor Trust. On the Effective Date, the Lender's Contribution, the Settlement Carve-Out and Creditor Trust Assets shall automatically vest in the Creditor Trust, free and clear of all Liens, Claims and encumbrances, except to the extent otherwise provided in the Plan.

(e)    Governance of the Creditor Trust. The Creditor Trust shall be governed by the Creditor Trustee in accordance with the Creditor Trust Agreement and consistent with the Plan.

(f)    The Creditor Trustee. The Chapter 11 Trustee shall serve as the Creditor Trustee, subject to Bankruptcy Court approval at the Confirmation Hearing. With respect to the Creditor Trust Assets, the Creditor Trustee shall be a representative of the Estate pursuant to section 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code. The Creditor Trustee may prosecute, settle and otherwise administer the Causes of Action on behalf of the Creditor Trust, without the need for Bankruptcy Court approval or any other notice or approval, except as set forth in the Creditor Trust Agreement, and shall also be responsible for objecting to Claims filed against the Estate that purport to qualify as General Unsecured Claims under the terms of the Plan, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code. The Creditor Trustee shall be exempt from giving any bond or other security in any jurisdiction.

(g)    Classes of Creditor Trust Interests; Nontransferability. There shall be three (3) classes of beneficial interests in the Creditor Trust: Class A beneficial interests for the Allowed General Unsecured Claims (the "*Class A Interests*"), Class B beneficial interests for all Lender's Unsecured and Deficiency Claims, Panache

Unsecured and Deficiency Claims, and Subordinated Claims (the "**Class B Interests**"), and Class C beneficial interests for holders of Equity Interests in the Debtor (the "***Class C Interests***"). The beneficial interests in the Creditor Trust shall not be transferable (except as otherwise provided in the Creditor Trust Agreement).

(h)      Cash. Pending distribution, the Creditor Trustee may invest Creditor Trust Assets only in Cash and Government securities (as defined in section 2(a)(16) of the Investment Company Act of 1940, as amended); *provided, however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

(i)      Costs and Expenses of the Creditor Trustee.  The costs and expenses of the Creditor Trust, including the fees and expenses of the Creditor Trustee and his or her retained professionals, shall be paid first out of the Lender's Contribution, then the Creditor Trust Assets, and finally, only to the extent needed, from the Settlement Carve-Out.

(j)      Compensation of the Creditor Trustee. The Creditor Trustee shall be entitled to reasonable compensation at the Creditor Trustee's reasonable and ordinary hourly rate paid from the Lender's Contribution and the Creditor Trust Assets, plus a commission on specific distributions as detailed below and provided for in prior Bankruptcy Court orders. Pursuant to the Panache Stipulation and the M&M Plaintiff Stipulation, respectively, the Creditor Trustee shall additionally be entitled to a fee of three percent (3%) of all disbursements made on account of any Allowed Claims held by Panache and the M&M Plaintiffs from the registry of the Court or by the Lender. Pursuant to the Sale Order, the Creditor Trustee shall additionally be entitled to a fee of three percent (3%) of all disbursements made on account of any 2020 ad valorem taxes secured by the Property. For avoidance of doubt, the Creditor Trustee shall be entitled to a fee of three percent (3%) of any payment made by the Lender, Panache or any other party on account of or to reduce or satisfy any Claim against the Estate. Any portion of funds returned to the Lender (but not then distributed to any other holder of a Claim or on account of a Claim against the Estate) from (1) the Lender Contribution, (2) the Credit Bid Escrow, (3) the funds deposited in the Bankruptcy Court's registry pursuant to the M&M Plaintiff Stipulation or (4) the funds deposited in the Bankruptcy Court's registry pursuant to the Panache Stipulation, shall not qualify the Creditor Trustee to an additional fee of three percent (3%) on such funds refunded to the Lender, provided the Lender does not otherwise satisfy Claims against the Estate on account of such refunds.

(k)      Distribution of the Settlement Carve-Out. The Creditor Trustee shall distribute the Settlement Carve-Out to the Class A Interests on a Pro Rata basis in accordance with the Creditor Trust Agreement, beginning as soon as practicable after the Effective Date. The Creditor Trustee shall not make any distributions to holders of Disputed Claims unless and until such Claims are Allowed. The Creditor Trustee shall ensure that sufficient funds are reserved, as determined by the Creditor

Trustee in his or her sole discretion, to pay Disputed Claims upon Allowance. Upon payment in full of the Class A Interests with interest at the Plan Rate, the Creditor Trustee shall distribute the remaining Settlement Carve-Out, if any, to Class B Interests help by holders of Claims Allowed in Class 9 on a Pro Rata basis.

(l)     Distribution of Creditor Trust Assets. The Creditor Trustee shall distribute Cash to the Creditor Trust beneficiaries in accordance with the Creditor Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the liquidated Creditor Trust Assets on hand as follows: First to any unpaid portion of the Class A Interests after distribution of the Settlement Carve-Out, on a Pro Rata basis; second to Class B Interests; and third to Class C Interests. The Creditor Trustee shall not make any distributions to holders of Disputed Claims unless and until such Claims are Allowed. The Creditor Trustee shall ensure that sufficient funds are reserved, as determined by the Creditor Trustee in his or her sole discretion, to pay Disputed Claims upon Allowance. The Creditor Trustee shall be permitted to distribute amounts that (i) are reasonably necessary to meet contingent liabilities and to maintain the value of the Creditor Trust Assets, (ii) are necessary to pay reasonable expenses (including, but not limited to, any taxes imposed on the Creditor Trust or in respect of the Creditor Trust Assets), and (iii) are required to satisfy other liabilities incurred by the Creditor Trust in accordance with this Plan or the Creditor Trust Agreement.

(m)     Creditor Trust Certificates. Beneficial interests in the Creditor Trust shall not be represented by certificates, receipts, or in any other form or manner, except as maintained on the books and records of the Creditor Trust by the Creditor Trustee, as set forth in the Creditor Trust Agreement.

(n)     Retention of Professionals by the Creditor Trustee. The Creditor Trustee may retain and reasonably compensate counsel and other professionals out of the Creditor Trust Assets to assist in its duties as Creditor Trustee on such terms as the Creditor Trustee deems appropriate without Bankruptcy Court approval. The Creditor Trustee may retain any professional who represented parties in interest, including the Chapter 11 Trustee, in the Chapter 11 Case.

(o)     Federal Income Tax Treatment of the Creditor Trust; Creditor Trust Assets Treated as Owned by General Unsecured Creditors. For all federal income tax purposes, all parties (including, without limitation, the Debtor, Chapter 11 Trustee, the Creditor Trustee, and the holders of beneficial interests in the Creditor Trust) shall treat the transfer of the Creditor Trust Assets to the Creditor Trust for the benefit of the beneficiaries thereof, whether Allowed on or after the Effective Date, as (A) a transfer of the Creditor Trust Assets directly to the holders in satisfaction of General Unsecured Claims and Lender's Deficiency Claims (other than to the extent allocable to Disputed General Unsecured Claims), followed by (B) the transfer by such holders to the Creditor Trust of the Creditor Trust Assets in exchange for, beneficial interests in the Creditor Trust. Accordingly, the holders of such General Unsecured Claims and Lender's Deficiency Claims, as applicable,

shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Creditor Trust Assets.

(p)    Tax Reporting.

(i)    The Creditor Trustee shall file income tax returns for the Creditor Trust as a grantor trust pursuant to Treasury Regulation section l.671-4(a) and in accordance with this Section 6.2(p)(i). The Creditor Trustee shall annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Creditor Trust's taxable income, gain, loss, deduction, or credit will be allocated among the beneficial holders of the interests in the Creditor Trust in accordance with each holder's relative beneficial interests in the Creditor Trust.

(ii)    As soon as possible after the Effective Date, but in no event later than ninety (90) days after the Effective Date, the Creditor Trustee shall make a good faith valuation of the Creditor Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation the, Debtor, the Chapter 11 Trustee, the Creditor Trustee, and the holders of beneficial interests in the Creditor Trust, as applicable) for all federal income tax purposes. The Creditor Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Creditor Trust that are required by any governmental unit.

(iii)    Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Creditor Trustee of a private letter ruling if the Creditor Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Creditor Trustee), the Creditor Trustee shall (i) treat any Creditor Trust Assets allocable to, or retained on account of, Disputed General Unsecured Claims as held by one or more discrete trusts for federal income tax purposes (the "*Trust Claims Reserve*"), consisting of separate and independent shares to be established in respect of each Disputed General Unsecured Claim, in accordance with the trust provisions of the Tax Code (section 641 *et seq*.), (ii) treat as taxable income or loss of the Trust Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Creditor Trust that would have been allocated to the Holders of Disputed General Unsecured Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a Distribution from the Trust Claims Reserve any increased amounts distributed by the Creditor Trust as a result of any Disputed General Unsecured Claims resolved earlier in the taxable year, to the extent such Distributions relate to taxable income or loss of the Trust Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable laws report consistent with the

foregoing for state and local income tax purposes. All Creditor Trust beneficiaries shall report, for tax purposes, consistent with the foregoing.

(iv)    The Creditor Trustee shall be responsible for payments, out of the Creditor Trust Assets, of any taxes imposed on the Creditor Trust or the Creditor Trust Assets, including the Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed General Unsecured Claims in the Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed General Unsecured Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed General Unsecured Claims, or (ii) to the extent such Disputed General Unsecured Claims have subsequently been resolved, deducted from any amounts distributable by the Creditor Trustee as a result of the resolutions of such Disputed General Unsecured Claims.

(v)    The Creditor Trustee may request an expedited determination of taxes of the Creditor Trust, including the Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust.

(q)    <u>Dissolution</u>. The Creditor Trust and the Creditor Trustee shall be discharged or dissolved, as the case may be, no later than the fifth (5th) anniversary of the Effective Date; *provided, however*, that, on or prior to the date that is ninety (90) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Creditor Trust if it is necessary to the liquidation of the Creditor Trust Assets. Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained not less than ninety (90) days prior to the expiration of each extended term; *provided, however*, that in no event shall the term of the Creditor Trust extend past the tenth (10th) anniversary of the Effective Date. The Creditor Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and (ii) the Creditor Trustee has administered all Creditor Trust Assets and performed all other duties required by the Plan, the Confirmation Order, the Creditor Trust Agreement and the Creditor Trust. The Creditor Trustee shall not unduly prolong the duration of the Creditor Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Creditor Trust Assets and to effect the Distribution of the Creditor Trust Assets in accordance with the terms hereof and terminate the Creditor Trust as soon as practicable. Prior to and upon termination of the Creditor Trust, the Creditor Trust Assets will be distributed to the beneficiaries of Creditor Trust, pursuant to the provisions set forth in the Trust Agreement. If at any time the Creditor Trustee determines that the expense of administering the Creditor Trust is likely to exceed the value of the Creditor Trust Assets, the Creditor Trustee shall have the authority to (i) distribute to the beneficiaries of the Creditor Trust any Cash balance remaining in excess of necessary costs to pay outstanding expenses of the Creditor Trust, including any fees

and expenses of the Creditor Trustee and his/her professionals, (ii) donate any Creditor Trust Assets remaining in the Creditor Trust to the Anthony H.N. Schnelling Endowment Fund maintained by the American Bankruptcy Institute, a non-religious charitable organization exempt from federal income tax under section 501(c)(3) of the Tax Code that is unrelated to the Debtor and any insider of the Debtor and (iii) dissolve the Creditor Trust.

(r)     Indemnification of Creditor Trustee. The Creditor Trustee or the individuals comprising the Creditor Trustee, as the case may be, and the Creditor Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Creditor Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Creditor Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or ultra vires acts. Any indemnification claim of the Creditor Trustee shall be satisfied exclusively from the Creditor Trust Assets. The Creditor Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

### 6.3     General Settlement of Claims.

The Plan constitutes and evidences a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019. In consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.

### 6.4     Issuance of Creditor Trust Interests.

The issuance and distribution of Creditor Trust Interests pursuant to the terms of the Creditor Trust Agreement is authorized without the need for any further corporate action or without any further action by the holders of any claims. All of the Creditor Trust Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. On the Distribution Date, the Creditor Trustee shall issue the Creditor Trust Interests for distribution pursuant to the provisions hereof and the Creditor Trust Agreement. All Creditor Trust Interests to be issued shall be deemed issued as of the Effective Date regardless of the date on which they are actually distributed.

### 6.5     Section 1145 Exemption.

Section 1145 of the Bankruptcy Code shall be applicable to the issuance of the Creditor Trust Interests, if any. To the maximum extent permitted by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, if appropriate, the Creditor Trust Interests, issued pursuant to this Plan and their transfer will be exempt from registration under the Securities Act and all rules

and regulations promulgated thereunder, and any and all applicable state and local laws, rules, and regulations.

### 6.6    Restructuring Transactions.

On or prior to the Effective Date, the Creditor Trust Agreement shall be executed, and on the Effective Date, the Chapter 11 Trustee shall contribute the Creditor Trust Assets to the Creditor Trust free and clear of all Liens, Claims, charges, or other encumbrances. On the Effective Date, the Debtor shall exit chapter 11 as the Reorganized Debtor and the ownership of the Reorganized Debtor shall revest with the holders of Allowed Equity Interests in Class 10.

### 6.7    Corporate Action.

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by or in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by any Equity Interest holders, directors or officers of the Debtor. The authorizations and approvals contemplated by this Section 6.7 shall be effective notwithstanding any requirements under non-bankruptcy law.

### 6.8    Vesting of Assets.

Except as otherwise provided in the Plan, on the Effective Date, the Creditor Trust Assets shall be automatically transferred to and vest in the Creditor Trust free and clear of all Liens, Claims, charges, or other encumbrances. On the Effective Date, the ownership and management of the Reorganized Debtor shall revest with the holders of Allowed Equity Interests in Class 10. The Creditor Trustee shall be permitted to abandon any asset to the Reorganized Debtor without further order of the Bankruptcy Court.

### 6.9    Preservation of Rights of Action; Settlement of Litigation Claims.

Except as otherwise provided herein or in the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action shall be transferred to the Creditor Trust as provided by the Plan, and may be initiated, filed, enforced, abandoned, settled, compromised, released, withdrawn or litigated to judgment without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, except as may otherwise be set forth in the Creditor Trust Agreement. The Creditor Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. **No Person may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against it as any indication that the Chapter 11 Trustee or the Creditor Trustee, as applicable, will not pursue any and all available Causes of Action against it. All rights to prosecute any and all Causes of Action against any Person are expressly preserved, except as otherwise provided in the Plan.** Unless any Causes of Action against a Person are expressly

waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Creditor Trust expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan. For the sake of clarity, the TxDOT Proceeding and the PDA Proceeding are not included in the Causes of Action preserved by the Estate and transferred to the Creditor Trust under this Plan. The Debtor's and Estate's rights and interests in the TxDOT Proceeding and the PDA Proceeding are exclusively owned by the Lender as of the Sale Closing Date pursuant to the terms of the Sale Order and this Plan.

### 6.10    Effectuating Documents; Further Transactions.

On and after the Effective Date, the Chapter 11 Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 6.11    Exemption from Certain Transfer Taxes.

Pursuant to section l146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment: (a) the creation of any mortgage, deed of trust, lien or other security interest under or pursuant to this Plan; (b) the release or assignment of liens; (c) the transfer of any assets of the Estate to the Creditor Trust; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, in connection with or pursuant to this Plan, including any restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing.

### 6.12    Management and Winddown of the Reorganized Debtor.

As provided by the treatment of Class 10 Allowed Equity Interests, the Debtor's existing equity owners will own, manage and control the Reorganized Debtor as of the Effective Date and may proceed to operate, winddown or dissolve the Reorganized Debtor subject to their business judgment. The Chapter 11 Trustee and the Creditor Trustee shall have no obligation to manage, winddown or dissolve the Reorganized Debtor.

### 6.13    Cooperation with the Creditor Trustee.

All holders of Claims and Equity Interests, the Reorganized Debtor, the Lender, Panache, the White Parties, and any owner or assignee of the Property shall fully cooperate with the Creditor Trustee in the administration of the Creditor Trust, including the prosecution of the Causes of

Action and objections to any Claims. The Bankruptcy Court retains jurisdiction to order appropriate relief under this Plan provision.

## ARTICLE VII. DISTRIBUTIONS

### 7.1 Date of Distributions.

Unless otherwise provided in this Plan, any distributions or deliveries to be made under this Plan shall be made on the Effective Date or as soon as practicable thereafter in accordance with the Creditor Trust Agreement. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.2 Sources of Cash for Plan Distributions.

All distributions made by the Creditor Trustee to beneficiaries of the Creditor Trust shall be obtained from the Settlement Carve-Out (only to Allowed Class 6 Claims and then Class 9 Claims) and Creditor Trust Assets. All payments made by the Creditor Trustee to fund the Creditor Trust's fees and expenses shall be obtained <u>first</u>, from the Lender's Contribution, <u>second</u>, from the Creditor Trust Assets, and <u>third</u>, only to the extent needed, from the Settlement Carve-Out. No portion of the Lender's Contribution shall be used to fund the payment of Allowed General Unsecured Claims.

### 7.3 Creditor Trustee.

All distributions under the Plan shall be made by the Creditor Trustee. The Creditor Trustee shall not be required to post any bond, surety or other security for the performance of its duties hereunder unless otherwise ordered by the Bankruptcy Court. The Creditor Trustee shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Creditor Trustee by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Creditor Trustee to be necessary and proper to implement the provisions hereof.

### 7.4 Record Date for Distributions.

At the close of business on the Distribution Record Date, the transfer ledgers or registers for Claims against and Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests. Neither the Chapter 11 Trustee nor the Creditor Trustee shall have any obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date, and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record holders stated on the transfer ledgers or registers maintained by the Chapter 11 Trustee as of the close of business on the Distribution Record Date.

### 7.5 Recipients of Distributions.

All distributions to holders of Allowed Claims and Allowed Equity Interests under the Plan shall be made to the holder of the Claim or Equity Interest as of the Distribution Record Date. Changes as to the holder of a Claim or Equity Interest after the Distribution Record Date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Chapter 11 Trustee and his counsel and, if applicable, the Creditor Trustee.

### 7.6 Delivery of Distributions; Unclaimed Property.

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each holder of an Allowed Claim or Allowed Equity Interest as set forth in the books and records of the Debtor, Chapter 11 Trustee or the Creditor Trustee, as applicable, unless the applicable trustee has been notified in writing of a change of address. If any distribution to the holder of an Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distributions to such holder shall be made unless and until the Chapter 11 Trustee or Creditor Trustee, as applicable, is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days after the date of the distribution in question. After such 90th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the Creditor Trust, and thereafter be distributed Pro Rata to the holders of Allowed Claims and Allowed Equity Interests in accordance with the terms of this Plan, and (ii) the Claim or Equity Interest of any holder with respect to such unclaimed property or interest in property shall be discharged and forever barred. If, at the time the Creditor Trust terminates there is unclaimed property remaining in the Creditor Trust, such property shall be donated to the Anthony H.N. Schnelling Endowment Fund maintained by the American Bankruptcy Institute, to assist in the provision of resources for research and education.

### 7.7 Means of Payment.

All distributions made pursuant to the Plan shall be in Cash.

### 7.8 Setoffs and Recoupment.

The Chapter 11 Trustee or the Creditor Trust, as applicable, may, but shall not be required to, setoff against or recoup from any Claim or Equity Interest any rights to payment that the Estate may have against the holder of such Claim or Equity Interest. Neither the failure of the Chapter 11 Trustee nor the Creditor Trust, as applicable, to setoff or recoup, nor the Allowance of any Claim or Equity Interest shall constitute a waiver or release by the Estate or the Creditor Trust of any right to payment, or right of setoff or recoupment.

### 7.9 Distributions After Effective Date.

Distributions made pursuant to this Plan after the Effective Date to holders of Disputed Claims and Disputed Equity Interests that are not Allowed as of the Effective Date, shall be deemed

to have been made on the Effective Date. After the initial distribution, the Creditor Trustee shall make additional interim distributions to holders of Allowed Claims and Allowed Equity Interests at such time as the Creditor Trustee may deem appropriate, in accordance with the terms of this Plan.

### 7.10    Withholding and Reporting Requirements.

In connection with this Plan and all instruments issued under this Plan, any party issuing any instrument or making any such distribution under this Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Allowed Equity Interest that is entitled to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under this Plan to any holder of any Allowed Claim or Allowed Equity Interest has the right, but not the obligation, to not issue such instrument or make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 7.11    No Postpetition Interest.

Unless otherwise specifically provided for in this Plan or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Equity Interests, and no holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Petition Date. Notwithstanding the foregoing, the Lender's Allowed Administrative Expense Claim accruing and arising under and pursuant to the Postpetition Financing Order shall be permitted to accrue postpetition interest pursuant to the terms of the Postpetition Financing Order.

### 7.12    Time Bar to Payments.

Checks issued by the Creditor Trustee under this Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance. Requests for reissuance of any check shall be made in writing directly to the Creditor Trustee by the person to whom such check was originally issued. Any request for re-issuance of a voided check must be made on or before the end of the 90-day period referenced in this Section 7.12. After such  90-day period, if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with Section 7.6 of this Plan, and all Claims or Equity Interests in respect of such void checks shall be discharged and forever barred.

### 7.13    De Minimis Distributions.

Neither the Chapter 11 Trustee nor the Creditor Trustee shall have any obligation to make a distribution that is less than Ten Dollars ($10) in Cash. If an interim distribution to the holder of an Allowed Claim or Equity interest is less than $10, such distribution shall be held for future distributions. If the final distribution to any holder of an Allowed Claim or Equity Interest is less

than $10, such amount shall become and constitute unclaimed property and be treated in accordance with Section 7.6 of the Plan.

<h2 style="text-align:center">ARTICLE VIII. PROCEDURES FOR RESOLVING AND<br>TREATING DISPUTED CLAIMS</h2>

**8.1     Objections to Claims.**

Except insofar as a Claim or Equity Interest is Allowed under the Plan or pursuant to Final Order of the Bankruptcy Court, the Creditor Trustee, the Chapter 11 Trustee or any other party in interest with standing, shall be entitled to object to Claims and Equity Interests, including objections seeking reclassification or subordination of Claims. Any objections to Claims and Equity Interests shall be served and filed by the Objection Deadline. Any Claim or Equity Interest as to which an objection is timely filed shall be a Disputed Claim or Disputed Equity Interest, respectively. On the Effective Date, the Creditor Trustee shall assume standing to continue to prosecute, settle or resolve any objection to Claims filed by the Chapter 11 Trustee. Notwithstanding the foregoing, included within the Lender Settlement, the Releasing Parties and Third Party Releasing Parties waive and release any and all objections to any Claims held by or in favor of the Lender, including, without limitation, Lender's Allowed Administrative Expense Claim pursuant to the Postpetition Financing Order, Lender's Allowed Secured Claim and Lender's Allowed Deficiency Claim.

**8.2     Post-Sale Closing Date Reporting on Payments on Account of Claims.**

Beginning on the Effective Date, on or before the tenth (10th) calendar day of each month, the Lender, Panache, and any of their successors or assigns, including any assignee or subsequent owner of the Property, shall provide the Chapter 11 Trustee and the Creditor Trustee and his or her counsel, respectively, by email, a detailed accounting of all payments, settlements or other transfers of value of any kind to any holder of a Claim against the Estate. The receipt of any payment, settlement, or transfer of value on account of any Claim against the Estate shall be the basis for the reduction or disallowance of the Claim against the Estate. The Creditor Trustee may waive this reporting requirement if, in his business judgment, the reports are no longer necessary to administer the Creditor Trust. The Lender, Panache, and any of their successors or assigns, including any assignee or subsequent owner of the Property, are obligated to make reports under this Section 8.2 until the Creditor Trust is dissolved.

**8.3     No Distributions Pending Allowance.**

If a timely objection is made with respect to any Claim or Equity Interest, no payment or distribution under the Plan shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes Allowed.

**8.4     Distributions After Allowance.**

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Equity Interest, in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court

allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Creditor Trustee shall provide to the holder of such Claim or Equity Interest the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest.

### 8.5 Disallowance of Late Filed Claims.

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim for which a proof of claim is filed after the applicable Bar Date shall be deemed disallowed. The holder of a Claim that is disallowed pursuant to this Section 8.5 shall not receive any distribution on account of such Claim, and neither the Chapter 11 Trustee nor the Distribution Agent shall need to take any affirmative action for such Claim to be deemed disallowed.

## ARTICLE IX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1 Rejection of Contracts and Leases.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned or rejected by the Chapter 11 Trustee, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Chapter 11 Trustee on or before the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

### 9.2 Inclusiveness.

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease.

### 9.3 Claims Based on Rejection of Executory Contracts or Unexpired Leases.

All Claims arising out of the rejection of executory contracts and unexpired leases (if any) must be served upon the Chapter 11 Trustee and his counsel within thirty (30) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Effective Date. Any Claims not filed within such time shall be forever barred from assertion against the Debtor, the Estate, its property and the Creditor Trust.

### 9.4 No Effect on Insurance

The rejection of executory contracts shall not apply to, and shall have no effect upon, any insurance policy which the Debtor owns or pursuant to which the Debtor is an insured party, beneficiary, claimant or in which the Debtor has any interest, including any directors and officers' insurance policies (together, the "***Insurance Policies***"). All Insurance Policies to which the Debtor

or the Estate is a party as of the Effective Date shall be deemed to be and treated as executory contracts and shall be assumed by the Debtor, assigned to the Creditor Trust and shall continue in full force and effect thereafter in accordance with their respective terms. All Insurance Policies shall vest in the Creditor Trust as of the Effective Date, including the right to (a) control any Insurance Policy that provides or may provide coverage for the Causes of Action or may become available to provide such coverage; (b) pursue and receive the benefits and proceeds of the Insurance Policies; (c) pursue and receive recovery from or as a result of any Causes of Action, including consequential, contractual, extracontractual and/or statutory damages, or other proceeds, distributions, awards or benefits; and (d) pursue and receive any other recovery related to the Causes of Action, including negotiations relating thereto and settlements thereof. Nothing in this paragraph nor the Plan limits, excuses or in any way affects or impairs any coverage to which the Debtor's or the Estate's current and/or former officers and directors are entitled to with respect to any and all insurance or other applicable Insurance Policies of the Debtor.

## ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

**10.1    Conditions to Confirmation of Plan.**

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until an order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered.

**10.2    Conditions to Effective Date of Plan.**

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

(a)    The clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Case and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto;

(b)    The Chapter 11 Trustee shall have received the Lender's Contribution and the Settlement Carve-Out;

(c)    The Creditor Trust Agreement shall have been fully executed;

(d)    The Creditor Trustee shall have been appointed, accepted the appointment, and performed any other appropriate duties prior to accepting the Creditor Trust Assets; and

(e)    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

Within five (5) Business Days of the Effective Date, the Chapter 11 Trustee shall file a notice of the occurrence of the Effective Date.

### 10.3 Waiver of Conditions Precedent.

Any of the foregoing conditions (with the exception of the conditions set forth in Sections 10.1(a) and 10.2(a) may be waived by the Chapter 11 Trustee without notice to or order of the Bankruptcy Court. The Chapter 11 Trustee may assert a failure to satisfy or waiver of any condition regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Chapter 11 Trustee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

### 10.4 Effect of Failure of Conditions.

If the foregoing conditions have not been satisfied or waived in the manner provided in Sections 10.1, 10.2 and 10.3 hereof, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Estate and all holders of Claims against and Equity Interests in the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Estate's obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in this Plan shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Person or to prejudice in any manner the rights of the Estate or any Person in any further proceedings involving the Debtor or the Estate; and (vi) this Plan shall be deemed withdrawn. Upon such occurrence, the Chapter 11 Trustee shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the service list maintained in the Chapter 11 Case.

### 10.5 Reservation of Rights.

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Chapter 11 Trustee with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Estate or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XI. EFFECT OF CONSUMMATION

### 11.1 Vesting of Assets.

Upon the Confirmation Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Creditor Trust Assets shall vest in the Creditor Trust, free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise provided in this Plan.

### 11.2 Discharge of Claims and Interests in the Debtor.

Upon the Effective Date and in consideration of the distributions to be made under this Plan, except as otherwise provided in this Plan or in the Confirmation Order, each holder (as well as any trustee or agent on behalf of such holder) of a Claim or Interest, where such Claim or Interest has been fully paid or otherwise satisfied in accordance with this Plan, and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest

extent permitted under § 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided in this Plan, all such holders of Claims and Interests, and their affiliates shall be forever precluded and enjoined, pursuant to §§ 105, 525, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor.

### 11.3    Injunction against Interference with Plan.

Upon the entry of the Confirmation Order, all holders of Claims and Interests and all other parties in interest, along with their respective present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action to interfere with the implementation or the occurrence of the Effective Date.

### 11.4    Exculpation.

Neither the Exculpated Parties nor any of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys or agents, or any of their predecessors, successors or assigns, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, affiliates, funds, advisors, attorneys or agents, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Case, the negotiation and pursuit of approval of the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in this Plan, this Section 11.4 shall not exculpate any party from any liability based upon gross negligence or willful misconduct.

### 11.5    Debtor and Estate Releases.

As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, the service of the Released Parties to facilitate the administration of the Estate, a substantial recovery for holders of Allowed Claims, and the implementation of this Plan, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the Debtor, the Reorganized Debtor, the Chapter 11 Trustee, the Creditor Trustee, the Creditor Trust and the Estate on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any cause of action derivatively, by or through the foregoing entities (together, the ***"Releasing Parties"***), from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, or liabilities, whatsoever, including any derivative claims, asserted or assertable on behalf of the Releasing Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled to assert in their own right, or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any

manner arising from, in whole or in part, the Debtor, the Estate, the Chapter 11 Case, the Lender Settlement, the subject matter of, or the loans or other transactions or events giving rise to, any Claim or Interest (including without limitation any collateral pledged to the Lender in connection with any such transactions or loans), the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the restructuring transactions, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to this Plan, or any other act or omission, transaction, agreement, event, or other occurrence, other than claims or causes of action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, and willful misconduct.

**11.6    Releases by Holders of Claims and Interests**

**As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, the service of the Released Parties to facilitate the administration of the Estate, a substantial recovery for holders of Claims and Interests, and the implementation of this Plan, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the holders of all Claims and Interests and the successors and assigns (other than the Opt-Out Parties, the "_Third-Party Releasing Parties_") from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the holder of the Claim or Interest, or the Debtor or Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or recission of the purchase or sale of any security of or investment or interest in the Debtor, the Lender Settlement, the subject matter or, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan (including without limitation any collateral pledged to the Lender in connection with any such transactions or loans with the Debtor), the business or contractual arrangements between any holder of a Claim or Interest, and the Debtor or any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the negotiation, formulation, or preparation of the Disclosure Statement, this Plan, related agreements, instruments, and other documents, the solicitation of votes with**

respect to this Plan, or any other act or omission (the "*__Third-Party Releases__*"), other than the claims or causes of action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.

With regard to holders of Claims or Interests that are Unimpaired under this Plan and holders of Claims or Interests whose vote to accept or reject this Plan was solicited or who were deemed to reject the Plan but who did not return a ballot or Opt-Out Form (and thus did not opt-out of this release), if such holder of Claims or Interests wishes to pursue a claim or cause of action against any Released Party, such holder must first petition the Bankruptcy Court for a determination of whether this release applies to such holder. If the Bankruptcy Court determines that such holder's claim is not released by this provision, such holder must bring any claim or cause of action in the United States Bankruptcy Court for the Western District of Texas or must obtain leave of this Bankruptcy Court to bring such claim or cause of action before a court of another jurisdiction.

11.7    **Injunction and Stay.**

(a)    Except as otherwise expressly provided in this Plan, all Persons or entities who have held, hold, or may hold Claims or causes of action against the Debtor or any Released Party or Equity Interests in the Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim, cause of action or Equity Interest against the Estate, the Creditor Trust or other entity released, discharged or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Estate or the Creditor Trust with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Estate, the Creditor Trust, or against the property or interests in property of any Estate or the Creditor Trust, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Estate or the Creditor Trust, or against the property or interests in property of any Estate or the Creditor Trust with respect to any such Claim or Equity Interest, or (v) pursuing any Claim or causes of action released under the Plan.

(b)    Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

(c)     The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, or liabilities released pursuant to this Plan, including, without limitation, the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities released or exculpated in this Plan.

**11.8    Preservation of Claims.**

(a)     Except as otherwise provided herein, as of the Confirmation Date, pursuant to sections 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, claim, liability, obligation, right, suit, debt, sum of money, damage, judgment, Claim, and demand whatsoever, whether known or unknown, at law, in equity, or otherwise, including causes of action under Chapter 5 of the Bankruptcy Code, but not including any causes of action against the Exculpated Parties, and specifically excluding the TxDOT Proceeding and PDA Proceeding exclusively owned by the Lender pursuant to the Sale Order and this Plan (collectively, "***Causes of Action***") owned by or otherwise accruing to the Debtor or the Estate shall constitute assets of, and shall immediately be transferred to and vest in, the Creditor Trust. Thereafter, the Creditor Trustee, as a representative of the Debtor and the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, shall have sole and full authority to commence and prosecute Causes of Action for the benefit of the holders of Allowed General Unsecured Claims. For the avoidance of doubt, the Causes of Action include, but are not limited to, (a) all of the Debtor's commercial tort claims (as such term is defined in the Uniform Commercial Code as in effect in the State of Texas) arising on or before the Effective Date, including without limitation, all causes of action against (i) present and former directors and officers of the Debtor, and (ii) direct and indirect equity holders of the Debtor, and the proceeds of all of the foregoing; (b) all Actions or Claims (i) against the Debtor's contract counterparties (other than counterparties to Assigned Contracts) and the proceeds thereof, (ii) against any of the Debtor's agents, employees, or contractors, , and any of their affiliates, professionals, owners, managers, members, officers, directors, employees, agents, insurers, successors or assigns, (iii) against any insurance carrier, policy, or coverage of the Debtor; and (c) the Estate's Avoidance Actions.

(b)     Reservation of White Parties' Litigation. Reservation of White Parties' Litigation. The releases and injunctions in favor of Lender contained in this Plan do not extend to or otherwise apply to any valid, viable, ripe, live / non-moot, and currently existing claims and causes of action to which the White Parties have standing to assert against Lender in Adversary Case Number 20-1047, currently pending before the Bankruptcy Court ("***White Adversary***"). All parties' rights, claims, liabilities, defenses, affirmative defenses, causes of action and other interests asserted in the White Adversary, including without limitation, all dispositive motions and other forms of relief requested, are expressly reserved and preserved by this Plan. For the sake of clarity, Lender is expressly released under the Plan by all Releasing Parties and Third Party Releasing Parties on any and all Claims, causes of action, disputes and challenges (specifically including any claims objections, lien challenges and requests for subordination), except the causes of action held by the White Parties based on any timely and properly asserted claims in the

White Adversary that are valid, viable, live / not moot and to which the White Parties have standing to assert against Romspen, subject to any motions to dismiss and/or other dispositive motions filed by Romspen to be adjudicated in the White Adversary in due course. Any moot claims and claims to which the White Parties lack standing (including any potential overlap with the Claims already settled by the Trustee under the Lender Settlement) would be disposed of by the Lender Settlement because only the Trustee has standing to assert and settle the Claim. Those "overlapping" claims will be likewise be disposed of in the White Adversary pursuant to Romspen's pending motion to dismiss, such that the any claims asserted by the White Parties in the White Adversary that qualify as the Claims settled by the Trustee under the Lender Settlement will be dismissed with prejudice. To the extent the White Parties have asserted any claims in the White Adversary that the White Parties do not have standing to assert (including, without limitation, the Claims settled by the Trustee under the Lender Settlement) will NOT be preserved under this Plan and will be completely and finally disposed of by the Lender Settlement under this Plan. Only those valid, viable, live / non-moot claims that the White Parties have standing to assert against Romspen in the pending White Adversary are hereby preserved to be prosecuted only by the White Parties and only through the White Adversary. To the extent the White Parties have standing to bring any ripe / non-moot, valid causes of action against Romspen in the White Adversary, then only those timely filed, viable causes of action will survive the Lender Settlement and be preserved under this Plan. The White Parties' rights to continue prosecuting only those ripe / non-moot, valid causes of action and challenges asserted against Romspen in the White Adversary to which the White Parties have standing ("*Viable Claims*") will continue. Romspen's and the White Parties' respective rights and defenses as to those Viable Claims are expressly preserved and reserved to be determined in due course of the White Adversary without substantive determination through the Plan.

(c)     Reservation of M&M Lien Claimants Litigation. The releases and injunctions in favor of the Lender contained in this Plan do not extend to or otherwise apply to the claims and causes of action asserted against the Lender in Adversary Case Number 20-1048, currently pending before the Bankruptcy Court ("*M&M Lien Claimant Adversary*"). All parties' rights, claims, liabilities, defenses, affirmative defenses, causes of action and other interests asserted in the M&M Lien Claimant Adversary are expressly reserved and preserved by this Plan. To the extent the M&M Plaintiffs' claims are derivative of the Debtor's rights or the Estate's rights, those claims will be released under the Plan; however, the M&M Plaintiffs' claims that are not derivative of the Debtor's or Estate's rights are expressly preserved and unaffected by the Plan.

**11.9    Compromise of Controversies.**

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019 and section 1123(b)(3)(A).

## ARTICLE XII. RETENTION OF JURISDICTION

(a)      The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i)      To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(ii)      To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Case and grant or deny any application involving the Debtor or the Estate that may be pending on the Effective Date or that are retained and preserved by the Chapter 11 Trustee herein;

(iii)      To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are effected as provided in the Plan;

(iv)      To hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(v)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(vi)      To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or maintain the integrity of the Plan following consummation;

(vii)      To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Trust Agreement or maintain the integrity of the Trust Agreement following the Effective Date;

(viii)      To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(ix)      To hear and determine all requests for payment of Fee Claims;

(x)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(xi)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(xii)     To hear any other matter not inconsistent with the Bankruptcy Code;

(xiii)     To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder;

(xiv)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan; and

(xv)     To enter a final decree(s) closing the Chapter 11 Case.

## ARTICLE XIII. MISCELLANEOUS

### 13.1     Payment of Statutory Fees.

All fees payable under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as appropriate.

### 13.2     Filing of Additional Documents.

The Chapter 11 Trustee or Creditor Trustee may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 13.3     Schedules, Exhibits and Plan Supplement Incorporated.

All exhibits and schedules to the Plan, and the documents contained in the Plan Supplement, are incorporated into and are a part of the Plan as if fully set forth herein.

### 13.4     Amendment or Modification of the Plan.

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Chapter 11 Trustee at any time prior to or after the Confirmation Date. Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

### 13.5    Inconsistency.

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 13.6    Exemption from Certain Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Chapter 11 Trustee and the Estate and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Chapter 11 Trustee of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Estate of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, if any, shall be deemed to have been made under, in furtherance of, or in connection with the Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.7    Expedited Tax Determination.

The Chapter 11 Trustee or the Creditor Trustee, as successor to the Chapter 11 Trustee, may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### 13.8    Binding Effect.

Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan and Confirmation Order shall be binding upon and inure to the benefit of the Debtor, the Estate, the Released Parties, the Releasing Parties, the Third-Party Releasing Parties, any holder of any Claim or Interest, or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan and Confirmation Order.

### 13.9    Severability.

If the Bankruptcy Court determines that any provision of this Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Chapter 11 Trustee may modify this Plan in accordance with Section 13.4 hereof so that such provision shall not be applicable to the

holder of any Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of this Plan; or (ii) require the re-solicitation of any acceptance or rejection of this Plan unless otherwise ordered by the Bankruptcy Court.

### 13.10 No Admissions.

If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtor, (b) prejudice in any manner the rights of the Chapter 11 Trustee, the Estate or the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Chapter 11 Trustee, the Estate or the Debtor or other party in interest.

### 13.11 No Payment of Attorneys' Fees.

Except for the fees of Professional Persons, no attorneys' fees shall be paid by the Estate with respect to any Claim or Equity Interest unless otherwise specified in this Plan or a Final Order of the Bankruptcy Court.

### 13.12 Notices.

All notices, requests, and demands to or upon the Estate to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

GREGORY S. MILLIGAN
Chapter 11 Trustee, *3443 Zen Garden, L.P.*
Harney Partners
P.O. Box 90099
Austin, TX 78709-0099
gmilligan@harneypartners.com

with a copy to:

WICK PHILLIPS GOULD & MARTIN, LLP
Attention: Jason M. Rudd
3131 McKinney Ave, Suite 100
Dallas, Texas 75204
Telephone: 214-740-4038
jason.rudd@wickphillips.com

### 13.13 Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas,

without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

**3443 ZEN GARDEN, L.P.**

By: */s/ Gregory S. Milligan*

Gregory S. Milligan, Chapter 11 Trustee

**WICK PHILLIPS GOULD & MARTIN, LLP**

*/s/ Scott D. Lawrence*
Jason M. Rudd
State Bar No. 24028786
Scott D. Lawrence
State Bar No. 24087896
Lauren K. Drawhorn
State Bar No. 24074528
Daniella G. Heringer
State Bar No. 24103460
Emails:    jason.rudd@wickphillips.com
           scott.lawrence@wickphillips.com
           lauren.drawhorn@wickphillips.com
           daniella.heringer@wickphillips.com

**COUNSEL FOR GREGORY S. MILLIGAN,**
**CH. 11 TRUSTEE FOR 3443 ZEN GARDEN, L.P.**